# IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

DANIEL BINDERUP,           )
                                )
            Plaintiff,        )
     v.                            )
                                )        **Case No. 5:13-cv-06750-JKG**
ERIC H. HOLDER, JR.,       )
      Attorney General of the    )
      United States <u>et al.</u>,        )
                                  )
            Defendants.    )
_____ )

# DEFENDANTS' COMBINED OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND REPLY BRIEF IN SUPPORT OF THEIR <u>MOTION TO DISMISS OR FOR SUMMARY JUDGMENT</u>

## TABLE OF CONTENTS

INTRODUCTION ...................................................................................................1

ARGUMENT ..........................................................................................................1

I.     18 U.S.C. § 922(g)(1) Prohibits Plaintiff from Possessing Firearms...................1

    A.     Because Plaintiff Was Convicted of a Crime Punishable by Up to Five Years' Imprisonment, the Statutory Exclusion in 18 U.S.C. § 921(a)(20) Does Not Apply Here ........................................................1

    B.     The Third Circuit's Holding in Essig Controls This Case ......................4

    C.     Plaintiff's Citations to Various Canons of Construction Are Unavailing.............................................................................................6

II.     As Applied to Plaintiff, 18 U.S.C. § 922(g)(1) Does Not Violate the Second Amendment ......................................................................................7

    A.     Because This Case Involves a Second Amendment Challenge, the Two-Prong Test from United States v. Marzzarella Applies Here...................................................................................................7

        1.     Disarming Plaintiff Is Consistent With the Scope of the Second Amendment As Understood at the Adoption of the Bill of Rights ...................................................8

        2.     In the Alternative, as Applied to Plaintiff, Section 922(g)(1) Relates Substantially to the Important Governmental Interest in Protecting Public Safety and Combating Violent Crime........................................................12

    B.     In Any Event, Plaintiff Has Not Presented Facts That Distinguish His Circumstances From Those of Persons Historically Barred From Second Amendment Protections, or Shown That His Circumstances Place Him Outside the Intended Scope of Section 922(g)(1) ...................................................................................18

CONCLUSION.....................................................................................................25

## INTRODUCTION

Enacted in 1968, the Gun Control Act prohibits individuals convicted of crimes punishable by imprisonment for a term of more than one year from possessing firearms. 18 U.S.C. § 922(g)(1). Forty-five years have passed since the Act was enacted, and nearly six years have passed since the Supreme Court held that the Second Amendment protects "the right of law-abiding, responsible citizens to use arms in defense of hearth and home," Dist. of Columbia v. Heller, 554 U.S. 570, 635, 128 S.Ct. 2783, 2821, 171 L.Ed.2d 637 (2008), a decision that prompted numerous constitutional challenges to Section 922(g)(1). Despite this passage of time, Plaintiff cites no federal decision finding this statute to be unconstitutional, either on its face or as applied. Plaintiff thus invites this Court to be the first to invalidate Section 922(g)(1) in the context of its application to an individual convicted of engaging in predatory sexual conduct with a teenaged employee – a crime punishable by up to 5 years imprisonment under Pennsylvania law. The Court should decline Plaintiff's invitation and dismiss the Complaint.

## ARGUMENT

**I.     18 U.S.C. § 922(g)(1) Prohibits Plaintiff From Possessing Firearms.**

**A.     Because Plaintiff Was Convicted of a Crime Punishable By Up to Five Years' Imprisonment, the Statutory Exclusion in 18 U.S.C. § 921(a)(20) Does Not Apply Here.**

Plaintiff was convicted of corruption of minors, a first-degree misdemeanor punishable by up to five years' imprisonment. See 18 Pa.C.S.A. §§ 1104(1), 6301. He was thus "convicted . . . of a crime punishable by imprisonment for a term exceeding one year." 18 U.S.C. § 922(g)(1). Excluded from this definition are "State offense[s] classified by the laws of the State as a misdemeanor and punishable by a term of imprisonment of two years or less." Id. § 921(a)(20)(B). As explained in Defendants' opening brief, because Plaintiff's offense was

1

punishable by a term of up to five years' imprisonment, that offense does not fall within the scope of this statutory exclusion.  See United States v. Essig, 10 F.3d 968, 971 (3d Cir. 1993) (offender convicted of corruption of a minor did not fall within terms of Section 921(a)(20)(B)'s exclusion "because his state conviction is punishable by imprisonment for up to five years"), *superseded on other grounds*; Def. Mot. to Dismiss or for Summ. J. [ECF No. 11] ("Def. Mot.") at 3-5.

Plaintiff contends that the statute is ambiguous and urges the Court to use various tools of interpretation to adopt a reading favorable to him.  See Mem. Supp. Pl. Mot. for Summ. J. [ECF No. 13-1] at 7-15 ("Pl. MSJ").  But the most logical reading of the statute produces no such ambiguity.  The D.C. Circuit has explained that "the commonsense meaning of the term 'punishable'" refers to "any punishment capable of being imposed."  Schrader v. Holder, 704 F.3d 980, 986 (D.C. Cir. 2013) (citing Webster's Third New Int'l Dictionary 1843 (1993)), cert. denied, 134 S.Ct. 512, 187 L.Ed.2d 365 (2013).  Relying on this "commonsense" understanding, the D.C. Circuit, like every other court to consider the issue, has held that an offense "capable of being punished by more than two years' imprisonment" is "ineligible for section 921(a)(20)(B)'s misdemeanor exception."  Id.  That Court explained that Congress intended that "certain State misdemeanors – those punishable by more than two years' imprisonment – fall within the scope of section 922(g)(1)."  Id. at 987; accord United States v. Coleman, 158 F.3d 199, 203-04 (4th Cir. 1998) (en banc) ("[T]he statutory language of § 921(a)(20)(B) unambiguously indicates that the critical inquiry in determining whether a state offense fits within the misdemeanor exception

is whether the offense is 'punishable' by a term of imprisonment greater than two years – not whether the offense 'was punished' by such a term of imprisonment.") (citations omitted).[1]

 While expressly disagreeing with the holdings and analysis of the D.C. Circuit and Fourth Circuit, Plaintiff seizes on this "capable of being punished" language to advocate a strained reading that would place him within the scope of Section 921(a)(20)(B)'s exception. Thus, Plaintiff contends that his "offense comes within the meaning of the exclusion, because it was 'capable of being punished' by a sentence of two years or less, as demonstrated by [the] actual sentence." Pl. MSJ at 9 (internal punctuation omitted). But this argument proves too much. While Plaintiff's offense may have been technically "capable of being punished" by *less* than two years, it was also "capable of being punished" by *more* than two years because the penal statute at issue authorized imprisonment for a term of five years. See 18 Pa.C.S.A. § 1104(1). Until a court actually imposes sentence, a crime is always "capable of being punished by" any term within the statutory maximum. Under Plaintiff's interpretation, a conviction punishable by 25 years would not fall within the scope of 18 U.S.C. § 922(g)(1) because a judge *could* impose a sentence of less than one year, thus rendering the conviction "capable of being

---

[1] The legislative history of the statute also confirms this "commonsense meaning." As the House of Representatives Conference Report explained:

> A difference between the House bill and the Senate amendment . . . is that the crime referred to in the House bill is one punishable by imprisonment for more than 1 year and the crime referred to in the Senate amendment is a crime of violence punishable as a felony . . . . The conference substitute adopts the crime referred to in the House bill (one *punishable* by imprisonment *for more than 1 year*) but excludes from that crime any State offense not involving a firearm or explosive, classified by the laws of the State as a misdemeanor, and *punishable* by a term of imprisonment *of not more than 2 years*.

H.R. Rep. No. 90-1956 at 28-29 (1968) (emphasis added). This provision makes clear that Congress intended the firearms prohibition to include convictions for crimes capable of being punished for more than one year, and to exclude only misdemeanor crimes that are *not* capable of being punished by more than two years.

3

punished" by a term not exceeding one year. Such an interpretation would also exclude any conviction for a State misdemeanor with no mandatory minimum penalty. In addition to turning the common-sense reading of the statutory language on its head, Plaintiff's reading conflicts with Supreme Court and Third Circuit holdings that the actual prison term imposed is "irrelevant" for purposes of Section 922(g)(1)'s prohibition – what matters is the *potential* sentence. See Dickerson v. New Banner Inst., Inc., 460 U.S. 103, 113, 103 S.Ct. 986, 74 L.Ed.2d 845 (1983); Essig, 10 F.3d at 973 ("The Supreme Court [in Dickerson] has clearly established that it is the potential sentence that controls and not the one actually imposed[.]").[2]

**B. The Third Circuit's Holding in Essig Controls This Case.**

In any event, this issue is directly controlled by Essig. There, the Third Circuit held that Section 922(g)(1) prohibited firearms possession by an offender who had been convicted of the

---

[2] Plaintiff provides no support for his contention that the term "punishable" must be construed identically in Sections 922(g)(1) and 921(a)(20)(B), regardless of context. See Pl. MSJ at 11. As courts and commentators alike have observed, the presumption that a word that appears in different places in a document was intended to have the very same meaning at each appearance "assumes a perfection of drafting that, as an empirical matter, is not often achieved. Though one might wish it were otherwise, drafters more than rarely use the same word to denote different concepts . . . ." Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 170 (2012); see also 2A Sutherland Statutes and Statutory Construction ("Sutherland") § 46:5 (7th ed. 2013); Cherokee Nation v. Georgia, 30 U.S. (5 Pet.) 1, 19 (1831) (Marshall, C.J.).

Considering the different contexts in which the term "punishable" is used here, it is far more plausible that Congress intended to be consistent by making the maximum potential sentence applicable to a particular crime the operative factor in determining both the applicability of the prohibition in Section 922(g)(1) and the qualification for the exclusion in Section 921(a)(20)(B). It is worth noting in this regard that in the Firearms Owners Protection Act, 100 Stat. 449 (1986), Congress amended Section 921(a)(20)(B) just a few years after the Supreme Court decided Dickerson, which found only the maximum potential applicable sentence to be relevant. See Logan v. United States, 552 U.S. 23, 27-28, 128 S.Ct. 475, 479-80, 169 L.Ed.2d 432 (2007) (noting 1986 amendment). If, as Plaintiff suggests, Congress had intended to include State misdemeanors within Section 922(g)(1)'s prohibition "only if a mandatory minimum provision requires a sentence exceeding two years," Pl. MSJ at 9, notwithstanding the Supreme Court's emphasis on potential sentences, it is puzzling that Congress did not make this point more explicit in the statute. See 1A Sutherland § 22:29 ("When a legislature undertakes to amend a statute which has been the subject of judicial construction, courts presume the legislature was fully cognizant of such construction.") (collecting cases).

very same corruption of minors statute and had also been sentenced to probation, notwithstanding Section 921(a)(20), because the offense was punishable by imprisonment of up to five years. 10 F.3d at 972-73. Plaintiff concedes that Essig forecloses his statutory argument, but urges the Court to depart from this precedent in light of Heller. The Court should decline to do so.

"It is, of course, patent that a district court does not have the discretion to disregard controlling precedent simply because it disagrees with the reasoning behind such precedent." Vujosevic v. Rafferty, 844 F.2d 1023, 1030 n.4 (3d Cir. 1988). Even the Court of Appeals is bound by precedential opinions of earlier panels absent an en banc decision. In re Grossman's Inc., 607 F.3d 114, 116-17 (3d Cir. 2010) (en banc). This Court is thus "obliged to follow Third Circuit precedent" unless that precedent has been "squarely overruled" by a decision of the Supreme Court or the Third Circuit sitting en banc. Loftus v. S.E. Pa. Transp. Auth., 843 F. Supp. 981, 984 (E.D. Pa. 1994). And even where a conflict between decisions of the Supreme Court and the Third Circuit may exist, this Court "must attempt to reconcile" any such conflict, rather than disregarding Third Circuit or Supreme Court precedent. Id. (citations omitted).

Here, there is no direct or indirect "conflict" to reconcile between Heller's holding that "the District [of Columbia]'s ban on handgun possession in the home violates the Second Amendment, as does its prohibition against rendering any lawful firearm in the home operable for the purpose of immediate self-defense," 554 U.S. at 635, 128 S.Ct. at 2821-22, and Essig's holding that a conviction for corruption of minors, punishable by five years' imprisonment, disqualifies an individual from firearms possession under Section 922(g)(1). And contrary to Plaintiff's suggestion, Pl. MSJ at 14-15, Essig did not base its holding, explicitly or implicitly, on a "collective rights" reading of the Second Amendment, and Heller thus did not overrule Essig.

5

Rather, Essig decided a pure question of statutory interpretation, aided by the Supreme Court's decision in Dickerson, which remains good law after Heller for the point for which it was cited in Essig. See, e.g., Schrader, 704 F.3d at 990 (relying on Dickerson); United States v. Yancey, 621 F.3d 681, 683 (7th Cir. 2010) (per curiam) (same). Moreover, as detailed in Defendants' opening brief, near-uniform case law has upheld the constitutionality of Section 922(g)(1), even after Heller, and even as applied to non-violent offenders. See Def. Mot. at 16-18. There is thus no "sound reason" for believing, as Plaintiff contends, that the Essig panel would "change its collective mind" in light of Heller. Pl. MSJ at 14.[3]

### C. Plaintiff's Citations to Various Canons of Construction Are Unavailing.

As explained above, courts that have interpreted Section 921(g)(20) have not found its language ambiguous, and the Third Circuit has found that an identically-positioned individual fell within Section 922(g)(1)'s proscription. Nonetheless, Plaintiff invites this Court to use various canons of statutory construction to adopt his preferred reading over that adopted by these courts. None of Plaintiffs' tools of interpretation are availing, however. First, Plaintiff invokes the rule of lenity. Pl. MSJ at 7-8. However, the Third Circuit has made clear that the "rule of lenity is reserved for statutes with grievous ambiguity." United States v. Diaz, 592 F.3d 467, 474-75 (3d Cir. 2010). The "simple existence of some statutory ambiguity . . . is not sufficient to

---

[3] Moreover, Plaintiff is not correct that Essig only considered arguments not advanced here. Pl. MSJ at 10. While Plaintiff here may have articulated his argument slightly differently, the essence of that argument is the same as that advanced by the defendant in Essig, namely, that his crime is insufficiently serious to warrant Section's 922(g)(1) prohibition. Compare Essig, 10 F.3d at 972 (contending that Essig did not fall within the prohibition in Section 922(g) because he was "only a technical violator within the terms of §[] 921(a)(20)," not the type of "dangerous offender[]" that "Congress intended to sanction") with Pl. MSJ at 9 (arguing that "'felon' treatment applies" only if a misdemeanor *cannot* be punished by two years or less, e.g., because it is extremely serious and warrants a higher mandatory minimum sentence") (emphasis in original). In any event, nothing requires a court decision to consider and reject every potential argument for that decision to be binding.

6

warrant application of the rule of lenity, for most statutes are ambiguous to some degree."
United States v. Kouevi, 698 F.3d 126, 138 (3d Cir. 2012) (quoting Dean v. United States, 556
U.S. 568, 577, 129 S.Ct. 1849, 173 L.Ed.2d 785 (2009)) (internal quotation marks omitted),
*superseded on other grounds.* "Rather, the rule only applies in those cases in which a reasonable
doubt persists about a statute's intended scope after consulting everything from which aid can be
derived." United States v. Brown, 740 F.3d 145, 151 (3d Cir. 2014) (internal citation omitted).
Because the rule represents an "interpretive method of last resort," id., it does not apply here,
where the Third Circuit has already interpreted this statutory text in a controlling decision.

Nor is Plaintiff aided by the "constitutional avoidance" doctrine. Pl. MSJ at 13-14. As
explained below, see infra part II, this case does not involve "serious constitutional questions."
Northwest Austin Mun. Util. Dist. No. One v. Holder, 557 U.S. 193, 204, 129 S. Ct. 2504, 2513,
174 L. Ed. 2d 140 (2009). See Schrader, 704 F.3d at 988 (applying Section 922(g)(1) to
common-law misdemeanants "creates no constitutional problem that we need to avoid"). "The
'constitutional doubts' argument has been the last refuge of many an interpretive lost cause.
Statutes should be interpreted to avoid *serious* constitutional doubts, not to eliminate all possible
contentions that the statute *might* be unconstitutional." Reno v. Flores, 507 U.S. 292, 314 n.9,
113 S.Ct. 1439, 1453 (1993) (internal citation omitted) (emphasis in original).

In sum, because Plaintiff was convicted of a crime punishable by up to five years'
imprisonment, he falls squarely within Section 922(g)(1)'s prohibition.

## II. As Applied to Plaintiff, Section 922(g)(1) Does Not Violate the Second Amendment.

### A. Because This Case Involves a Second Amendment Challenge, the Two-Prong Test from United States v. Marzzarella Applies Here.

In United States v. Marzzarella, 614 F.3d 85 (3d Cir. 2010), the Third Circuit explained:
"As we read Heller, it suggests a two-pronged approach to Second Amendment challenges." Id.

at 89. "First, we ask whether the challenged law imposes a burden on conduct falling within the scope of the Second Amendment's guarantee." Id. (citation omitted). "If it does not, our inquiry is complete." Id. "If it does, we evaluate the law under some form of means-end scrutiny" and "[i]f the law passes muster under that standard, it is constitutional," but "[i]f it fails, it is invalid." Id. Though Plaintiff contends that Marzzarella only applies "in some facial challenges," nothing in the decision so limits its holding. Pl. Opp. to Def. Mot. [ECF No. 14] at 4 ("Pl. Opp."). Rather, the Third Circuit held that this "two-pronged approach" would apply "to Second Amendment challenges," without drawing any distinction between facial and as-applied challenges. 614 F.3d at 89. This case involves a Second Amendment challenge, and the framework established by Marzzarella thus controls here. In any event, as explained below, even if a different standard were to apply here, Plaintiff's challenge still would not succeed. See infra part II.B.

### 1. Disarming Plaintiff Is Consistent With the Scope of the Second Amendment As Understood at the Adoption of the Bill of Rights.

"[E]xclusions [from the right to bear arms] need not mirror limits that were on the books in 1791," the year the Second Amendment was enacted. United States v. Skoien, 614 F.3d 638, 641 (7th Cir. 2010) (en banc). Nonetheless, as demonstrated in Defendants' opening brief, the Supreme Court's acknowledgment in Heller that Congress has the authority to disarm persons convicted of serious crimes is consistent with the history of the right to arms as it developed in England and in early America. See Def. Mot. at 7-11. Heller's holding was narrow, addressing only the "core" right of "*law-abiding, responsible* citizens to use arms in defense of hearth and home." 554 U.S. at 635, 128 S.Ct. at 2821-22 (emphasis added). Thus, as applied to Plaintiff, 18 U.S.C. § 922(g)(1) does not burden conduct falling within the scope of the Second Amendment's protection.

In response, Plaintiff interprets <u>Heller</u> as expressly contrasting "felons and the mentally ill" with "law-abiding, responsible citizens," apparently implying that the latter phrase includes all persons not encompassed by the former.  Pl. Opp. at 5-6.  But the only support Plaintiff cites for construing <u>Heller</u> in this manner is a single-judge concurrence from the Ninth Circuit.  <u>See United States v. Chovan</u>, 735 F.3d 1127, 1142-52 (9th Cir. 2013) (Bea, J., concurring).  Notably, the <u>Chovan</u> majority opinion (and at least one other Court of Appeals) did not accept this interpretation.  <u>See id.</u> at 1138 ("'Although [Chovan] asserts his right to possess a firearm in his home for the purpose of self-defense, we believe his claim is not within the core right identified in <u>Heller</u> – the right of a *law-abiding, responsible* citizen to possess and carry a weapon for self-defense – by virtue of [Chovan]'s criminal history as a domestic violence misdemeanant.'") (quoting <u>United States v. Chester</u>, 628 F.3d 673, 682-83 (4th Cir. 2010)) (emphasis in <u>Chester</u>).

Moreover, this interpretation does not withstand scrutiny.  To begin with, <u>Heller</u> used these phrases in different sections analyzing distinct issues.  <u>Contrast</u> 554 U.S. at 626-27, 128 S.Ct. 2816-17 ("[N]othing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill, or laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, or laws imposing conditions and qualifications on the commercial sale of arms.") <u>with id.</u> at 635, 128 S.Ct. at 2821 ("And whatever else it leaves to future evaluation, [the Amendment] surely elevates above all other interests the right of law-abiding, responsible citizens to use arms in defense of hearth and home.").  <u>Heller</u> thus used the phrase "felons and the mentally ill" in a non-exhaustive list of "presumptively lawful regulatory measures," <u>id.</u> at 627 n.26, 128 S.Ct. at 2817 n.26, beyond the scope of the Second Amendment's protection, and employed the phrase "law-abiding, responsible citizens" in discussing the nature of the core right.  Most importantly,

Heller did not draw any express or implicit connection between these two phrases.  And drawing such a connection would be at odds with Heller's express statement that the specifically-identified "presumptively lawful regulatory measures," including prohibitions on firearms possession by felons and mentally-ill persons, were only "examples" rather than an exhaustive list.  Id.  Plaintiff's suggested interpretation of Heller thus does not withstand close scrutiny.

Additionally, Plaintiff's reliance on United States v. Barton, 633 F.3d 168, 172 n.2 (3d Cir. 2011), is misplaced.  See Pl. Opp. at 6.  If anything, Barton actually shows that because Plaintiff falls within the scope of Section 922(g)(1)'s prohibition, he is categorically excluded from the Second Amendment's protection.  The Barton footnote cited by Plaintiff was addressing the defendant's proposition that "courts may not rely exclusively on Heller's list of 'presumptively lawful' regulations to justify categorical exclusions to the Second Amendment," a proposition for which the defendant had cited two cases.  Barton, 633 F.3d at 172 n.2.  The Third Circuit explained that the defendant's "reliance on these cases [was] misplaced" because the statute they had construed – 18 U.S.C. § 922(g)(9), prohibiting gun possession by domestic-violence misdemeanants – "was not included in Heller's list of permissible regulations," and these cases thus "look[ed] beyond [that] language in Heller to find that domestic violence offenders were not protected by the Second Amendment."  Id.  By contrast, the Third Circuit stated, "[h]ere, no such inquiry is necessary, because § 922(g)(1) is one of Heller's enumerated exceptions."  Id.  Here, because Plaintiff falls within the scope of the prohibition of Section 922(g)(1), "one of Heller's enumerated exceptions," this Court may "rely exclusively" on Heller "to justify categorical exclusions to the Second Amendment."  Id.[4]

---

[4] Plaintiff's reliance on Chovan and Chester, Pl. Opp. at 6, is similarly misplaced because those cases also involved Section 922(g)(9), a statute "not included in Heller's list of permissible regulations."  Barton, 633 F.3d at 172 n.2.  By contrast, this case involves Section 922(g)(1),

Moreover, Plaintiff cites no authority for his assertion that courts have rejected applying Heller's statement regarding felons to apply to persons like Plaintiff, who was convicted of a crime classified by the State of conviction as a misdemeanor, but punishable by imprisonment of two years or more. Pl. Opp. at 6. True, the D.C. Circuit in Schrader declined to reach the specific issue of whether persons convicted of common-law misdemeanors fell outside the scope of the Second Amendment's protection. Schrader, 704 F.3d at 989. But it was unnecessary for the D.C. Circuit to reach that issue because it concluded that, in any event, Section 922(g)(1) satisfied intermediate scrutiny as applied to such misdemeanants. Id. at 989-91.[5]

Finally, Plaintiff provides no support for his claim that contemporary courts recognize a difference in degree between a first- and second-degree misdemeanor, but a difference in kind

---

which "is one of Heller's enumerated exceptions." Id. Nor does the truncated sentence Plaintiff quotes from Drake v. Filko, 724 F.3d 426 (3d Cir. 2013), avail him here. The full sentence reads: "As the Seventh Circuit itself had earlier stated in [Skoien], Heller's language 'warns readers not to treat Heller as containing broader holdings than the Court set out to establish: that the Second Amendment created individual rights, one of which is keeping operable handguns *at home* for self-defense.'" Id. at 431 (quoting Skoien, 614 F.3d at 640) (emphasis in Drake). And as relevant here, Skoien noted shortly after this quoted sentence: "That *some* categorical limits [on the possession of weapons by some persons] are proper is part of the [Amendment's] original meaning, leaving to the people's elected representatives the filling in of details." 614 F.3d at 640 (emphasis in original).

[5] Furthermore, to counter any notion that laws punishing the specific type of criminal conduct at issue here – sexual activity with a minor – are of recent vintage, Defendants' opening brief cited the example of a 1576 statute that formed part of the common law originally brought to the United States. Def. Mot. at 10. This statute punished as a felony sexual activity with a female person under ten years of age. While Plaintiff correctly points out that the minor with whom he had sexual intercourse was not less than 10 years old, that is a distinction without a difference for historical purposes. The point is that English and American law have long recognized that persons under a legislatively-prescribed age lack the capacity to consent meaningfully to sexual activity. Given the significant discretion afforded legislatures in selecting this age, contemporary laws (such as the one under which Plaintiff was convicted) represent a difference in degree, not in kind, from common law. See Nider v. Commonwealth, 131 S.W. 1024, 1026, 140 Ky. 684 (Ky. 1910) ("It will thus be seen that our statute upon the subject is merely a recognition of the common law of offense, which it has modified by changing the age of consent from 10 to 16, and fixing the penalty at confinement in the penitentiary in place of death.").

between a misdemeanor and a felony.  Pl. Opp. at 8.  Though the distinction between a misdemeanor and a felony may once have been significant, today the difference is "minor and often arbitrary," given that "numerous misdemeanors involve conduct more dangerous than many felonies."  Tennessee v. Garner, 471 U.S. 1, 14, 105 S.Ct. 1694, 1703, 85 L.Ed.2d 1 (1985).  Legislatures frequently do not draw any sharp distinction in terms of punishment, as evidenced by the fact that the maximum statutory penalty imposed by Pennsylvania for a first-degree misdemeanor (such as Plaintiff's crime) of 5 years is comparable to the 7-year maximum penalty for a third-degree felony.  See 18 Pa.C.S.A. §§ 1103, 1104.

In short, because 18 U.S.C. § 922(g)(1) does not implicate a right protected by the Second Amendment, the Court's analysis should end at the first step of Marzzarella's two-step analysis.

## 2. In the Alternative, as Applied to Plaintiff, Section 922(g)(1) Relates Substantially to the Important Governmental Interest in Protecting Public Safety and Combating Violent Crime.

Alternatively, as explained in Defendants' opening brief, if the Court proceeds to the second step of Marzzarella to apply means-end scrutiny, it should still uphold Section 922(g)(1) as applied to Plaintiff because the statute relates substantially to the important governmental interest in protecting public safety and combating violent crime.  Def. Mot. at 11-16.

As an initial matter, Plaintiff fails to support his assertion that if means-end scrutiny is appropriate here, strict scrutiny, rather than intermediate scrutiny, should provide the standard.  Pl. Opp. at 7.  Plaintiff cites no decision that has analyzed Section 922(g)(1) under strict scrutiny, and courts that have used an independent means-end analysis in examining this statute have applied no more than intermediate scrutiny.  See Schrader, 704 F.3d at 989 ("Although section 922(g)(1)'s burden is certainly severe, it falls on individuals who cannot be said to be exercising

the core of the Second Amendment right identified in Heller, i.e., 'the right of law-abiding, responsible citizens to use arms in defense of hearth and home.' 554 U.S. at 635, 128 S.Ct. 2783. Because common-law misdemeanants as a class cannot be considered law-abiding and responsible, we follow those 'courts of appeals [that] have generally applied intermediate scrutiny' in considering challenges to 'Congress' effort under § 922(g) to ban firearm possession by certain classes of non-law-abiding, non-responsible persons who fall outside the Second Amendment's core protections.'") (quoting United States v. Mahin, 668 F.3d 119, 123 (4th Cir. 2012) (collecting cases)). Thus, if the Court decides to utilize means-end scrutiny here, it should apply no more than intermediate scrutiny.

Under that standard, Plaintiff's constitutional challenge fails because there is at least a "reasonable fit" between applying Section 922(g)(1) to a person convicted of a corruption-of-minors crime punishable by a term of imprisonment of more than two years, see 18 U.S.C. § 921(a)(20)(B), and the government's interest in protecting public safety and preventing violent crime. Drake, 724 F.3d at 436. "When reviewing the constitutionality of statutes, courts 'accord substantial deference to the [legislature's] predictive judgments.'" Id. (quoting Turner Broad. Sys., Inc. v. FCC, 520 U.S. 180, 195, 117 S.Ct. 1174, 1189, 137 L.Ed.2d 369 (1997)). Those predictive judgments demonstrate the reasonableness of Section 922(g)(1)'s application here.

"[T]he Government's general interest in preventing crime is compelling," United States v. Salerno, 481 U.S. 739, 750, 107 S.Ct. 2095, 2103, 95 L.Ed.2d 2095 (1987), and the Supreme Court's cases have "recognized and given weight" to Congress's "broad prophylactic purpose" in enacting the provisions at Section 922(g). Dickerson, 460 U.S. at 118, 103 S.Ct. at 995. As the Supreme Court has explained, "[t]he history of the 1968 Act reflects" Congress's "concern with keeping firearms out of the hands of categories of potentially irresponsible persons, including

convicted felons." <u>Barrett v. United States</u>, 423 U.S. 212, 220, 96 S.Ct. 498, 503, 46 L.Ed.2d 450 (1976).[6] "[P]ersons with records of misdemeanor arrests" were among those whose access to firearms concerned Congress. S. Rep. No. 88-1340, at 4 (1964).

Congress "was concerned with the widespread traffic in firearms and with their general availability to those whose possession thereof was contrary to the public interest." <u>Dickerson</u>, 460 U.S. at 118, 103 S.Ct. at 995 (quoting <u>Huddleston v. United States</u>, 415 U.S. 814, 824, 94 S.Ct. 1262, 1268, 39 L.Ed.2d 782 (1974) (quotation marks omitted)). "The principal purpose of federal gun control legislation, therefore, was to curb crime by keeping firearms out of the hands of those not legally entitled to possess them because of age, criminal background, or incompetency." <u>Id.</u> (citations and internal punctuation omitted). The Supreme Court has further observed that "[i]n order to accomplish this goal, Congress obviously determined that firearms must be kept away from persons, such as those convicted of serious crimes, who might be expected to misuse them." <u>Id.</u> at 119, 103 S.Ct. at 995.

To that end, Section 922(g)(1) provides that "it shall be unlawful for any person . . . who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year . . . to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce." The statute does not apply where the offense of conviction is a

---

[6] <u>See</u>, <u>e.g.</u>, Omnibus Crime Control and Safe Streets Act of 1968, Pub. L. No. 90-351, Title IV, § 901(a)(2), 82 Stat. 197, 225 ("Omnibus Act") (finding that "that the ease with which" handguns could be acquired by "criminals . . . and others whose possession of such weapons is similarly contrary to the public interest[,] is a significant factor in the prevalence of lawlessness and violent crime in the United States"); S. Rep. No. 89-1866, at 3, 53 (1966) (Congress's investigations revealed "a serious problem of firearms misuse in the United States," and a "relationship between the apparent easy availability of firearms and criminal behavior"); <u>id.</u> at 1 (Congress aimed to "regulate more effectively interstate commerce in firearms so as to reduce the likelihood that they fall into the hands of the lawless or those who might misuse them"); S. Rep. No. 88-1340, at 12, 18 (law enforcement officials testified to the "tragic results" of firearm misuse by persons with prior criminal convictions).

State misdemeanor offense "punishable by a term of imprisonment of two years or less," 18

U.S.C. § 921(a)(20)(B), or an "offense[] pertaining to antitrust violations, unfair trade practices,

restraints of trade, or other similar offense[] relating to the regulation of business practices," id.

§ 921(a)(20)(A).  Nor does it apply to "[a]ny conviction which has been expunged, or set aside

or for which a person has been pardoned or has had civil rights restored . . . unless such

pardon, expungement, or restoration of civil rights expressly provides that the person may not

ship, transport, possess, or receive firearms."  Id. § 921(a)(20).

To demonstrate that Congress's predictive judgments underlying Section 922(g)(1)

justify the statute's application to Plaintiff, Defendants' opening brief cited the conclusions of

several empirical studies.  Def. Mot. at 13-15.  Though Plaintiff tries to discount the findings of

those studies, Pl. Opp. at 9-11, his efforts are not persuasive.

Initially, Defendants presented two studies showing that convicted offenders as a group,

including those convicted of crimes that did not involve violence, present a significant risk of

recidivism for violent crime.  Def. Mot. at 14.  The first study showed that, of 210,886

nonviolent offenders released in 1994 from prison in 15 States, approximately 1 in 5 offenders

was rearrested for violent offenses within three years.  Def. Mot., Ex. 3.  And though Plaintiff

speculates that the study's results might have differed had it studied non-incarcerated persons, Pl.

Opp. at 9, Plaintiff presents no evidence to support that speculation.  See also Kaemmerling v.

Lappin, 553 F.3d 669, 683 (D.C. Cir. 2008) ("Other courts . . . have observed that nonviolent

offenders not only have a higher recidivism rate than the general population, but certain groups –

such as property offenders – have an even higher recidivism rate than violent offenders, and a

large percentage of the crimes nonviolent recidivists later commit are violent.") (citing cases).

The second study concluded, based on a study of handgun purchases denied as a result of a prior

conviction or arrest for a crime punishable by imprisonment or death, that "denial of handgun purchase is associated with a reduction in risk for later criminal activity of approximately 20% to 30%." Def. Mot., Ex. 4, at 3. Though, as Plaintiff notes, the study stated that the "modest benefit" shown "may reflect the fact that members of both study groups had extensive prior criminal records and therefore were at high risk for later criminal activity," the study also noted that "[t]he size of this effect is comparable to that seen in other crime prevention measures." Id.

Defendants also introduced five empirical studies showing that individuals convicted of sexual-misconduct crimes, as a class, are also much more likely than the general population to commit future crimes. See Def. Mot. at 14-15.[7] Plaintiff's attempt to downplay the significance of these studies, Pl. Opp. at 10, is not persuasive. Courts that rely on empirical studies (or simply on findings by other courts) in conducting constitutional means-ends analyses in response to Second Amendment claims have examined whether those studies or findings link persons convicted of a generic category of crime (such as "domestic violence crimes") to a likelihood of re-offending. See Skoien, 614 F.3d at 644 (examining recidivism rates for "people convicted of domestic violence"); Barton, 633 F.3d at 174 (examining findings by courts that "offenses relating to drug trafficking and receiving stolen weapons" were linked to violent crime); Chovan, 735 F.3d at 1140-41 (examining studies of "domestic violence recidivism"); United States v. Miller, 604 F. Supp. 2d 1162, 1171-73 (W.D. Tenn. 2009) (relying on nexus between felons in general and violent crime in concluding that Section 922(g)(1) satisfied intermediate scrutiny with respect to offender convicted of possession and manufacture of controlled substances); United States v. Schultz, No. 08-75, 2009 WL 35225, at *5 (N.D. Ind. Jan. 5, 2009) (upholding

---

[7] Though the hyperlink to the first study, a recidivism study by the Pennsylvania Department of Corrections, was functional at the time Defendants filed their opening brief, the hyperlink no longer appears to be functioning. Defendants are thus attaching that study as Exhibit 1.

Section 922(g)(1) as applied to offender convicted of failure to pay child support based on finding that "[p]ersons who have committed felonies are more likely to commit crimes than those who have not"). It is thus sufficient to show that studies have linked the generic category of crime of which Plaintiff was convicted – sexual misconduct – with a propensity to commit future crimes. While Plaintiff concedes that his crime "involved bad judgment," he also incorrectly insists that it did not involve "coercion of any kind." Pl. MSJ at 18. Plaintiff fundamentally fails to understand the nature of the crime of which he was convicted. As Pennsylvania courts have recognized, the corruption of minors statute recognizes that "an immature female can easily be seduced or mentally overpowered by an adult to engage in a large range of activity[.]" Commonwealth v. Decker, 698 A.2d 99, 102 (Pa. Super. Ct. 1997). Congress's "predictive judgment" that keeping firearms out of the hands of persons who exercised such "poor judgment" that can "seduce" or "mentally overpower" a minor into committing "corrupting [sexual] activity," id. at 100-02, furthers its legislative goals and is certainly entitled to deference. See Drake, 724 F.3d at 436.

And Plaintiff's contention that "he is not a 'statutory rapist'" is not persuasive. Pl. Opp. at 10; see also id. at 2 (claiming that "Plaintiff is not a rapist, statutory or otherwise"). It is correct that the title of the crime for which Plaintiff was convicted is "corruption of minors." However, the criminal activity for which Plaintiff was punished consisted of sexual activity with a minor. Such activity falls within the well-understood generic legal and layperson's definition of "statutory rape."[8] And the studies Defendants submitted include this generic crime. See Def. Mot. at 14-15.[9]

_____

[8] See Black's Law Dictionary 1412 (6th ed. 1990) ("The unlawful sexual intercourse with a female under the age of consent which may be 16, 17 or 18 years of age, depending upon the state statute. The government is not required to prove that intercourse was without the consent

Moreover, Plaintiff is also incorrect, Pl. Opp. at 11, that he can prevail without rebutting Defendants' evidence linking persons convicted of sexual misconduct crimes with a higher rate of recidivism than the general population. <u>See</u> <u>Chovan</u>, 735 F.3d at 1142 (even "assum[ing] that Chovan has had no history of domestic violence since 1996, Chovan has not presented evidence to directly contradict the government's evidence that the rate of domestic violence recidivism is high. Nor has he directly proved that if a domestic abuser has not committed domestic violence for fifteen years, that abuser is highly unlikely to do so again. In the absence of such evidence, we conclude that the application of § 922(g)(9) to Chovan is substantially related to the government's important interest of preventing domestic gun violence.").

In sum, especially in light of the "substantial deference" afforded to "predictive judgments" made by Congress when reviewing the constitutionality of statutes, <u>Drake</u>, 724 F.3d at 436-37, applying Section 922(g)(1) to Plaintiff satisfies intermediate scrutiny.

    **B.**    **In Any Event, Plaintiff Has Not Presented Facts That Distinguish His Circumstances From Those of Persons Historically Barred from Second Amendment Protections, or Shown That His Circumstances Place Him Outside the Intended Scope of Section 922(g)(1).**

---

of the female because she is conclusively presumed to be incapable of consent by reason of her tender age."); <u>Am. Heritage Dictionary of the English Language</u> 1708 (5th ed. 2011) ("Sexual relations with a person who has not reached the statutory age of consent."); <u>Random House Webster's Unabridged Dictionary</u> 1862 (2d ed. 2001) ("*U.S. Law.* [S]exual intercourse with a girl under the age of consent, which age varies in different states."); <u>New Oxford Am. Dictionary</u> 1665 (2001) ("*Law.* [S]exual intercourse with a minor."); <u>Merriam-Webster's Collegiate Dictionary</u> 1220 (11th ed. 2003) ("[S]exual intercourse with a person who is below the statutory age of consent[.]")

[9] Plaintiff also incorrectly contends that these studies only examined "people released from state prison." Pl. Opp. at 10. Not so. <u>See</u> Lisa L. Sample & Timothy L. Bray, <u>Are Sex Offenders Different? An Examination of Rearrest Patterns</u>, 17 Crim. Just. Pol'y Rev. 83, 93 (2006), *available at* http://cjp.sagepub.com/content/17/1/83.full.pdf (37.4% of sex offender arrestees – including but not limited to individuals arrested for statutory rape – in Illinois between 1990 and 1997 whose victims were between 13 and 18 years of age were rearrested within 5 years); <u>see also</u> <u>id.</u> at 92 ("Rearrest, one of the most common measures found in recidivism research, serves as our measure for reoffending.").

Even if the standard applicable to Plaintiff's as-applied challenge were derived from Barton, and not Marzzarella, Plaintiff's challenge would still fail. See Def. Mot. at 16-24. In Barton, the Third Circuit observed that Heller did not "catalogue the facts [courts] must consider when reviewing a felon's as-applied challenge," but instead only "noted that [the Supreme Court] will 'expound upon the historical justifications for exceptions it mentioned if and when those exceptions come before it.'" 633 F.3d at 173 (quoting Heller, 554 U.S. at 635, 128 S.Ct. 2783) (internal punctuation omitted). Thus, the Third Circuit explained that it would "evaluate Barton's as-applied challenge" by "look[ing] to the historical pedigree of 18 U.S.C. § 922(g) to determine whether the traditional justifications underlying the statute support a finding of permanent disability in this case." Id. After examining relevant statutory history and debates from State conventions ratifying the Constitution, the Third Circuit stated: "To raise a successful as-applied challenge, Barton must present facts about himself and his background that distinguish his circumstances from those of persons historically barred from Second Amendment protections." Id. at 174. "For instance," it explained, "a felon convicted of a minor, non-violent crime *might* show that he is no more dangerous than a typical law-abiding citizen." Id. (emphasis added). It also stated that a court "*might* find that a felon whose crime of conviction is decades-old poses no continuing threat to society." Id. (emphasis added).

As explained in Defendants' opening brief, Def. Mot. at 16-24, given the seriousness of Plaintiff's offense, there is no basis for distinguishing Plaintiff from "persons historically barred from Second Amendment protections." Barton, 633 F.3d at 174. Plaintiff's belief that his particular conviction should somehow be viewed differently "flows not from any insight gleaned from [Section 922(g)(1)], but rather from plaintiff['s] flawed belief that [his] offense[ is] trivial." Schrader, 704 F.3d at 988. This flawed belief is demonstrated by Plaintiff's repeated attempts to

19

minimize his criminal offense as involving mere "admittedly bad behavior," Pl. Opp. at 8,

"regrettable conduct," id., or a "consensual if illicit affair[]," Pl. MSJ at 18. Plaintiff did not just

behave badly or conduct himself in a regrettable manner. He engaged in predatory sexual

behavior with a teenage employee, 24 years younger than him. Pennsylvania punishes such

criminal conduct by a maximum penalty of five years' imprisonment, and the mere fact that the

Commonwealth characterizes this offense as a first-degree "misdemeanor" does not suggest that

it is a minor crime. See Garner, 471 U.S. at 14, 105 S.Ct. at 1703 (explaining that the distinction

between misdemeanors and felonies is "minor and often arbitrary," given that "numerous

misdemeanors involve conduct more dangerous than many felonies"). In fact, Pennsylvania also

classifies crimes such as involuntary manslaughter, negligent homicide while hunting, assault on

a child younger than 12, making terroristic threats, throwing a fire bomb into an occupied

vehicle, and stalking as first-degree misdemeanors.[10] Thus, Plaintiff cannot plausibly contend

that he was convicted of a "minor" crime simply because the Commonwealth classifies it as a

first-degree misdemeanor. See Decker, 698 A.2d at 100, 101 (explaining the seriousness of

corruption-of-minors offense, even if the sexual conduct is purportedly consensual in nature).

Moreover, the Third Circuit recently upheld a determination by this Court that a Second

Amendment challenge to Section 922(g)(1) would fail as applied to an offender convicted of

first-degree misdemeanors under Pennsylvania law whose crimes were allegedly non-violent in

nature. Dutton v. Commonwealth, 2012 WL 3020651 (E.D. Pa. July 23, 2012), aff'd, 503 F.

App'x 125 (3d Cir. 2012) (per curiam). Though Plaintiff attempts to distinguish Dutton, his

attempts are not successful. Pl. Opp. at 12. While it is correct that Dutton's complaint alleged a

---

[10] See 18 Pa.C.S.A. §§ 2504 (involuntary manslaughter), 2701(b)(2) (assault on child under 12),
2706(d) (terroristic threats), 2707(a) (propelling any "deadly or dangerous missile, or fire bomb"
into an occupied vehicle); 2709(a), (c)(1) (stalking); 34 Pa.C.S.A. § 2522(a), (b)(3) (killing a
human being, through carelessness or negligence, while hunting).

violation of his statutory rights under Section 922(g), both this Court and the Third Circuit

"construe[d] [the] complaint liberally." See 2012 WL 3020651, at *2 n.3; 503 F. App'x at 127.

This Court thus determined that "had Plaintiff asserted a constitutional challenge" to Section

922(g)(1), it "would have found the claim lacked merit." 2012 WL 3020651, at *2 n.3. Though

Plaintiff characterizes Defendants' description of Dutton as "badly misconstru[ing]" the case's

holding and "at best, misleading," Pl. Opp. at 12, this characterization is groundless, as reflected

in the full text of the relevant footnote from Dutton:

> While the Court will construe a pro se plaintiff's complaint liberally, Dutton does not
> allege a challenge to 18 U.S.C. § 922 under the Second Amendment. Nevertheless, had
> Plaintiff asserted a constitutional challenge, the Court would have found the claim lacked
> merit. The Third Circuit has analyzed the provision at issue in this case – 18 U.S.C. §
> 922(g)(1) – and held it to be facially constitutional. United States v. Barton, 633 F.3d
> 168, 175 (3d Cir. 2011) (citing District of Columbia v. Heller, 554 U.S. 570, 128 S.Ct.
> 2783, 171 L.Ed.2d 637 (2008), and McDonald v. City of Chi., —— U.S. ——, 130 S.Ct.
> 3020, 177 L.Ed.2d 894 (2010)). Furthermore, the Third Circuit has also found that
> Section 922(g)(1) is constitutional as applied to individuals who have presented no facts
> distinguishing their "circumstances from those of other felons who are categorically
> unprotected by the Second Amendment." Id.; see also United States v. Marzzarella, 614
> F.3d 85, 92 (3d Cir. 2010) (noting that "although the Second Amendment protects the
> individual right to possess firearms for defense of hearth and home, Heller suggests . . . a
> felony conviction disqualifies an individual from asserting that interest").

Dutton, 2012 WL 3020651, at *2 n.3.

In other words, this Court determined that a constitutional challenge to Section 922(g)(1)

as applied to Dutton would be meritless for two reasons. First, as held in Barton, the statute is

facially constitutional. Second, an as-applied challenge would fail because, like the defendant in

Barton, Dutton was an "individual[] who ha[s] presented no facts distinguishing [his]

circumstances from those of other felons who are categorically unprotected by the Second

Amendment." 2012 WL 3020651, at *2 n.3 (citation and internal punctuation omitted). In short,

this Court determined that the facts presented by the plaintiff – that he had been convicted on

April 6, 1995 of carrying firearms on a public street and carrying firearms without a license, and

that his convictions were for first-degree misdemeanors – did not distinguish his circumstances from those of other offenders who are categorically unprotected by the Second Amendment. Similar to Plaintiff here, it was undisputed in <u>Dutton</u> that the plaintiff had not been convicted of any other crime since the 1990s. Regardless, the fact that the plaintiff in <u>Dutton</u> had been convicted of two first-degree misdemeanors was sufficient for the Court to determine that no facts had been presented distinguishing the plaintiff's circumstances "from those of other felons who are categorically unprotected by the Second Amendment." <u>Id.</u>

Moreover, this determination was not dicta because it was necessary to the Court's determination that granting Dutton leave to amend his complaint would be futile. <u>Id.</u> at *3 ("Having determined that any constitutional challenge of 18 U.S.C. 922(g)(1) would lack merit, the Court concludes that any amendment by Plaintiff would be futile and will dismiss the claim with prejudice"). And the Third Circuit upheld this determination, stating that although "both of Dutton's previous convictions are classified as first degree misdemeanors in Pennsylvania," those convictions "*classify him as a felon* under 18 U.S.C. § 922(g)(1)." 503 F. App'x at 127 n.1 (emphasis added). Like this Court, the Third Circuit found that any constitutional challenge to Section 922(g)(1) as applied to Dutton would fail because <u>Barton</u> had "determined that § 922(g)(1) is constitutional as applied to an individual, like Dutton, who has presented no facts distinguishing his circumstances from those of other felons who are categorically unprotected by the Second Amendment." <u>Id.</u> (citation and internal punctuation omitted). And that finding was not dicta because it was necessary to the Third Circuit's "conclu[sion] that the District Court did not err in declining to allow Dutton an opportunity to amend" his complaint." <u>Id.</u> at 127 n.2.

<u>Dutton</u> controls this case. The plaintiff in <u>Dutton</u> had been convicted of two first-degree misdemeanors (carrying a firearm on a public street and carrying a firearm without a license).

Notably, Plaintiff here does not contend that either misdemeanor is inherently violent in nature. Regardless, construing the plaintiff's complaint liberally, the Third Circuit upheld this Court's determination that any constitutional challenge to Section 922(g)(1) as applied to a first-degree misdemeanant would fail because Dutton's convictions "classif[ied] him as a felon under 18 U.S.C. § 922(g)(1)," and his factual circumstances did not distinguish him from "other felons who are categorically unprotected by the Second Amendment." Dutton, 503 F. App'x at 127 n.1. Plaintiff's constitutional challenge fails for the same reason.

And the mere fact that Plaintiff has not been convicted of another crime in the years since his 1998 conviction no more distinguishes him than it did the plaintiff in Dutton or the defendant in Barton. The defendant in Barton had been convicted in 1995 of possession with intent to deliver a controlled substance, and in 1993 of receiving stolen property, in the Court of Common Pleas of Washington County, Pennsylvania. See Br. of United States, United States v. Barton, No. 09-2211 (3d Cir.), 2010 WL 2962436, at *6 (July 2, 2010); App. Br., 2010 WL 2504123, at *6 (Apr. 28, 2010). But despite the fact that the defendant's offenses had been committed over a decade earlier, and that the Third Circuit did not determine these offenses to be violent in nature, it nevertheless rejected the defendant's as-applied challenge to Section 922(g)(1). Barton, 633 F.3d at 174. It held that the defendant had "failed to demonstrate that his circumstances place him outside the intended scope of § 922(g)(1)." Id.[11]

Furthermore, Defendants' opening brief explained that Congress had specifically considered, and rejected, applying Section 922(g)(1)'s prohibition only to certain crimes labeled by States as felonies. Def. Mot. at 22-23. And as explained above, see supra part II.A.2, in

---

[11] Additionally, regardless of Barton's passing reference to "a felon whose crime of conviction is decades-old," 633 F.3d at 173, Plaintiff's conviction is *not* decades-old.

enacting that statute, Congress found that the misuse of firearms by persons convicted of serious crimes – whether labeled misdemeanors or felonies by the State in which the crime occurred – is a serious problem and that restricting firearms possession of persons already conceited of such offenses would help reduce violent crime.  Omnibus Act, 82 Stat. 225; S. Rep. No. 89-1866, at 1, 53; S. Rep. No. 88-1340, at 4.  That "predictive judgment" receives "substantial deference" where, as here, the Court is reviewing the constitutionality of an act of Congress.  <u>Drake</u>, 724 F.3d at 436-37.  And Plaintiff is simply incorrect that the Supreme Court has characterized the legislative history of that Act as "fairly sparse."  Pl. Opp. at 13.  Rather, what the Supreme Court stated was that the legislative history for one title of that Act – Title VII – was only "added by way of a floor amendment to the Act and thus was not a subject of discussion in the legislative reports."  <u>Lewis v. United States</u>, 445 U.S. 55, 62, 100 S.Ct. 915, 919, 63 L.Ed.2d 198 (1980); <u>accord</u> <u>United States v. Batchelder</u>, 442 U.S. 114, 120, 99 S.Ct. 2198, 2202, 60 L.Ed.2d 755 (1979); <u>Scarborough v. United States</u>, 431 U.S. 563, 569-70, 97 S.Ct. 1963, 1966, 52 L.Ed.2d 582 (1977); <u>United States v. Bass</u>, 404 U.S. 336, 344 & n.11, 92 S.Ct. 515, 520-21 & n.11, 30 L.Ed.2d 488 (1971).  However, Section 922(g)(1) was enacted as part of Title IV, not Title VII.  <u>See</u> 82 Stat. 225-35 (Title IV), <u>id.</u> at 230-31 (prohibiting "any person . . . who has been convicted in any court of a crime punishable by imprisonment for a term exceeding one year" from possessing firearms). [12]  And unlike Title VII, Title IV was the product of extensive legislative history.  <u>See</u>, <u>e.g.</u>, S. Rep. No. 90-1097; S. Rep. No. 89-1866; S. Rep. No. 88-1340.  Moreover, the Supreme Court has noted that, by contrast to Title VII, Title IV represents "a carefully

---

[12] "Four months after enacting the Omnibus Act, the same Congress amended and re-enacted Titles IV and VII as part of the Gun Control Act of 1968."  <u>Batchelder</u>, 442 U.S. at 121 n.6, 99 S.Ct. at 2202 n.6 (citing 82 Stat. 1213).

constructed package of gun control legislation," <u>Scarborough</u>, 431 U.S. at 570, 97 S.Ct. at 1966. Plaintiff thus misplaces his reliance on the legislative history of Title VII, Pl. Opp. at 13-14.[13]

In sum, Plaintiff's conviction for a crime punishable by up to five years' imprisonment – and the predatory nature of his crime – demonstrate that he is neither law-abiding nor responsible. See <u>Schrader</u>, 704 F.3d at 989 ("Although section 922(g)(1)'s burden is certainly severe, it falls on individuals who cannot be said to be exercising the core of the Second Amendment right identified in <u>Heller</u>, <u>i.e.</u>, 'the right of law-abiding, responsible citizens to use arms in defense of hearth and home.'") (quoting <u>Heller</u>, 554 U.S. at 635, 128 S.Ct. 2783). Applying 18 U.S.C. § 922(g)(1) to offenders like Plaintiff whose crimes were not necessarily violent in nature is consistent with near-uniform case law applying the Second Amendment. Def. Mem. at 17-18 & n.15. There is no basis for this Court to reach a different conclusion.

## CONCLUSION

For the foregoing reasons, and the reasons stated in Defendant's motion to dismiss or for summary judgment, the Court should dismiss this case and deny Plaintiff's motion for summary judgment.

---

[13] As Plaintiff notes, <u>see</u> Pl. MSJ at 16-17, though 18 U.S.C. § 925 permits the Attorney General, in his or her discretion, to grant individual relief from federal firearms prohibitions, since 1992, Congress has barred the use of appropriated funds to take action on any applications for relief under that section. See <u>United States v. Bean</u>, 537 U.S. 71, 74, 123 S.Ct. 586-87, 154 L.Ed.2d 483 (2002). As noted above, however, Section 922(g)(1)'s prohibition does not apply with respect to a conviction "which has been expunged or set aside or for which a person has been pardoned or has had civil rights restored . . . unless such pardon, expungement or restoration of civil rights expressly provides that the person may not ship, transport, possess, or receive firearms." 18 U.S.C. § 921(a)(20). Plaintiff does not allege that any of these restorative events have occurred. As to whether "a person . . . has had civil rights restored," the Third Circuit has defined "civil rights" as including the right to vote, to sit on a jury, and to hold public office. <u>United States v. Leuschen</u>, 395 F.3d 155, 159 (3d Cir. 2005). Pennsylvania bars a person "convicted of a crime punishable by imprisonment for more than one year [who] has not been granted a pardon or amnesty therefor" from jury service. 42 Pa.C.S.A § 4502(3)(a)(3); <u>see also</u> <u>Essig</u>, 10 F.3d at 975. Plaintiff does not allege that the Commonwealth has restored his right to jury service nor that he has received (or even attempted to obtain) a pardon for his crime.

Dated:  April 10, 2014

Of Counsel

ZANE DAVID MEMEGER
United States Attorney


ANNETTA FOSTER GIVHAN
Assistant United States Attorney
615 Chestnut Street
Suite 1250
Philadelphia, Pennsylvania 19106
(215) 861-8319
Annetta.givhan@usdoj.gov

Respectfully submitted,

STUART F. DELERY
Assistant Attorney General


  /s/ Daniel Riess
DIANE KELLEHER
Assistant Branch Director
DANIEL RIESS
LESLEY FARBY
Trial Attorneys
U.S. Department of Justice
Civil Division, Rm. 6122
20 Massachusetts Avenue, NW
Washington, D.C. 20530
Telephone: (202) 353-3098
Fax: (202) 616-8460
Email: Daniel.Riess@usdoj.gov
*Attorneys for Defendants*