```
 1              UNITED STATES DISTRICT COURT
        EASTERN DISTRICT OF PENNSYLVANIA (ALLENTOWN)
 2
    DANIEL BINDERUP,              ) Case No:
 3          Plaintiff,            ) 5:13-cv-06750-JKG
        vs.                      )
 4  ERIC H. HOLDER, JR., Attorney )
    General of the United States, )
 5  and B. TODD JONES, Director of )
    the Bureau of Alcohol, Tobacco,)
 6  Firearms, and Explosives,     ) June 16, 2014
            Defendants.          ) 10:08 a.m.
 7
                TRANSCRIPT OF MOTIONS HEARING
 8        BEFORE THE HONORABLE JAMES KNOLL GARDNER
                UNITED STATES DISTRICT JUDGE
 9
    APPEARANCES:
10
    For Plaintiff:       ALAN GURA, ESQUIRE
11                       GURA & POSSESSKY, PLLC
                         105 Oronoco Street, Suite 305
12                       Alexandria, VA 22314
                         (703) 835-9085
13                       alan@gurapossessky.com
14                       DOUGLAS T. GOULD, ESQUIRE
                         THE LAW OFFICES OF DOUGLAS GOULD
15                       925 Glenbrook Avenue
                         Bryn Mawr, PA 19010
16                       (610) 520-6181
                         dgould@gouldlawpa.com
17
18
19
20
21  (Proceedings recorded by electronic sound recording,
    transcript produced by transcription service.)
22
23        VERITEXT NATIONAL COURT REPORTING COMPANY
                  MID-ATLANTIC REGION
24        1801 Market Street – Suite 1800
                  Philadelphia, PA  19103
25                  (888) 777-6690
```

```
 1   APPEARANCES (continued):

 2   For Defendants:        DANIEL RIESS, ESQUIRE
                            U.S. DEPT OF JUSTICE
 3                          Room 6122
                            20 Massachusetts Avenue NW
 4                          Washington, DC 20001
                            (202) 353-3098
 5                          daniel.riess@usdoj.gov

 6                          LESLEY FARBY, ESQUIRE
                            U.S. DEPT OF JUSTICE CIVIL DIVISION
 7                          Room 7220
                            20 Massachusetts Avenue NW
 8                          Washington, DC 20530
                            (202) 514-3481
 9                          lesley.farby@usdoj.gov

10   ESR OPERATOR:          JENNIFER FITZKO

11   TRANSCRIBER:           JUDI Y. OLSEN, RPR

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
 1                  I N D E X

 2                                      PAGE

 3   COLLOQUY                           4, 47

 4   ARGUMENT
       By Mr. Riess                     9, 42
 5     By Mr. Gura                         26

 6

 7

 8

 9

10                E X H I B I T S

11   NUMBER   DESCRIPTION          MARKED  ADMITTED

12    (None marked.)

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1                        -   -   -

2                ESR OPERATOR:  All rise.  The United

3    States District Court for the Eastern District of

4    Pennsylvania is now in session.  The Honorable James

5    Knoll Gardner presiding.  Please be seated.

6                THE COURT:  Good morning, ladies and

7    gentlemen.

8                MULTIPLE SPEAKERS:  Good morning, Your

9    Honor.

10                       -   -   -

11                (Pause)

12                       -   -   -

13                THE COURT:  I want to apologize for the

14   delay in getting started this morning.  My 8:45

15   status conference in another case took considerably

16   longer than anticipated, and I thank you for your

17   patience.

18                The matter before the court this morning

19   are cross motions in the case of Daniel Binderup

20   versus Eric H. Holder, Jr. and B. Todd Jones, the

21   Attorney General of the United States and the

22   director of the Bureau of Alcohol, Tobacco, Firearms

23   and Explosives, respectively.  The Case Number is

24   13-cv-06750.

25                The case is before the court for

Page 5

1   argument, as I said, on defendants' motion to dismiss

2   or for summary judgment, filed February 20, 2014, and

3   for plaintiff's motion for summary judgment, filed

4   March 10, 2014.  And, of course, there were responses

5   filed to each of the motions by the opponent.

6               I note the presence for plaintiff of

7   Alan Gura, Esquire.

8               MR. GURA:  Good morning, Your Honor.

9               THE COURT:  Good morning, Mr. Gura.

10              And Douglas T. Gould, Esquire.

11              MR. GOULD:  Good morning, Your Honor.

12              THE COURT:  Good morning, Attorney

13  Gould.

14              Mr. Gura, which one of you will be

15  arguing this morning for plaintiff?

16              MR. GURA:  Your Honor, I'll be arguing.

17  And I should note for the record the plaintiff is

18  present in the courtroom.

19              THE COURT:  All right.  Where is

20  Mr. Binderup?

21              MR. BINDERUP:  Right here, Your Honor.

22              THE COURT:  Good morning, Mr. Binderup.

23  You may be seated.  Thank you.

24              I note the presence for defendant of

25  Daniel Riess.

 1                  MR. RIESS:  Yes, Your Honor.

 2                  THE COURT:  Am I pronouncing your name

 3      correctly, Attorney Riess?

 4                  MR. RIESS:  You are, Your Honor.  Good

 5      morning.

 6                  THE COURT:  And, also, Attorney Lindsey

 7      Farby.

 8                  MS. FARBY:  Leslie Farby, Your Honor.

 9                  THE COURT:  Leslie.  I am sorry.  Yes,

10      it says Leslie.  I don't know why I read Lindsey.

11      Leslie Farby.  Good morning, Attorney Farby.

12                  MS. FARBY:  Good morning.

13                  THE COURT:  And, Mr. Riess, who will be

14      lead -- who will be the counsel arguing for defendant

15      this morning?

16                  MR. RIESS:  I will, Your Honor.

17                  THE COURT:  All right.  Very well.

18                  Now, we've got cross motions here, as I

19      indicated.  I suggest that what would be the most

20      expedient and efficient would be for us to have one

21      joint argument from each counsel rather than -- for a

22      total of two, rather than two separate arguments,

23      which would result in hearing four oral arguments

24      this morning rather than two.

25                  And I propose, for no other reason that

1  the defendants' motion was filed earlier than the

2  plaintiff's motion, that the defendant argue first

3  and that Mr. Riess, in his oral argument, argues on

4  the offense in support of defendants' motion to

5  dismiss and -- or for summary judgment and on the

6  defense contra plaintiff's motion for summary

7  judgment as part of one unified argument, followed by

8  plaintiff doing the same thing in reverse, arguing on

9  the offense in support of his motion for summary

10 judgment and defending against defendants' motion to

11 dismiss or for summary judgment in one unified

12 plaintiff's oral argument.

13          Is that procedure satisfactory to the

14 defendants, Mr. Riess?

15          MR. RIESS:  Yes, it is, Your Honor.

16          THE COURT:  Is that procedure

17 satisfactory to the plaintiffs, Mr. Gura?

18          MR. GURA:  Yes, Your Honor.

19          THE COURT:  All right.  Now, Mr. Riess,

20 how much time would you like to have for your joint

21 argument?

22          MR. RIESS:  Do I understand correctly

23 that the limit is 20 minutes, Your Honor?

24          THE COURT:  That's what it says in my

25 policies and procedures, but every rule has its

1    exceptions.  I want to know what your wish list is

2    before I shoot you down.  No, no, just a little lame

3    effort at some judicial humor.

4              No.  Tell me how much time you think

5    would be reasonable but not excessive to handle both

6    matters in one argument.

7              MR. RIESS:  I think I could -- I think

8    no more than 25 minutes should be fine.

9              THE COURT:  All right.  And the same

10   question for you, Mr. Gura.  How much time would you

11   like to have to argue sides of your coin in your

12   argument?

13             MR. GURA:  No more than 25 should

14   suffice, Your Honor.  If it's less than that, then

15   all the better.

16             THE COURT:  All right.  We'll give each

17   of you 25 minutes and -- and defendant will go first,

18   as I said.  Plaintiff will go second.

19             And there will be no rebuttal or

20   surrebuttal arguments unless I invite or direct it or

21   invite [sic] it or allow it.  But those, I think, are

22   all four of the theoretical possibilities.  But if I

23   do permit rebuttal and surrebuttal arguments, we'll

24   set additional time deadlines for those, and they

25   won't be against your 25 minutes.

1                  I'll be the timekeeper.  At the end of

2     the 25 minutes, if either of you is still talking,

3     I'll wait a minute or so and then politely remind you

4     that your time is up and ask you to conclude.  And

5     then I'll wait another minute or so.  And if either

6     of you are still talking, I'll direct you to sit

7     down.

8                  Is that procedure satisfactory to the

9     plaintiff?

10                 MR. GURA:  Yes, Your Honor.

11                 THE COURT:  Is that satisfactory to the

12    defense?

13                 MR. RIESS:  Yes, Your Honor.

14                 THE COURT:  All right.  Then I think

15    that takes care of all the housekeeping details.

16    Mr. Riess, you may approach the podium and make your

17    argument.

18                 MR. RIESS:  Thank you, Your Honor.  And

19    may it please the court.

20                 THE COURT:  Mr. Riess.

21                 MR. RIESS:  18 U.S.C. 922(g)(1)

22    prohibits firearms possession by persons convicted of

23    a crime punishable by a term of imprisonment that

24    exceeds one year.

25                 Courts have uniformly upheld this law as

1  constitutional, including as applied to offenders

2  whose crimes were not inherently violent in nature.

3          It is similarly constitutional as

4  applied to plaintiff, who engaged in predatory sexual

5  contact with a teenaged employee 25 years his junior

6  and was convicted of corruption of a minor,

7  punishable by up to five years in prison.

8          The court should decline plaintiff's

9  invitation today to be the first court to hold

10  922(g)(1) unconstitutional as applied.

11          Now, my plan today is to respond to the

12  two counts in plaintiff's Complaint; first, the

13  statutory question, Count 1, and then the

14  constitutional question, Count 2.

15          In Count 1, plaintiff claims that

16  Section 922(g)(1) doesn't prohibit him from

17  possessing firearms.  Now, that claim is barred by

18  Third Circuit precedent.

19          Plaintiffs ask the court to adopt a

20  statutory reading of (g)(1) that's at odds with the

21  Third Circuit's decision in U.S. v. Essig.  That

22  case, the criminal defendant had been convicted of

23  the very same corruption of minor statute that

24  plaintiff's been convicted of and had also received

25  probation, like plaintiff.

1           The Third Circuit held that (g)(1)

2    prohibited Essig's possession of a firearm because,

3    quote, his state conviction is punishable by

4    imprisonment of up to five years.

5               Essig forecloses plaintiff's argument

6    supporting Count 1 of the Complaint.  It is also

7    contrary to holdings by the D.C. Circuit in Schrader,

8    by the Fourth Circuit sitting in Banks and Coleman,

9    to the legislative history of the statute, and it is

10   contrary to the maxim that Congress doesn't hide

11   elephants in mouse holes, as was mentioned in one

12   case.

13              Now, as to Count 2, which claims that

14   the law is unconstitutional as applied to plaintiff,

15   that claim has no merit regardless of whether the

16   court follows the Third Circuit's decision in Barton

17   or whether it evaluates the law under means-end

18   scrutiny as in Marzzarella.

19              My plan is to discuss why plaintiff

20   doesn't succeed under Barton and then very briefly to

21   explain why, for similar reasons, he doesn't succeed

22   under the Marzzarella standard.

23              Now, Barton upheld (g)(1) as

24   constitutional both on its face and as applied to

25   Mr. Barton.  It left the door open to the possibility

1    of an as-applied challenge.  Someone might be able to

2    succeed, but then again, he/she might not.

3              Barton says, quote, to raise a

4    successful as-applied challenge, Barton must present

5    facts about himself and his background that

6    distinguish his circumstances from those of persons

7    historically barred from Second Amendment

8    protections, and then gave two possible examples.

9              For instance, a felon convicted of a

10   minor nonviolent crime might show he's no more

11   dangerous than a typical law-abiding citizen.

12   Similarly, a court might find a felon whose crime of

13   conviction is decades old poses no continuing threat

14   to society.

15             However, the Third Circuit said Barton

16   has failed to demonstrate that his circumstances

17   place him outside the intended scope of (g)(1) and,

18   thus, upheld the statute as applied.

19             The burden is on plaintiff under Barton

20   to show his circumstances place him outside the

21   intended scope of (g)(1).  He has not met that burden

22   for five reasons.

23             First, courts, since the landmark

24   decision of the Supreme Court in D.C. v. Heller, have

25   uniformly upheld 922(g)(1) as constitutional even as

1    applied to offenders whose crimes weren't necessarily

2    violent in nature.

3              The Fourth Circuit in the Pruess case

4    said, quote, our sister circuits have consistently

5    upheld applications of (g)(1) even to nonviolent

6    felons.

7              That includes offenses such as failure

8    to pay child support, mail fraud, theft of government

9    property.  And since the filing of our briefs, the

10   Northern District of Texas also upheld (g)(1) as

11   applied to mail fraud.  The case is 2014 Westlaw

12   2445788.

13             Now, the Fourth Circuit in Pruess itself

14   cited a number of examples, including Barton itself.

15   Barton was only convicted of a prior drug conviction

16   and receipt of stolen property.  It also cited

17   Rozier, an Eleventh Circuit case where the felon had

18   only prior drug convictions, and similar examples

19   from the Ninth Circuit and supporting language from

20   the Fifth through Seventh Circuits.

21             And then there is Dutton, where the

22   Third Circuit upheld a determination by this court

23   that the Second Amendment -- a Second Amendment

24   challenge to (g)(1) would fail as applied to an

25   offender convicted of two first-degree misdemeanors

1   under Pennsylvania law; namely, carrying a firearm on

2   a public street and carrying a firearm without a

3   license.

4                   THE COURT:  Which -- what degree

5   misdemeanors were those two under Pennsylvania law?

6                   MR. RIESS:  I beg your pardon, Your

7   Honor?

8                   THE COURT:  The two that you just cited

9   about the firearms under Pennsylvania law, what

10  degree misdemeanors did you say they were under

11  Pennsylvania law?

12                  MR. RIESS:  First-degree misdemeanors.

13                  THE COURT:  Both were first degree?

14                  MR. RIESS:  Yes, Your Honor.

15                  THE COURT:  And, again, what were those

16  two firearms offenses?

17                  MR. RIESS:  Carrying a firearm on a

18  public street and carrying a firearm without a

19  license.

20                  THE COURT:  Okay.

21                  MR. RIESS:  On the two that the -- there

22  was no indication in the case history that the --

23  Mr. Dutton intended to use the weapons or that it was

24  an inherently violent crime.

25                  Second -- the second reason why

1    plaintiff has not met his burden is that underlying

2    the federal gun prohibitors is a reasonable concern

3    that people who have shown a lack of good judgment

4    and inability to control themselves should not be

5    entrusted with the responsibilities of possessing a

6    firearm.

7              That's not just (g)(1).  There's also

8    (g)(3), which bars unlawful users of or persons

9    addicted to controlled substances; (g)(6), persons

10   who are dishonorably discharged.  Past serious

11   criminal behavior goes along with this.

12             So let's look at the crime here.  It's

13   premised on the fact that there is a power imbalance

14   between adults and underage persons.  The law says

15   that underage persons cannot legally consent because

16   there's an inherently coercive nature of that power

17   imbalance.

18             Now, that is especially the case if the

19   adult is in a position of trust, like an employer.

20   The Pennsylvania Superior Court in the Decker case

21   recognized, quote, it requires no stretch of reason

22   to understand an immature female can easily be

23   seduced or mentally overpowered by an adult to engage

24   in a large range of activity, the consequences of

25   which she neither understands nor which she's capable

1   of dealing and which can have long-range, if not

2   permanent, adverse effects.

3                Now, here, we had a 41-year-old employer

4   and a teenaged employee.  Plaintiff knew that the

5   employee was underage and, thus, that at the time,

6   his conduct was criminal.  Despite that, he continued

7   his conduct for a period of 14 months.  This was not

8   just a single instance of a lapse of judgment.

9                And this ties back to the core of the

10  Second Amendment, which, as stated in Heller, is,

11  quote, the right of law-abiding, responsible citizens

12  to use arms in defense of hearth and home.

13               THE COURT:  I'm sorry.  Just a minute.

14               Did you now move to the third reason why

15  plaintiff has not satisfied his burden?

16               MR. RIESS:  About to.

17               THE COURT:  Okay.  I misunderstood.  So

18  you can finish up what you were trying to tell me

19  about the second one.

20               MR. RIESS:  Okay.  Sure, Your Honor.

21  It's just that it's reasonable to conclude that

22  someone who has displayed a long-term inability to

23  control his criminal behavior to the point of

24  criminal misjudgment is not a law-abiding,

25  responsible person, as described in Heller, who can

1    be entrusted with the use of a firearm.

2                Now as to the third point, the mere fact

3    that Pennsylvania characterizes this crime as a

4    first-degree misdemeanor doesn't suggest it's a minor

5    crime.  It's punishable by up to five years in

6    prison.  Plus, as we noted in our briefs, Congress

7    specifically considered and then rejected applying

8    (g)(1)'s prohibition only to certain crimes labeled

9    by states as felonies, with good reason.

10               As the Supreme Court's explained, while

11   at common law there is a huge distinction, the

12   modern-day distinction between misdemeanors and

13   felonies is, quote, minor and often arbitrary given

14   that numerous misdemeanors involve conduct that's

15   more dangerous than many felonies.

16               That's true in Pennsylvania.  Other

17   first-degree misdemeanors include involuntary

18   manslaughter, negligent homicide while hunting,

19   throwing a fire bomb into an occupied vehicle.  All

20   this is just to say, this was a serious offense.

21               Fourth, just because plaintiff has not

22   been convicted of another crime in the years since

23   his 1998 conviction, that doesn't distinguish him any

24   more than it did Mr. Dutton or Mr. Barton, both of

25   which as to whom 922(g)(1) was upheld as

1    constitutional.

2                 THE COURT:  I'm sorry.  I didn't get

3    your fourth point.  What are you saying?  Just

4    because what?

5                 MR. RIESS:  Just because plaintiff

6    hasn't been convicted of another crime in the years

7    since his conviction in 1998, that doesn't

8    distinguish him from Dutton or Barton, where (g)(1)

9    was upheld.

10                Dutton was decided in 2012, and the

11   plaintiff there had been convicted in 1995.  Barton

12   was decided in 2011, and he had been convicted in

13   1993 and 1995, respectively.  So the simple lapse of

14   time didn't matter to the Third Circuit in those

15   cases and should not matter here to distinguish --

16                THE COURT:  What was the date of the

17   conviction in Dutton?

18                MR. RIESS:  In Dutton, the conviction

19   was 1995.

20                THE COURT:  And were both cases decided

21   in 2012, or was Barton decided in 2013?

22                MR. RIESS:  Barton was decided in 2011.

23                THE COURT:  Oh, 2011.  Okay.

24                MR. RIESS:  Yes.

25                THE COURT:  All right.

1                MR. RIESS:  First, Your Honor, in a

2     Second Amendment case, the -- the Drake case, the

3     Third Circuit has held, when we review the

4     constitutionality of statutes, courts accord

5     substantial deference to the legislators' predictive

6     judgments.  And those predictive judgments

7     demonstrate the reasonableness of (g)(1)'s

8     application here.

9                The Supreme Court in Huddleston said,

10    the principal purpose of federal gun control

11    legislation was to curb crime by keeping firearms out

12    of the hands of those not legally entitled to possess

13    them because of, among other things, criminal

14    background.  That's the Huddleston case.

15               And in the Dickerson case, the Supreme

16    Court explained that in order to accomplish this

17    goal, Congress obviously determined firearms must be

18    kept away from persons such as those convicted of

19    serious crimes who might be expected to misuse them.

20               THE COURT:  What case did you just cite?

21               MR. RIESS:  Huddleston.

22               THE COURT:  No, I got Huddleston.

23    What's the second one you -- you recited?

24               MR. RIESS:  Dickerson.

25               THE COURT:  Dickerson.  Thank you.

1          MR. RIESS:  And, lastly, in the

2     Dickerson case, it also stated Congress's intent in

3     enacting 922(g) was to keep firearms out of the hands

4     of presumptively risky persons.

5          So taking all this, when it enacted

6     (g)(1), Congress found the misuse of firearms by

7     persons that are convicted of serious crimes,

8     regardless of whether they're labeled misdemeanors or

9     felonies by the state in which the crime occurred, is

10    a serious problem.

11         It also specifically found restricting

12    firearms possession by persons that are already

13    convicted of these offenses would help reduce crime.

14         Now, under the Third Circuit's decision

15    in Drake, those are predictive judgments that receive

16    substantial deference here.

17         Finally, we'd just like to point out the

18    burden is not on us under Barton.  It's on plaintiff.

19    Now, regardless of that, we've submitted empirical

20    evidence linking persons convicted of sexual

21    misconduct crimes with a higher rate of recidivism

22    than the general population.

23         We've submitted five empirical studies

24    showing that persons convicted of sexual misconduct

25    crimes, as a class, are much more likely --

Page 21

1                    THE COURT:  Now, you say, "We've

2      submitted."  This is not a hearing.  This is an

3      argument.  In what fashion did you get anything on

4      the record of a factual nature?

5                    MR. RIESS:  We submitted those as

6      exhibits to our motion to dismiss for summary

7      judgment.

8                    THE COURT:  All right.  Go ahead.

9                    MR. RIESS:  I just point out that the

10     most pertinent of those was an Illinois study showing

11     that 37 percent of sex offender arrestees -- not just

12     those who had served jail times, but arrestees --

13     over a seven-year period whose victims, like

14     plaintiff, were between 13 and 18 years of age, were

15     rearrested within five years.

16                    And, also, a Delaware study, in which

17     73 percent of statutory rapists, which is defined as

18     sexual activity with the victim's consent but that

19     the victim was too young to legally consent, who were

20     released from prison were rearrested for a new felony

21     or misdemeanor within three years, 46 percent of

22     those for a new felony offense.

23                    THE COURT:  What study is that one?

24                    MR. RIESS:  That was a study from the

25     state of Delaware.

Page 22

 1                THE COURT:  Tell me again what
 2  percentages you were talking about in the Delaware
 3  study.  46 percent of what?
 4                MR. RIESS:  46 percent of persons who
 5  had been convicted of statutory rape, which was
 6  defined by the study as sexual activity with the
 7  victim's consent but the victim was too young to
 8  legally consent, who were released from prison were
 9  rearrested for a felony offense within three years.
10                THE COURT:  And was there some other
11  percentage figure in another category in the Delaware
12  study?
13                MR. RIESS:  Yes.  73 percent were
14  arrested for either a new felony or a misdemeanor
15  within three years.
16                THE COURT:  Okay.
17                MR. RIESS:  And so, Your Honor, for
18  these five reasons, under the factual circumstances
19  of this case, there is no question that Section
20  922(g)(1) is constitutionally applied to plaintiff.
21  Plaintiff hasn't met his burden to show otherwise.
22                Now, very last, I'd like to turn very
23  briefly to the standard under the Marzzarella case in
24  case that is the standard that controls here.
25                In that case, the Third Circuit set out

1  a general analysis for analyzing Second Amendment

2  challenges.  It said, first, we look to whether the

3  law burdens conduct within the scope of the Second

4  Amendment's guarantee.  If it does, we evaluate the

5  law under some form of means-end scrutiny.  If it

6  passes muster, it's constitutional; if it doesn't,

7  it's not.

8           Now, here, even if 922(g)(1) did burden

9  conduct within the Second Amendment scope, which we

10  do not concede, at most, intermediate scrutiny

11  applies.  Plaintiff has cited no case that applies

12  strict scrutiny in an as-applied challenge, and it

13  wouldn't make sense to apply strict because we're

14  outside the core right identified in Heller dealing

15  with law-abiding, responsible citizens.

16           Now, under that standard, plaintiff's

17  challenge fails because there's at least a reasonable

18  fit between applying (g)(1) to a person convicted of

19  plaintiff's crime and the compelling government

20  interest in protecting public safety and combatting

21  crime.

22           The Supreme Court in Salerno has said

23  that the government's general interest in preventing

24  crime is compelling.  We've already discussed the

25  predictive judgments of Congress as to which, under

1    Drake, court's must afford deference to.  And,

2    moreover, the fit here is reasonable.

3                (g)(1) applies to a person who's been

4    convicted of a crime that's punishable by

5    imprisonment for more than one year.  It doesn't

6    apply if the offense is a state misdemeanor only

7    punishable by two years or less imprisonment.

8                It doesn't apply to certain antitrust or

9    unfair trade practices offenses or any conviction

10   that's been expunged, set aside, or for which a

11   person has been pardoned or had civil rights

12   restored, unless those statements provide that the

13   person may not possess firearms.

14               As mentioned earlier, we've submitted a

15   number of empirical studies showing that convicted

16   offenders, as a group, including those convicted of

17   crimes that didn't involve violence, present a

18   significant risk of recidivism for crime.

19               So if the Marzzarella test were to

20   apply, we've shown a reasonable fit between (g)(1),

21   as applied to persons convicted of crimes like

22   plaintiff's, and the government's interest in

23   protecting public safety and reducing crime.  So the

24   law passes muster under immediate scrutiny, as in the

25   D.C. Circuit Schrader case.

1              In conclusion, Your Honor, plaintiff's
2     statutory claim is foreclosed by binding precedent.
3     That binding precedent was not overturned implicitly
4     by Heller, as plaintiff claims, because the Third
5     Circuit precedent only discussed statutory arguments.
6     It did not discuss the Second Amendment.  And so it
7     was not overturned in the Heller case.
8              As for the constitutional claim, rights,
9     even constitutional rights, come with
10    responsibilities, and the core of the Second
11    Amendment is its protection of the rights of
12    law-abiding, responsible citizens.
13             922(g)(1) has repeatedly been held
14    constitutional as applies to offenses that were not
15    inherently violent in nature; mail fraud, receiving
16    stolen property.  It is constitutional as applied to
17    the crime that plaintiff committed, which
18    demonstrates a severe lack of judgment and
19    self-control over an extended period of time and is
20    punishable by up to five years in prison.
21             We would ask the court grant our motion
22    to dismiss or enter summary judgment for the
23    defendants.
24             Thank you, Your Honor.
25             THE COURT:  Okay.  Thank you.

1            All right.  Mr. Gura, you may approach

2    the podium and make plaintiff's argument.

3            MR. GURA:  Thank you, Your Honor.

4            It's important to begin every case with

5    an examination of what it is that the plaintiff

6    actually claims, and only then do we apply the law,

7    beginning with those rules that are either fixed by

8    statute or precedent, whether either side or the

9    court believes them to be the most optimal.

10           So let's clarify what it is exactly that

11   Mr. Binderup is claiming here and what he is not

12   claiming.

13           First, there is no claim in this case

14   that the length of the Binderup sentence determines

15   the outcome of this -- of the application of Section

16   922(g)(1).  There was some argument to that effect in

17   the government's brief, but that simply is a

18   misreading of the Complaint.

19           Second, there is no official challenge

20   here to Section 922(g)(1).  There is no categorical

21   challenge to Section 922(g)(1) either.  There is no

22   claim that the statute is overbroad.  There is no

23   claim that the statute is unconstitutional with

24   respect to all misdemeanors or all violent --

25   nonviolent misdemeanors or even all violations of

1   this particular Pennsylvania statute.

2           Accordingly, while the discussion of

3   cases such as Salerno and Huddleston and Dickerson is

4   well taken, it's also completely irrelevant.

5           Also irrelevant is Congress's predictive

6   judgment about the utility and benefits of applying

7   Section 922(g)(1) generally to misdemeanors.  The

8   Congress made no predictive judgments about

9   Mr. Binderup, and Mr. Binderup's personal

10  circumstances are the only things that are here at

11  issue.

12          Barton thus controls, and in that case,

13  the government conceded something that the Third

14  Circuit accepted which is far too late to take back

15  now.  And I know that the court has probably read

16  Barton and will probably do so again, but if the

17  court will indulge me, I think it's useful to frame

18  the argument by focusing on Barton's language.

19          To quote, the government conceded that

20  Heller's statement regarding the presumptive validity

21  of felon gun disposition statutes does not foreclose

22  an as-applied challenge.  By describing the felony

23  disarmament ban as presumptively lawful, the Supreme

24  Court implied that the presumption may be rebutted,

25  close quote.

1                 Now, how does that happen?  What

2      guidepost did the Third Circuit give this court in

3      evaluating such a challenge?  There was no means-end

4      scrutiny, there was no intermediate scrutiny applied,

5      which should not be surprising for two reasons.

6                      First, there was no means-end

7      scrutiny -- intermediate, strict, or otherwise -- in

8      Heller itself, which is a shining example of how

9      sometimes laws are simply invalid for conflicting

10     with the Second Amendment's guarantee.  That is not

11     the issue that we have here today.

12                     The second reason for the Third

13     Circuit's refusal or lack of interest in applying the

14     Marzzarella balancing test in Barton is as follows:

15     It simply does not make sense.

16                     We are not dealing with how the law

17     generally fits the government's interest.  We are

18     asking whether there is a government interest

19     extending to the particular plaintiff.  Again,

20     Congress has made no predictive judgment regarding

21     this particular person, however beneficial or useful

22     that law is generally applied.

23                     And so the Third Circuit told us that

24     the following factors are to be considered.  Quoting

25     again, to raise a successful as-applied challenge,

1    Barton -- and here, I suppose, Binderup -- must

2    present facts about himself and his background to

3    distinguish the -- his circumstances from those of

4    persons historically barred from Second Amendment

5    protections.  For instance, a felon convicted of a

6    minor nonviolent crime might show that he is no more

7    dangerous than a typical law-abiding citizen.

8    Similarly, a court might find that a felon whose

9    crime of conviction is decades old poses no

10   continuing threat to society.

11            Again, the key word there is

12   "historically," and the rule of Barton is that a

13   plaintiff prevails when he is, quote, no more

14   dangerous than a typical law-abiding citizen and,

15   quote, poses no continuing threat to society.

16            In the government's combined response,

17   page 10 provides -- and I'm quoting here from the

18   government's brief -- if anything, Barton actually

19   shows that plaintiff is categorically excluded from

20   the Second Amendment's protection.

21            This is simply not what Barton stands

22   for.  Barton goes on at length to show that there are

23   as-applied challenges, and it gives us guideposts as

24   to how to determine them.

25            In Barton, the Third Circuit was not

1    veering too far off from Congress's intent.  Let's

2    recall that Congress also enacted Section 925(c),

3    which provides as follows, allowing for relief from

4    disability, quote, where the circumstances regarding

5    the disability and the applicant's record and

6    reputation are such that the applicant will not be

7    likely to act in a manner dangerous to public safety

8    and that the granting of the relief would not be

9    contrary to the public interest, close quote.

10                   That's Congress's language recognizing

11   that while the statute they enacted in 922(g) is

12   generally applicable and valid and wholesome, there

13   are going to be exceptions, where people are not

14   dangerous, and therefore, relief should be granted.

15                   And here, we submit that the Barton

16   factors are all satisfied.  We have the following

17   facts about Binderup personally in the record:

18                   First, he is a peaceful, law-abiding

19   member of the community and has been for many years.

20                   Second, he is a family man.  He's a

21   successful entrepreneur.

22                   Third -- and this is very important if

23   your read Barton's language and take it seriously --

24   his crime did not involve violence or the misuse of

25   firearms.

1              I suppose that Binderup's crime, of

2    course, like all crimes, indicated a -- a -- an

3    episode of poor judgment.  But if poor judgment is

4    going to be the reason for denying people relief,

5    then Barton must be overruled or must not be binding,

6    and there cannot be any as-applied claims.

7              That cannot be.  Barton specifically

8    stated that we look to whether the crime itself was

9    violent, whether it suggests that there is a risk to

10   society from the person having firearms.

11             And here, the crime, while regrettable,

12   is certainly not one that involved any violence or

13   misuse of violence [sic].

14             I should also add that plaintiff does

15   object for the record to the repeated statements by

16   the government that Mr. Binderup engaged in predatory

17   behavior.  There is nothing in the record suggesting

18   that at all, and we have stayed away from redigging

19   up the facts of what happened many years ago.

20             But, finally, the one thing, which the

21   government omits mentioning, which I think is

22   extremely important here, Your Honor, is that the --

23   is that the state government here, with the blessing

24   of the prosecutor and the local judge, granted

25   Mr. Binderup relief from Pennsylvania's prohibition

1    on the possession and use of firearms.

2                     So we have a determination by that level

3    of government, which in our federal system is most

4    responsible for ensuring public safety, that

5    Binderup's possession and use of firearms is not

6    contrary to public safety.

7                     In contrast to the evidence that we

8    submitted about Mr. Binderup, the government has

9    given us absolutely nothing about Mr. Binderup

10   personally.  Rather, the government speaks about

11   generalized statistics and evidence about recidivism.

12                    There is a problem here.  The government

13   goes so far as to say that even nonviolent property

14   offenders have a high risk of recidivism and,

15   therefore, might be banned from getting as-applied

16   relief.

17                    If even a nonviolent property offender

18   is at an unacceptable risk of recidivism such that

19   that person cannot obtain relief, then, again, this

20   is an argument for overruling Barton, because then no

21   one can get relief.  But we know that under Barton,

22   somebody might, at least in theory, get relief.

23                    And as far as these studies go that the

24   government has submitted, I won't belabor the point.

25   We've addressed them all in the record.

1              But with respect, at least to the

2    Delaware study, again, these are studies that

3    followed people who were released from prison.  There

4    is a selection bias issue here, Your Honor.

5              Mr. Binderup was not sent to state

6    prison.  I submit that he was not sent to state

7    prison because the judge in that case realized that

8    the facts of the case and Mr. Binderup's

9    circumstances and background did not warrant that

10   type of punishment.

11             Obviously, people who are sent to prison

12   are viewed differently by their sentencing judges.

13   That's why they're in prison.  And that's why,

14   perhaps, criminologists prefer to study them much

15   more than those people who are given probation and

16   therefore -- and thereafter lead a crime-free life.

17             So we submit that we have, on the one

18   side of the scale, individualized facts about

19   Mr. Binderup.  That's what Barton requires.  That's

20   what Barton establishes is going to be binding.  The

21   government has not responded to that.

22             It is true that in other cases people

23   have not been able to get relief, but, again, this is

24   a sui generis issue.  Every case has its own facts.

25   Every person has his or her own personal

1    circumstances.

2              Dutton, for example, a case -- an

3    unpublished Third Circuit opinion upon which the

4    government relies very heavily, involved a person who

5    made no -- who submitted no evidence whatsoever of

6    their personal circumstances.

7              And all the court held in Barton was

8    that it is not unconstitutional to apply Section

9    922(g)(1) to a person who has not submitted any

10   evidence that -- that distinguished their personal

11   circumstances from those of other felons who are

12   categorically unprotected by the Second Amendment.

13   That's almost a direct quote.

14             Again, in Dutton, we had a pro se

15   plaintiff who filed an apparently incomprehensible

16   Complaint that, quote, did not seem to allege either

17   of the appellees violated his Second Amendment rights

18   or that Section (g)(1) violates the Second Amendment,

19   and he, again, quote, presented no facts

20   distinguishing his circumstances, close quote.

21             We here have presented facts.  Now, does

22   all this mean that we should be entitled to prevail

23   on the constitutional claim?  I suppose, Your Honor,

24   that -- that it does, and we would be comfortable

25   with prevailing on that theory, but we do have the

1    constitutional avoidance doctrine in play here.

2              As we have learned time and time again,

3    most recently in the Bond case just last week, the

4    Supreme Court does not want federal courts reaching

5    constitutional claims where there is a fairly

6    possible -- that's Chief Justice Roberts' argument --

7    a fairly possible ground upon which to decide the

8    case in some other fashion.

9              And here, we submit that there is a

10   fairly possible statutory interpretation that would

11   provide Mr. Binderup with relief.

12             The government claims on page 2 of the

13   combined response that theirs is, quote, the most

14   logical reading of the statute.  But, again, that is

15   precisely what Chief Justice Roberts has explained is

16   not the standard when it comes to the constitutional

17   avoidance doctrine.  Rather, the standard is whether

18   there is a fairly possible alternative, and here, we

19   do have one.

20             Section 921(a)(20) defines what it means

21   to have a crime punishable by imprisonment for a term

22   exceeding one year.  It, quote, does not include any

23   state offense classified by the laws of the state as

24   a misdemeanor and punishable by a term of

25   imprisonment of two years or less, close quote.

1           Now, there are some limiting principles

2    that jump out at us right away.  First of all,

3    contrary to the suggestions that the government makes

4    in its combined response, this does not mean that in

5    any case, until sentencing has been passed down,

6    there is an issue of whether (g)(1) applies.

7           We are only dealing here with state

8    offenses classified as misdemeanors.  So federal

9    crimes of any nature and state felonies are not going

10   to be subject to the exception of Section 921(a)(20).

11          So what -- so what does "punishable by"

12   mean?  Well, if "punishable by" means subject to a

13   specified punishment, then Mr. Binderup would lose

14   his statutory argument.

15          But there's another way to interpret

16   Section 921(a)(20)(B), which is to see that

17   "punishable by" means capable of being punished,

18   which is precisely the way that that language,

19   "punishable by," is understood in this circuit and

20   every circuit to explain Section 922(g)(1)'s

21   operative clause, "capable of being punished."

22          Well, Mr. Binderup's offense, while it

23   calls for a possible five-year sentence, is certainly

24   capable of being punished by a term of imprisonment

25   of two years or less.

1             If we were to adopt the government's

2   interpretation, which would mean the reference here

3   is to a specified punishment, we'd have to add words

4   to the statute.  We'd have to say that that means

5   that the crime is punishable only by a term of

6   imprisonment of two years or less in order to come

7   within Section 921(a)(20)'s exception.

8             Again, we do have an alternative reading

9   of the statute, and that is one which works fairly

10  well.

11            The Schrader case accepted this

12  definition in terms of 921(a)(20)(B)(2), but then

13  misapplied it.  It's a very strange case in that it

14  adopted the, quote, common sense meaning of this

15  term, "punishable" refers to any punishment capable

16  of being imposed, but then it read 921(a)(20)(B)(2)

17  as being inclusive rather than exclusive.  The

18  statute actually defines "punishable by over one

19  year" in order to limit that, the reach of that

20  statute.

21            So if we use "punishable by," we see

22  that Mr. Binderup's crime is actually excluded.

23            The Essig case, of course, does -- does

24  adopt the more restrictive definition; however, Essig

25  was decided a long time ago.  There is no way to

1    imagine that if Essig were decided today, there would

2    be no discussion whatsoever of how Heller impacts the

3    statutory interpretation or no discussion whatsoever

4    of the Second Amendment, as it comes to us in a pre-

5    Heller, pre-Second Amendment time.

6              And that case has been superseded by

7    Heller.  The fact is that these days, we understand

8    and the court must recognize, as I'm sure it does,

9    that there is a fundamental individual right at

10   stake, and that case would be decided differently.

11             We've seen that type of approach occur

12   in other circuits post-Heller.  For example, as we

13   explained, in the First Circuit, the First Circuit,

14   without going on Bond, disregarded its prior

15   interpretation of 922(g)(4) and gave it a more

16   limiting construction in U.S. versus Rehlander

17   precisely to avoid a constitutional problem under the

18   Second Amendment.

19             And so we would submit that that, of

20   course, also is something that would apply here.

21             In conclusion, Your Honor, we have two

22   arguments, a statutory argument and a constitutional

23   argument.  We submit that both warrant relief.

24             The Supreme Court tells us that we

25   should look first to the statutory argument to avoid

1    the constitutional issue, but we are quite

2    comfortable that, given the historical pedigree of

3    the crime of which Mr. Binderup was convicted, as

4    well as 922(g) itself with its concern for crimes of

5    violence, as well as all of the personal factors that

6    we've submitted in this case, most especially the

7    fact that a state court has already determined that

8    Mr. Binderup should not be disarmed, Mr. Binderup is

9    entitled to relief.

10               And with that, Your Honor, I submit.

11   Thanks.

12               THE COURT:  All right.

13                        -  -  -

14               (Pause)

15                        -  -  -

16               THE COURT:  Mr. Gura, under Barton, even

17   if we assume that the prior offense here was

18   nonviolent, how and what authority suggests that it

19   was a minor offense as contemplated in Barton?

20               MR. GURA:  Your Honor, our argument does

21   not turn on whether the offense is minor, major, or

22   anything in between.  Barton tells us, actually, that

23   the -- that the concern was with crimes of violence,

24   and Barton spends some time discussing that

25   particular concern.  I mean, this was not a crime of

1   violence.

2               And so we would not say the crime itself

3   is minor.  We -- we defer to the Pennsylvania

4   legislature's determination and, also, the state

5   judge's determination of how serious this crime was.

6               There were two determinations made here.

7   First of all, Pennsylvania has chosen to classify

8   this as a first-degree misdemeanor.  This is not a

9   case of child molestation.  This is not a case of

10  somebody who -- who is abusing children.

11              If, in fact, Mr. Binderup had committed

12  that crime, he would have been convicted of a felony,

13  of a very serious felony.  He would absolutely have

14  gotten jail time before any state judge in this

15  state.  That's not what occurred.  He was convicted

16  of a Class 1 misdemeanor.

17              And, of course, the judge had the

18  discretion, if the judge wanted to, to sentence

19  Mr. Binderup to up to five years in jail.  But

20  looking at the facts of the case and what occurred

21  there -- that court was closer to the situation, it

22  was better able to see what the facts were, and

23  determined that a sentence of probation was

24  sufficient.

25              And then we have the judgment of another

1    state court several years later, which, with the

2    prosecution's blessing, reviewed the facts and came

3    to the conclusion that there is no risk of harm to

4    the community from Mr. Binderup's possession and use

5    of firearms, and then he was given relief from

6    disability.

7                    Barton teaches us that not only is

8    violence or the potential for violence the -- the

9    largest factor that we look to when it comes to

10   seeing what the conviction -- underlying conviction

11   was -- Barton also tells us that we look to the other

12   circumstances surrounding the plaintiff.

13                   Again, the ultimate analysis in Barton

14   is to see whether, here, Mr. Binderup is no more

15   dangerous than a typical law-abiding citizen and

16   poses no continuing threat to society.

17                   And there is nothing here in the record

18   that indicates that Mr. Binderup is more dangerous

19   than a typical law-abiding citizen.  There is nothing

20   that indicates that he poses any continuing threat to

21   society.  In fact, if Mr. Binderup posed some threat

22   to society even back in 1998, one would imagine that

23   he would have received a much stiffer sentence.

24                   THE COURT:  All right.  Thank you.

25                          -  -  -

1                    (Pause)

2                  -   -   -

3              THE COURT:  Mr. Riess, plaintiff --

4    plaintiff submitted a notice of supplemental

5    authority regarding the Supreme Court's recent

6    decision in the Bond case and also referred to it in

7    his argument briefly.  Do you care to comment on the

8    impact of that opinion on this case?

9              MR. RIESS:  Certainly, Your Honor.

10             I guess, first, we disagree with

11   plaintiff's statement in the supplemental authority

12   that Bond is highly relevant to the case.

13             It involved the construction of an

14   international chemical weapons treaty, and it

15   determined that because a woman who had been

16   prosecuted under the chemical weapons treaty for what

17   was described by that court as an amateur attempt by

18   a jilted wife to injure her husband's lover by

19   putting chemicals on a doorknob and ended up causing

20   only a minor thumb burn does not -- does not -- it

21   construed it as not reaching that particular

22   activity.

23             Now, plaintiff claims the Bond case

24   bolsters his constitutional avoidance and rule of

25   lenity arguments, and we disagree.

1          Constitutional avoidance, I'd note first

2    that the court in the NFIB case, v. Sebelius, which

3    the plaintiff quotes, talking about the fairly

4    possible standard -- I believe it used that in

5    upholding the Affordable Care Act.

6          What precedent from this circuit has

7    said, and from the Supreme Court, is, there have to

8    be serious constitutional questions.  That's the

9    Northwest Austin Municipal Utility District case from

10   the Supreme Court.

11         And in the Reno v. Flores case, statutes

12   should be interpreted to avoid serious constitutional

13   doubts, not to eliminate all possible contentions

14   that the statute might be unconstitutional.  But we

15   would suggest that that is not the case here.

16         As for the rule of lenity, which

17   plaintiff claims Bond bolsters, that's only if there

18   is a grievous ambiguity, and we would submit that

19   there is none such here.

20         Even if the interpretation plaintiff

21   wants weren't foreclosed by the Third Circuit in

22   Essig -- which, by the way, Essig said nothing about

23   the Second Amendment and collective rights, and

24   therefore, there's no indication that Heller would

25   have any bearing -- the -- it would be at odds with

1    common sense, because the reading would eliminate

2    922(g)(1) from applying to any misdemeanor as long as

3    there was no mandatory minimum.  If it were capable

4    of being punished by 10 years, 25 years, life, it

5    would fall within the exception.  And as I quote in

6    my opening statement, it's a dictum that Congress

7    doesn't hide elephants in mouse holes.  That's a

8    pretty big elephant.

9            As to the final point with -- as to --

10   for which plaintiff cites Bond, that here,

11   Pennsylvania restored his rights, we would submit

12   that the subsequent case brought by Mr. Binderup

13   actually shows very little.

14           Under Pennsylvania C.S.A. 6105(d), under

15   which the plaintiff was granted relief, it says if

16   you're convicted of certain enumerated offenses, the

17   court, quote, shall grant such relief, the firearms

18   disability relief, if ten years have elapsed since

19   the conviction.

20           The offenses include the corruption of

21   minors statute of which plaintiff was convicted.  It

22   includes [indiscernible] murder, voluntary

23   manslaughter, rape, kidnapping, arson.  But the point

24   is, there's no discretion for the court to award a

25   firearms disability relief.

1               And we've looked at the docket sheet,

2    which we'd be happy to submit, if the court wishes to

3    review.  It shows no involvement of any counsel

4    except for counsel for the plaintiff.

5               So we would submit that the -- the

6    subsequent case brought by the plaintiff here

7    actually shows very little, and therefore, we would

8    disagree with plaintiff's statement that the Bond

9    case is highly -- both highly relevant here and that

10   it indicates that plaintiff should prevail.

11              THE COURT:  Thank you.

12              MR. RIESS:  Thank you, Your Honor.

13                         -  -  -

14              (Pause)

15                         -  -  -

16              THE COURT:  Mr. Riess, does your order

17   of argument, with Barton coming first and Marzzarella

18   argued as a second alternative option, reflect your

19   assessment and prediction that the Third Circuit

20   would find Barton to be controlling in plaintiff's

21   as-applied challenge here?

22              MR. RIESS:  To be honest, Your Honor,

23   we're not certain.  Our guess is that Barton would

24   because it speaks to -- to what -- it talked about,

25   to proceed on an as-applied challenge.

1                    But we have conflicting panel decisions.

2    Marzzarella didn't say that it was either -- didn't

3    say that it was a facial decision, and it set forth a

4    general standard for applying the two-step test to --

5    to cases.  Also, Marzzarella actually set forth a

6    standard, whereas it's difficult to discern some sort

7    of judicially manageable standard from Barton.

8                    So to answer your question, Your Honor,

9    in an abundance of caution, we did it under both.

10   Since Barton talks about, to succeed on as-applied,

11   we briefed it under that.  We think it's probably

12   Barton over Marzzarella, but we are honestly not

13   sure.

14                   THE COURT:  Okay.  Well, that's honest.

15   I appreciate it.

16                        -  -  -

17                   (Pause)

18                        -  -  -

19                   THE COURT:  All right.  I'm going to

20   declare a recess for deliberations of 30 minutes.

21   And then it's my intention to return to court and

22   either decide the case from the bench, if I -- the

23   argument from the bench, if I am able, or to take the

24   matter under advisement, if that's more appropriate.

25                   You may declare a 30-minute recess.

```
 1                  ESR OPERATOR:  Please remain seated.
 2      This court is in recess for 30 minutes.
 3                        -   -   -
 4                  (Whereupon, a recess was had between
 5      11:09 a.m. and 12:10 p.m.)
 6                        -   -   -
 7                  ESR OPERATOR:  Please remain seated.
 8      This court is again in session.
 9                        -   -   -
10                  THE COURT:  Let the record reflect that
11      the participants in this matter of Binderup versus
12      Holder who were identified on the record at the
13      beginning of the argument on the cross motions for
14      summary judgment are once again present, two counsel
15      for each side.  And plaintiff, I believe, is not at
16      the moment in the courtroom -- oh, he just came in.
17      Okay.  Mr. Binderup is here as well.
18                  After deliberating for an hour on the
19      matter of the cross motions -- that is, plaintiff's
20      motion for summary judgment and defendants' motion to
21      dismiss or for summary judgment -- and considering
22      the briefs and the oral arguments of the parties --
23      that it would be fairer to the parties in this case
24      and their counsel and will result in a more
25      appropriately accurate and correct outcome under the
```

Page 48

1  facts and the law to take this matter under

2  advisement so that my law clerk and I can further

3  study, research, and discuss the interesting and

4  sometimes complex issues involved here, as presented

5  by each side from both perspectives in an articulate

6  and -- and persuasive and rationale way.

7              And so we will take the matter under

8  advisement, and we will advise the parties and

9  counsel by issuing an order and opinion or a

10  footnoted order, as appropriate.

11              And you may adjourn court.

12              ESR OPERATOR:  All rise.  This honorable

13  court is adjourned.

14                        -  -  -

15              (Whereupon, the proceeding was concluded

16  at 12:13 p.m.)

17                        -  -  -

18

19

20

21

22

23

24

25

1                C E R T I F I C A T I O N

2

3        I, Judi Y. Olsen, do hereby certify that the

4     foregoing is a true and correct transcript from the

5     electronic sound recordings of the proceedings in the

6     above-captioned matter.

7

    _____              _____

8     Date                                 Judi Y. Olsen

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

**A**

**able** 12:1 33:23
40:22 46:23
**above-captioned**
49:7
**absolutely** 32:9
40:13
**abundance** 46:9
**abusing** 40:10
**accepted** 27:14
37:11
**accomplish** 19:16
**accord** 19:4
**accurate** 47:25
**act** 30:7 43:5
**activity** 15:24
21:18 22:6 42:22
**add** 31:14 37:3
**addicted** 15:9
**additional** 8:24
**addressed** 32:25
**adjourn** 48:11
**adjourned** 48:13
**ADMITTED** 3:11
**adopt** 10:19 37:1
37:24
**adopted** 37:14
**adult** 15:19,23
**adults** 15:14
**adverse** 16:2
**advise** 48:8
**advisement** 46:24
48:2,8
**afford** 24:1
**Affordable** 43:5
**age** 21:14
**ago** 31:19 37:25
**ahead** 21:8
**Alan** 1:10 5:7
**alan@guraposse...**
1:13
**Alcohol** 1:5 4:22
**Alexandria** 1:12
**allege** 34:16
**ALLENTOWN** 1:1
**allow** 8:21

**allowing** 30:3
**alternative** 35:18
37:8 45:18
**amateur** 42:17
**ambiguity** 43:18
**Amendment** 12:7
13:23,23 16:10
19:2 23:1,9 25:6
25:11 29:4 34:12
34:17,18 38:4,5
38:18 43:23
**Amendment's** 23:4
28:10 29:20
**analysis** 23:1 41:13
**analyzing** 23:1
**answer** 46:8
**anticipated** 4:16
**antitrust** 24:8
**apologize** 4:13
**apparently** 34:15
**APPEARANCES**
1:9 2:1
**appellees** 34:17
**applicable** 30:12
**applicant** 30:6
**applicant's** 30:5
**application** 19:8
26:15
**applications** 13:5
**applied** 10:1,4,10
11:14,24 12:18
13:1,11,24 22:20
24:21 25:16 28:4
28:22
**applies** 23:11,11
24:3 25:14 36:6
**apply** 23:13 24:6,8
24:20 26:6 34:8
38:20
**applying** 17:7
23:18 27:6 28:13
44:2 46:4
**appreciate** 46:15
**approach** 9:16 26:1
38:11
**appropriate** 46:24
48:10

**appropriately**
47:25
**arbitrary** 17:13
**argue** 7:2 8:11
**argued** 45:18
**argues** 7:3
**arguing** 5:15,16
6:14 7:8
**argument** 3:4 5:1
6:21 7:3,7,12,21
8:6,12 9:17 11:5
21:3 26:2,16
27:18 32:20 35:6
36:14 38:22,23,25
39:20 42:7 45:17
46:23 47:13
**arguments** 6:22,23
8:20,23 25:5
38:22 42:25 47:22
**arms** 16:12
**arrested** 22:14
**arrestees** 21:11,12
**arson** 44:23
**articulate** 48:5
**aside** 24:10
**asking** 28:18
**assessment** 45:19
**assume** 39:17
**as-applied** 12:1,4
23:12 27:22 28:25
29:23 31:6 32:15
45:21,25 46:10
**attempt** 42:17
**Attorney** 1:4 4:21
5:12 6:3,6,11
**Austin** 43:9
**authority** 39:18
42:5,11
**Avenue** 1:15 2:3,7
**avoid** 38:17,25
43:12
**avoidance** 35:1,17
42:24 43:1
**award** 44:24
**a.m** 1:6 47:5

**B**

**B** 1:5 3:10 4:20
**back** 16:9 27:14
41:22
**background** 12:5
19:14 29:2 33:9
**balancing** 28:14
**ban** 27:23
**Banks** 11:8
**banned** 32:15
**barred** 10:17 12:7
29:4
**bars** 15:8
**Barton** 11:16,20,23
11:25 12:3,4,15
12:19 13:14,15
17:24 18:8,11,21
18:22 20:18 27:12
27:16 28:14 29:1
29:12,18,21,22,25
30:15 31:5,7
32:20,21 33:19,20
34:7 39:16,19,22
39:24 41:7,11,13
45:17,20,23 46:7
46:10,12
**Barton's** 27:18
30:23
**bearing** 43:25
**beg** 14:6
**beginning** 26:7
47:13
**behavior** 15:11
16:23 31:17
**belabor** 32:24
**believe** 43:4 47:15
**believes** 26:9
**bench** 46:22,23
**beneficial** 28:21
**benefits** 27:6
**better** 8:15 40:22
**bias** 33:4
**big** 44:8
**Binderup** 1:2 4:19
5:20,21,22 26:11
26:14 27:9 29:1
30:17 31:16,25
32:8,9 33:5,19

**B** 1:5 3:10 4:20
35:11 36:13 39:3
39:8,8 40:11,19
41:14,18,21 44:12
47:11,17
**Binderup's** 27:9
31:1 32:5 33:8
36:22 37:22 41:4
**binding** 25:2,3 31:5
33:20
**blessing** 31:23 41:2
**bolsters** 42:24
43:17
**bomb** 17:19
**Bond** 35:3 38:14
42:6,12,23 43:17
44:10 45:8
**brief** 26:17 29:18
**briefed** 46:11
**briefly** 11:20 22:23
42:7
**briefs** 13:9 17:6
47:22
**brought** 44:12 45:6
**Bryn** 1:15
**burden** 12:19,21
15:1 16:15 20:18
22:21 23:8
**burdens** 23:3
**Bureau** 1:5 4:22
**burn** 42:20

**C**

**C** 49:2,2
**calls** 36:23
**capable** 15:25
36:17,21,24 37:15
44:3
**care** 9:15 42:7 43:5
**carrying** 14:1,2,17
14:18
**case** 1:2 4:15,19,23
4:25 10:22 11:12
13:3,11,17 14:22
15:18,20 19:2,2
19:14,15,20 20:2
22:19,23,24,25
23:11 24:25 25:7

26:4,13 27:12
33:7,8,24 34:2
35:3,8 36:5 37:11
37:13,23 38:6,10
39:6 40:9,9,20
42:6,8,12,23 43:2
43:9,11,15 44:12
45:6,9 46:22
47:23
**cases** 18:15,20 27:3
33:22 46:5
**categorical** 26:20
**categorically** 29:19
34:12
**category** 22:11
**causing** 42:19
**caution** 46:9
**certain** 17:8 24:8
44:16 45:23
**certainly** 31:12
36:23 42:9
**certify** 49:5
**challenge** 12:1,4
13:24 23:12,17
26:19,21 27:22
28:3,25 45:21,25
**challenges** 23:2
29:23
**characterizes** 17:3
**chemical** 42:14,16
**chemicals** 42:19
**Chief** 35:6,15
**child** 13:8 40:9
**children** 40:10
**chosen** 40:7
**circuit** 10:18 11:1,7
11:8 12:15 13:3
13:13,17,19,22
18:14 19:3 22:25
24:25 25:5 27:14
28:2,23 29:25
34:3 36:19,20
38:13,13 43:6,21
45:19
**circuits** 13:4,20
38:12
**Circuit's** 10:21

11:16 20:14 28:13
**circumstances** 12:6
12:16,20 22:18
27:10 29:3 30:4
33:9 34:1,6,11,20
41:12
**cite** 19:20
**cited** 13:14,16 14:8
23:11
**cites** 44:10
**citizen** 12:11 29:7
29:14 41:15,19
**citizens** 16:11
23:15 25:12
**civil** 2:6 24:11
**claim** 10:17 11:15
25:2,8 26:13,22
26:23 34:23
**claiming** 26:11,12
**claims** 11:11 11:13
25:4 26:6 31:6
35:5,12 42:23
43:17
**clarify** 26:10
**class** 20:25 40:16
**classified** 35:23
36:8
**classify** 40:7
**clause** 36:21
**clerk** 48:2
**close** 27:25 30:9
34:20 35:25
**closer** 40:21
**coercive** 15:16
**coin** 8:11
**Coleman** 11:8
**collective** 43:3
**COLLOQUY** 3:3
**combatting** 23:20
**combined** 29:16
35:13 36:4
**come** 25:9 37:6
**comes** 35:16 38:4
41:9
**comfortable** 34:24
39:2
**coming** 45:17

**comment** 42:7
**committed** 25:17
40:11
**common** 17:11
37:14 44:1
**community** 30:19
41:4
**COMPANY** 1:23
**compelling** 23:19
23:24
**Complaint** 10:12
11:6 26:18 34:16
**completely** 27:4
**complex** 48:4
**concede** 23:10
**conceded** 27:13,19
**conclude** 9:4 16:21
**concluded** 48:15
**conclusion** 25:1
38:21 41:3
**conduct** 16:6,7
17:14 23:3,9
**conference** 4:15
**conflicting** 28:9
46:1
**Congress** 11:10
17:6 19:17 20:6
23:25 27:8 28:20
30:2 44:6
**Congress's** 20:2
27:5 30:1,10
**consent** 15:15
21:18,19 22:7,8
**consequences**
15:24
**considerably** 4:15
**considered** 17:7
28:24
**considering** 47:21
**consistently** 13:4
**constitutional** 10:1
10:3,14 11:24
12:25 18:1 23:6
25:8,9,14,16
34:23 35:1,5,16

38:17,22 39:1
42:24 43:1,8,12
**constitutionality**
19:4
**constitutionally**
22:20
**construction** 38:16
42:13
**construed** 42:21
**contact** 10:5
**contemplated**
39:19
**contentions** 43:13
**continued** 2:1 16:6
**continuing** 12:13
29:10,15 41:16,20
**contra** 7:6
**contrary** 11:7,10
30:9 32:6 36:3
**contrast** 32:7
**control** 15:4 16:23
19:10
**controlled** 15:9
**controlling** 45:20
**controls** 22:24
27:12
**convicted** 9:22 10:6
10:22,24 12:9
13:15,25 17:22
18:6,11,12 19:18
20:7,13,20,24
22:5 23:18 24:4
24:15,16,21 29:5
39:3 40:12,15
44:16,21
**conviction** 11:3
12:13 13:15 17:23
18:7,17,18 24:9
29:9 41:10,10
44:19
**convictions** 13:18
**core** 16:9 23:14
25:10
**correct** 47:25 49:6
**correctly** 6:3 7:22
**corruption** 10:6,23
44:20

**counsel** 6:14,21
45:3,4 47:14,24
48:9
**Count** 10:13,14,15
11:6,13
**counts** 10:12
**course** 5:4 31:2
37:23 38:20 40:17
**court** 1:1,23 4:3,6
4:13,18,25 5:9,12
5:19,22 6:2,6,9,13
6:17 7:16,19,24
8:9,16 9:11,14,19
9:20 10:8,9,19
11:16 12:12,24
13:22 14:4,8,13
14:15,20 15:20
16:13,17 18:2,16
18:20,23,25 19:9
19:16,20,22,25
21:1,8,23 22:1,10
22:16 23:22 25:21
25:25 26:9 27:15
27:17,24 28:2
29:8 34:7 35:4
38:8,24 39:7,12
39:16 40:21 41:1
41:24 42:3,17
43:2,7,10 44:17
44:24 45:2,11,16
46:14,19,21 47:2
47:8,10 48:11,13
**courtroom** 5:18
47:16
**courts** 9:25 12:23
19:4 35:4
**court's** 17:10 24:1
42:5
**crime** 9:23 12:10
12:12 14:24 15:12
17:3,5,22 18:6
19:11 20:9,13
23:19,21,24 24:4
24:18,23 25:17
29:6,9 30:24 31:1
31:8,11 35:21
37:5,22 39:3,25

40:2,5,12
**crimes** 10:2 13:1
  17:8 19:19 20:7
  20:21,25 24:17,21
  31:2 36:9 39:4,23
**crime-free** 33:16
**criminal** 10:22
  15:11 16:6,23,24
  19:13
**criminologists**
  33:14
**cross** 4:19 6:18
  47:13,19
**curb** 19:11
**C.S.A** 44:14

**D**

**D** 3:1
**dangerous** 12:11
  17:15 29:7,14
  30:7,14 41:15,18
**Daniel** 1:2 2:2 4:19
  5:25
**daniel.riess@usd...**
  2:5
**date** 18:16 49:15
**days** 38:7
**DC** 2:4,8
**deadlines** 8:24
**dealing** 16:1 23:14
  28:16 36:7
**decades** 12:13 29:9
**decide** 35:7 46:22
**decided** 18:10,12
  18:20,21,22 37:25
  38:1,10
**decision** 10:21
  11:16 12:24 20:14
  42:6 46:3
**decisions** 46:1
**Decker** 15:20
**declare** 46:20,25
**decline** 10:8
**defendant** 5:24
  6:14 7:2 8:17
  10:22
**defendants** 1:6 2:2

5:1 7:1,4,10,14
  25:23 47:20
**defending** 7:10
**defense** 7:6 9:12
  16:12
**defer** 40:3
**deference** 19:5
  20:16 24:1
**defined** 21:17 22:6
**defines** 35:20 37:18
**definition** 37:12,24
**degree** 14:4,10,13
**Delaware** 21:16,25
  22:2,11 33:2
**delay** 4:14
**deliberating** 47:18
**deliberations** 46:20
**demonstrate** 12:16
  19:7
**demonstrates**
  25:18
**denying** 31:4
**DEPT** 2:2,6
**described** 16:25
  42:17
**describing** 27:22
**DESCRIPTION**
  3:11
**Despite** 16:6
**details** 9:15
**determination**
  13:22 32:2 40:4,5
**determinations**
  40:6
**determine** 29:24
**determined** 19:17
  39:7 40:23 42:15
**determines** 26:14
**dgould@gouldla...**
  1:16
**Dickerson** 19:15,24
  19:25 20:2 27:3
**dictum** 44:6
**differently** 33:12
  38:10
**difficult** 46:6
**direct** 8:20 9:6

34:13
**director** 1:5 4:22
**disability** 30:4,5
  41:6 44:18,25
**disagree** 42:10,25
  45:8
**disarmament** 27:23
**disarmed** 39:8
**discern** 46:6
**discharged** 15:10
**discretion** 40:18
  44:24
**discuss** 11:19 25:6
  48:3
**discussed** 23:24
  25:5
**discussing** 39:24
**discussion** 27:2
  38:2,3
**dishonorably** 15:10
**dismiss** 5:1 7:5,11
  21:6 25:22 47:21
**displayed** 16:22
**disposition** 27:21
**disregarded** 38:14
**distinction** 17:11
  17:12
**distinguish** 12:6
  17:23 18:8,15
  29:3
**distinguished**
  34:10
**distinguishing**
  34:20
**District** 1:1,1,8 4:3
  4:3 13:10 43:9
**DIVISION** 2:6
**docket** 45:1
**doctrine** 35:1,17
**doing** 7:8
**door** 11:25
**doorknob** 42:19
**doubts** 43:13
**Douglas** 1:14,14
  5:10
**Drake** 19:2 20:15
  24:1

**drug** 13:15,18
**Dutton** 13:21 14:23
  17:24 18:8,10,17
  18:18 34:2,14
**D.C** 11:7 12:24
  24:25

**E**

**E** 3:1,10 49:2
**earlier** 7:1 24:14
**easily** 15:22
**Eastern** 1:1 4:3
**effect** 26:16
**effects** 16:2
**efficient** 6:20
**effort** 8:3
**either** 9:2,5 22:14
  26:7,8,21 34:16
  46:2,22
**elapsed** 44:18
**electronic** 1:21
  49:6
**elephant** 44:8
**elephants** 11:11
  44:7
**Eleventh** 13:17
**eliminate** 43:13
  44:1
**empirical** 20:19,23
  24:15
**employee** 10:5 16:4
  16:5
**employer** 15:19
  16:3
**enacted** 20:5 30:2
  30:11
**enacting** 20:3
**ended** 42:19
**engage** 15:23
**engaged** 10:4 31:16
**ensuring** 32:4
**enter** 25:22
**entitled** 19:12
  34:22 39:9
**entrepreneur** 30:21
**entrusted** 15:5 17:1
**enumerated** 44:16

**episode** 31:3
**Eric** 1:4 4:20
**especially** 15:18
  39:6
**Esquire** 1:10,14 2:2
  2:6 5:7,10
**ESR** 2:10 4:2 47:1
  47:7 48:12
**Essig** 10:21 11:5
  37:23,24 38:1
  43:22,22
**Essig's** 11:2
**establishes** 33:20
**evaluate** 23:4
**evaluates** 11:17
**evaluating** 23:7
**evidence** 20:20
  32:7,11 34:5,10
**exactly** 26:10
**examination** 26:5
**example** 28:8 34:2
  38:12
**examples** 12:8
  13:14,18
**exceeding** 35:22
**exceeds** 9:24
**exception** 36:10
  37:7 44:5
**exceptions** 8:1
  30:13
**excessive** 8:5
**excluded** 29:19
  37:22
**exclusive** 37:17
**exhibits** 21:6
**expected** 19:19
**expedient** 6:20
**explain** 11:21 36:20
**explained** 17:10
  19:16 35:15 38:13
**Explosives** 1:6 4:23
**expunged** 24:10
**extended** 25:19
**extending** 28:19
**extremely** 31:22

**F**

**F** 49:2
**face** 11:24
**facial** 46:3
**fact** 15:13 17:2
  38:7 39:7 40:11
  41:21
**factor** 41:9
**factors** 28:24 30:16
  39:5
**facts** 12:5 29:2
  30:17 31:19 33:8
  33:18,24 34:19,21
  40:20,22 41:2
  48:1
**factual** 21:4 22:18
**fail** 13:24
**failed** 12:16
**fails** 23:17
**failure** 13:7
**fairer** 47:23
**fairly** 35:5,7,10,18
  37:9 43:3
**fall** 44:5
**family** 30:20
**far** 27:14 30:1
  32:13,23
**Farby** 2:6 6:7,8,8
  6:11,11,12
**fashion** 21:3 35:8
**February** 5:2
**federal** 15:2 19:10
  32:3 35:4 36:8
**felon** 12:9,12 13:17
  27:21 29:5,8
**felonies** 17:9,13,15
  20:9 36:9
**felons** 13:6 34:11
**felony** 21:20,22
  22:9,14 27:22
  40:12,13
**female** 15:22
**Fifth** 13:20
**figure** 22:11
**filed** 5:2,3,5 7:1
  34:15
**filing** 13:9
**final** 44:9

**finally** 20:17 31:20
**find** 12:12 29:8
  45:20
**fine** 8:8
**finish** 16:18
**fire** 17:19
**firearm** 11:2 14:1,2
  14:17,18 15:6
  17:1
**firearms** 1:6 4:22
  9:22 10:17 14:9
  14:16 19:11,17
  20:3,6,12 24:13
  30:25 31:10 32:1
  32:5 41:5 44:17
  44:25
**first** 7:2 8:17 10:9
  10:12 12:23 14:13
  19:1 23:2 26:13
  28:6 30:18 36:2
  38:13,13,25 40:7
  42:10 43:1 45:17
**first-degree** 13:25
  14:12 17:4,17
  40:8
**fit** 23:18 24:2,20
**fits** 28:17
**FITZKO** 2:10
**five** 10:7 11:4 12:22
  17:5 20:23 21:15
  22:18 25:20 40:19
**five-year** 36:23
**fixed** 26:7
**Flores** 43:11
**focusing** 27:18
**followed** 7:7 33:3
**following** 28:24
  30:16
**follows** 11:16 28:14
  30:3
**footnoted** 48:10
**foreclose** 27:21
**foreclosed** 25:2
  43:21
**forecloses** 11:5
**foregoing** 49:5
**form** 23:5

**forth** 46:3,5
**found** 20:6,11
**four** 6:23 8:22
**fourth** 11:8 13:3,13
  17:21 18:3
**frame** 27:17
**fraud** 13:8,11
  25:15
**fundamental** 38:9
**further** 48:2

---

**G**
**g** 10:20 11:1,23
  12:17,21 13:5,10
  13:24 15:7,8,9
  17:8 18:8 19:7
  20:6 23:18 24:3
  24:20 34:18 36:6
**Gardner** 1:8 4:5
**general** 1:4 4:21
  20:22 23:1,23
  46:4
**generalized** 32:11
**generally** 27:7
  28:17,22 30:12
**generis** 33:24
**gentlemen** 4:7
**getting** 4:14 32:15
**give** 8:16 28:2
**given** 17:13 32:9
  33:15 39:2 41:5
**gives** 29:23
**Glenbrook** 1:15
**go** 8:17,18 21:8
  32:23
**goal** 19:17
**goes** 15:11 29:22
  32:13
**going** 30:13 31:4
  33:20 36:9 38:14
  46:19
**good** 4:6,8 5:8,9,11
  5:12,22 6:4,11,12
  15:3 17:9
**gotten** 40:14
**Gould** 1:14,14 5:10
  5:11,13

**government** 13:8
  23:19 27:13,19
  28:18 31:16,21,23
  32:3,8,10,12,24
  33:21 34:4 35:12
  36:3
**government's**
  23:23 24:22 26:17
  28:17 29:16,18
  37:1
**grant** 25:21 44:17
**granted** 30:14
  31:24 44:15
**granting** 30:8
**grievous** 43:18
**ground** 35:7
**group** 24:16
**guarantee** 23:4
  28:10
**guess** 42:10 45:23
**guidepost** 28:2
**guideposts** 29:23
**gun** 15:2 19:10
  27:21
**Gura** 1:10,11 3:5
  5:7,8,9,14,16 7:17
  7:18 8:10,13 9:10
  26:1,3 39:16,20

---

**H**
**H** 1:4 3:10 4:20
**handle** 8:5
**hands** 19:12 20:3
**happen** 28:1
**happened** 31:19
**happy** 45:2
**harm** 41:3
**hearing** 1:7 6:23
  21:2
**hearth** 16:12
**heavily** 34:4
**held** 11:1 19:3
  25:13 34:7
**Heller** 12:24 16:10
  16:25 23:14 25:4
  25:7 28:8 38:2,5,7
  43:24

**Heller's** 27:20
**help** 20:13
**he/she** 12:2
**hide** 11:10 44:7
**high** 32:14
**higher** 20:21
**highly** 42:12 45:9,9
**historical** 39:2
**historically** 12:7
  29:4,12
**history** 11:9 14:22
**hold** 10:9
**Holder** 1:4 4:20
  47:12
**holdings** 11:7
**holes** 11:11 44:7
**home** 16:12
**homicide** 17:18
**honest** 45:22 46:14
**honestly** 46:12
**Honor** 4:9 5:8,11
  5:16,21 6:1,4,8,16
  7:15,18,23 8:14
  9:10,13,18 14:7
  14:14 16:20 19:1
  22:17 25:1,24
  26:3 31:22 33:4
  34:23 38:21 39:10
  39:20 42:9 45:12
  45:22 46:8
**honorable** 1:8 4:4
  48:12
**hour** 47:18
**housekeeping** 9:15
**Huddleston** 19:9
  19:14,21,22 27:3
**huge** 17:11
**humor** 8:3
**hunting** 17:18
**husband's** 42:18

---

**I**
**identified** 23:14
  47:12
**Illinois** 21:10
**imagine** 38:1 41:22
**imbalance** 15:13,17

immature 15:22
immediate 24:24
impact 42:8
impacts 38:2
implicitly 25:3
implied 27:24
important 26:4
    30:22 31:22
imposed 37:16
imprisonment 9:23
    11:4 24:5,7 35:21
    35:25 36:24 37:6
inability 15:4 16:22
include 17:17 35:22
    44:20
includes 13:7 44:22
including 10:1
    13:14 24:16
inclusive 37:17
incomprehensible
    34:15
indicated 6:19 31:2
indicates 41:18,20
    45:10
indication 14:22
    43:24
indiscernible 44:22
individual 38:9
individualized
    33:18
indulge 27:17
inherently 10:2
    14:24 15:16 25:15
injure 42:18
instance 12:9 16:8
    29:5
intended 12:17,21
    14:23
intent 20:2 30:1
intention 46:21
interest 23:20,23
    24:22 28:13,17,18
    30:9
interesting 48:3
intermediate 23:10
    28:4,7
international 42:14

interpret 36:15
interpretation
    35:10 37:2 38:3
    38:15 43:20
interpreted 43:12
invalid 28:9
invitation 10:9
invite 8:20,21
involuntary 17:17
involve 17:14 24:17
    30:24
involved 31:12 34:4
    42:13 48:4
involvement 45:3
irrelevant 27:4,5
issue 27:11 28:11
    33:4,24 36:6 39:1
issues 48:4
issuing 48:9

J
jail 21:12 40:14,19
James 1:8 4:4
JENNIFER 2:10
jilted 42:18
joint 6:21 7:20
Jones 1:5 4:20
Jr 1:4 4:20
judge 1:8 31:24
    33:7 40:14,17,18
judges 33:12
judge's 40:5
judgment 5:2,3 7:5
    7:7,10,11 15:3
    16:8 21:7 25:18
    25:22 27:6 28:20
    31:3,3 40:25
    47:14,20,21
judgments 19:6,6
    20:15 23:25 27:8
Judi 2:11 49:4,15
judicial 8:3
judicially 46:7
jump 36:2
June 1:6 49:15
junior 10:5
Justice 2:2,6 35:6

35:15

K
keep 20:3
keeping 19:11
kept 19:18
key 29:11
kidnapping 44:23
knew 16:4
Knoll 1:8 4:5
know 6:10 8:1
    27:15 32:21

L
labeled 17:8 20:8
lack 15:3 25:18
    28:13
ladies 4:6
lame 8:2
landmark 12:23
language 13:19
    27:18 30:10,23
    36:18
lapse 16:8 18:13
large 15:24
largest 41:9
lastly 20:1
late 27:14
law 1:14 9:25 11:14
    11:17 14:1,5,9,11
    15:14 17:11 23:3
    23:5 24:24 26:6
    28:16,22 48:1,2
lawful 27:23
laws 28:9 35:23
law-abiding 12:11
    16:11,24 23:15
    25:12 29:7,14
    30:18 41:15,19
lead 6:14 33:16
learned 35:2
left 11:25
legally 15:15 19:12
    21:19 22:8
legislation 19:11
legislative 11:9
legislators 19:5

legislature's 40:4
length 26:14 29:22
lenity 42:25 43:16
LESLEY 2:6
lesley.farby@usd...
    2:9
Leslie 6:8,9,10,11
let's 15:12 26:10
    30:1
level 32:2
license 14:3,19
life 33:16 44:4
limit 7:23 37:19
limiting 36:1 38:16
Lindsey 6:6,10
linking 20:20
list 8:1
little 8:2 44:13 45:7
local 31:24
logical 35:14
long 37:25 44:2
longer 4:16
long-range 16:1
long-term 16:22
look 15:12 23:2
    31:8 38:25 41:9
    41:11
looked 45:1
looking 40:20
lose 36:13
lover 42:18

M
mail 13:8,11 25:15
major 39:21
man 30:20
manageable 46:7
mandatory 44:3
manner 30:7
manslaughter
    17:18 44:23
March 5:4
marked 3:11,12
Market 1:24
Marzzarella 11:18
    11:22 22:23 24:19
    28:14 45:17 46:2

46:5,12
Massachusetts 2:3
    2:7
matter 4:18 18:14
    18:15 46:24 47:11
    47:19 48:1,7 49:8
matters 8:6
Mawr 1:15
maxim 11:10
mean 34:22 36:4,12
    37:2 39:25
meaning 37:14
means 35:20 36:12
    36:17 37:4
means-end 11:17
    23:5 28:3,6
member 30:19
mentally 15:23
mentioned 11:11
    24:14
mentioning 31:21
mere 17:2
merit 11:15
met 12:21 15:1
    22:21
MID-ATLANTIC
    1:23
minimum 44:3
minor 10:6,23
    12:10 17:4,13
    29:6 39:19,21
    40:3 42:20
minors 44:21
minute 9:3,5 16:13
minutes 7:23 8:8
    8:17,25 9:2 46:20
    47:2
misapplied 37:13
misconduct 20:21
    20:24
misdemeanor 17:4
    21:21 22:14 24:6
    35:24 40:8,16
    44:2
misdemeanors
    13:25 14:5,10,12
    17:12,14,17 20:8

26:24,25 27:7
  36:8
**misjudgment** 16:24
**misreading** 26:18
**misunderstood**
  16:17
**misuse** 19:19 20:6
  30:24 31:13
**modern-day** 17:12
**molestation** 40:9
**moment** 47:16
**months** 16:7
**morning** 4:6,8,14
  4:18 5:8,9,11,12
  5:15,22 6:5,11,12
  6:15,24
**motion** 5:1,3 7:1,2
  7:4,6,9,10 21:6
  25:21 47:20,20
**motions** 1:7 4:19
  5:5 6:18 47:13,19
**mouse** 11:11 44:7
**move** 16:14
**MULTIPLE** 4:8
**Municipal** 43:9
**murder** 44:22
**muster** 23:6 24:24

**N**

**N** 3:1 49:2
**name** 6:2
**NATIONAL** 1:23
**nature** 10:2 13:2
  15:16 21:4 25:15
  36:9
**necessarily** 13:1
**negligent** 17:18
**neither** 15:25
**new** 21:20,22 22:14
**NFIB** 43:2
**Ninth** 13:19
**nonviolent** 12:10
  13:5 26:25 29:6
  32:13,17 39:18
**Northern** 13:19
**Northwest** 43:9
**note** 5:6,17,24 43:1

**noted** 17:6
**notice** 42:4
**number** 3:11 4:23
  13:14 24:15
**numerous** 17:14
**NW** 2:3,7

**O**

**O** 49:2
**object** 31:15
**obtain** 32:19
**obviously** 19:17
  33:11
**occupied** 17:19
**occur** 38:11
**occurred** 20:9
  40:15,20
**odds** 10:20 43:25
**offender** 13:25
  21:11 32:17
**offenders** 10:1 13:1
  24:16 32:14
**offense** 7:4,9 17:20
  21:22 22:9 24:6
  35:23 36:22 39:17
  39:19,21
**offenses** 13:7 14:16
  20:13 24:9 25:14
  36:8 44:16,20
**OFFICES** 1:14
**official** 26:19
**oh** 18:23 47:16
**Okay** 14:20 16:17
  16:20 18:23 22:16
  25:25 46:14 47:17
**old** 12:13 29:9
**Olsen** 2:11 49:4,15
**omits** 31:21
**once** 47:14
**open** 11:25
**opening** 44:6
**operative** 36:21
**OPERATOR** 2:10
  4:2 47:1,7 48:12
**opinion** 34:3 42:8
  48:9
**opponent** 5:5

**optimal** 26:9
**option** 45:18
**oral** 6:23 7:3,12
  47:22
**order** 19:16 37:6
  37:19 45:16 48:9
  48:10
**Oronoco** 1:11
**outcome** 26:15
  47:25
**outside** 12:17,20
  23:14
**overbroad** 26:22
**overpowered** 15:23
**overruled** 31:5
**overruling** 32:20
**overturned** 25:3,7

**P**

**PA** 1:15,24
**page** 3:2 29:17
  35:12
**panel** 46:1
**pardon** 14:6
**pardoned** 24:11
**part** 7:7
**participants** 47:11
**particular** 27:1
  28:19,21 39:25
  42:21
**parties** 47:22,23
  48:8
**passed** 36:5
**passes** 23:6 24:24
**patience** 4:17
**Pause** 4:11 39:14
  42:1 45:14 46:17
**pay** 13:8
**peaceful** 30:18
**pedigree** 39:2
**Pennsylvania** 1:1
  4:4 14:1,5,9,11
  15:20 17:3,16
  27:1 40:3,7 44:11
  44:14
**Pennsylvania's**
  31:25

**people** 15:3 30:13
  31:4 33:3,11,15
  33:22
**percent** 21:11,17
  21:21 22:3,4,13
**percentage** 22:11
**percentages** 22:2
**period** 16:7 21:13
  25:19
**permanent** 16:2
**permit** 8:23
**person** 16:25 23:18
  24:3,11,13 28:21
  31:10 32:19 33:25
  34:4,9
**personal** 27:9
  33:25 34:6,10
  39:5
**personally** 30:17
  32:10
**persons** 9:22 12:6
  15:8,9,14,15
  19:18 20:4,7,12
  20:20,24 22:4
  24:21 29:4
**perspectives** 48:5
**persuasive** 48:6
**pertinent** 21:10
**Philadelphia** 1:24
**place** 12:17,20
**plaintiff** 1:3,10 5:6
  5:15,17 7:8 8:18
  9:9 10:4,15,25
  11:14,19 12:19
  15:1 16:4,15
  17:21 18:5,11
  20:18 21:14 22:20
  22:21 23:11 25:4
  25:17 26:5 28:19
  29:13,19 31:14
  34:15 41:12 42:3
  42:4,23 43:3,17
  43:20 44:10,15,21
  45:4,6,10 47:15
**plaintiffs** 7:17
  10:19
**plaintiff's** 5:3 7:2,6

7:12 10:8,12,24
  11:5 23:16,19
  24:22 25:1 26:2
  42:11 45:8,20
  47:19
**plan** 10:11 11:19
**play** 35:1
**please** 4:5 9:19
  47:1,7
**PLLC** 1:11
**Plus** 17:6
**podium** 9:16 26:2
**point** 16:23 17:2
  18:3 20:17 21:9
  32:24 44:9,23
**policies** 7:25
**politely** 9:3
**poor** 31:3,3
**population** 20:22
**posed** 41:21
**poses** 12:13 29:9,15
  41:16,20
**position** 15:19
**possess** 19:12 24:13
**possessing** 10:17
  15:5
**possession** 9:22
  11:2 20:12 32:1,5
  41:4
**POSSESSKY** 1:11
**possibilities** 8:22
**possibility** 11:25
**possible** 12:8 35:6
  35:7,10,18 36:23
  43:4,13
**post-Heller** 38:12
**potential** 41:8
**power** 15:13,16
**practices** 24:9
**pre** 38:4
**precedent** 10:18
  25:2,3,5 26:8 43:6
**precisely** 35:15
  36:18 38:17
**predatory** 10:4
  31:16
**prediction** 45:19

**predictive** 19:5,6
  20:15 23:25 27:5
  27:8 28:20
**prefer** 33:14
**premised** 15:13
**presence** 5:6,24
**present** 5:18 12:4
  24:17 29:2 47:14
**presented** 34:19,21
  48:4
**presiding** 4:5
**presumption** 27:24
**presumptive** 27:20
**presumptively** 20:4
  27:23
**pretty** 44:8
**prevail** 34:22 45:10
**prevailing** 34:25
**prevails** 29:13
**preventing** 23:23
**pre-Second** 38:5
**principal** 19:10
**principles** 36:1
**prior** 13:15,18
  38:14 39:17
**prison** 10:7 17:6
  21:20 22:8 25:20
  33:3,6,7,11,13
**pro** 34:14
**probably** 27:15,16
  46:11
**probation** 10:25
  33:15 40:23
**problem** 20:10
  32:12 38:17
**procedure** 7:13,16
  9:8
**procedures** 7:25
**proceed** 45:25
**proceeding** 48:15
**proceedings** 1:21
  49:7
**produced** 1:21
**Professional** 49:4
**prohibit** 10:16
**prohibited** 11:2
**prohibition** 17:8

31:25
**prohibitors** 15:2
**prohibits** 9:22
**pronouncing** 6:2
**property** 13:9,16
  25:16 32:13,17
**propose** 6:25
**prosecuted** 42:16
**prosecution's** 41:2
**prosecutor** 31:24
**protecting** 23:20
  24:23
**protection** 25:11
  29:20
**protections** 12:8
  29:5
**provide** 24:12
  35:11
**provides** 29:17
  30:3
**Pruess** 13:3,13
**public** 14:2,18
  23:20 24:23 30:7
  30:9 32:4,6
**punishable** 9:23
  10:7 11:3 17:5
  24:4,7 25:20
  35:21,24 36:11,12
  36:17,19 37:5,15
  37:18,21
**punished** 36:17,21
  36:24 44:4
**punishment** 33:10
  36:13 37:3,15
**purpose** 19:10
**putting** 42:19
**p.m** 47:5 48:16

_____

**Q**

**question** 8:10 10:13
  10:14 22:19 46:8
**questions** 43:8
**quite** 39:1
**quote** 11:3 12:3
  13:4 15:21 16:11
  17:13 27:19,25
  29:13,15 30:4,9

34:13,16,19,20
  35:13,22,25 37:14
  44:5,17
**quotes** 43:3
**quoting** 28:24
  29:17

_____

**R**

**R** 49:2
**raise** 12:3 28:25
**range** 15:24
**rape** 22:5 44:23
**rapists** 21:17
**rate** 20:21
**rationale** 48:6
**reach** 37:19
**reaching** 35:4
  42:21
**read** 6:10 27:15
  30:23 37:16
**reading** 10:20
  35:14 37:8 44:1
**realized** 33:7
**rearrested** 21:15
  21:20 22:9
**reason** 6:25 14:25
  15:21 16:14 17:9
  28:12 31:4
**reasonable** 8:5 15:2
  16:21 23:17 24:2
  24:20
**reasonableness**
  19:7
**reasons** 11:21
  12:22 22:18 28:5
**rebuttal** 8:19,23
**rebutted** 27:24
**recall** 30:2
**receipt** 13:16
**receive** 20:15
**received** 10:24
  41:23
**receiving** 25:15
**recess** 46:20,25
  47:2,4
**recidivism** 20:21
  24:18 32:11,14,18

**recited** 19:23
**recognize** 38:8
**recognized** 15:21
**recognizing** 30:10
**record** 5:17 21:4
  30:5,17 31:15,17
  32:25 41:17 47:10
  47:12
**recorded** 1:21
**recording** 1:21
**recordings** 49:7
**redigging** 31:18
**reduce** 20:13
**reducing** 24:23
**reference** 37:2
**referred** 42:6
**refers** 37:15
**reflect** 45:18 47:10
**refusal** 28:13
**regarding** 27:20
  28:20 30:4 42:5
**regardless** 11:15
  20:8,19
**REGION** 1:23
**Registered** 49:4
**regrettable** 31:11
**Rehlander** 38:16
**rejected** 17:7
**released** 21:20 22:8
  33:3
**relevant** 42:12 45:9
**relief** 30:3,8,14
  31:4,25 32:16,19
  32:21,22 33:23
  35:11 38:23 39:9
  41:5 44:15,17,18
  44:25
**relies** 34:4
**remain** 47:1,7
**remind** 9:3
**Reno** 43:11
**repeated** 31:15
**repeatedly** 25:13
**Reporter** 49:5
**REPORTING** 1:23
**reputation** 30:6
**requires** 15:21

33:19
**research** 48:3
**respect** 26:24 33:1
**respectively** 4:23
  18:13
**respond** 10:11
**responded** 33:21
**response** 29:16
  35:13 36:4
**responses** 5:4
**responsibilities**
  15:5 25:10
**responsible** 16:11
  16:25 23:15 25:12
  32:4
**restored** 24:12
  44:11
**restricting** 20:11
**restrictive** 37:24
**result** 6:23 47:24
**return** 46:21
**reverse** 7:8
**review** 19:3 45:3
**reviewed** 41:2
**Riess** 2:2 3:4 5:25
  6:1,3,4,13,16 7:3
  7:14,15,19,22 8:7
  9:13,16,18,20,21
  14:6,12,14,17,21
  16:16,20 18:5,18
  18:22,24 19:1,21
  19:24 20:1 21:5,9
  21:24 22:4,13,17
  42:3,9 45:12,16
  45:22
**right** 5:19,21 6:17
  7:19 8:9,16 9:14
  16:11 18:25 21:8
  23:14 26:1 36:2
  38:9 39:12 41:24
  46:19
**rights** 24:11 25:8,9
  25:11 34:17 43:23
  44:11
**rise** 4:2 48:12
**risk** 24:18 31:9
  32:14,18 41:3

**risky** 20:4
**Roberts** 35:6,15
**Room** 2:3,7
**Rozier** 13:17
**RPR** 2:11 49:15
**rule** 7:25 29:12
  42:24 43:16
**rules** 26:7

**S**

**s** 3:10 17:8 19:7
**safety** 23:20 24:23
  30:7 32:4,6
**Salerno** 23:22 27:3
**satisfactory** 7:13
  7:17 9:8,11
**satisfied** 16:15
  30:16
**saying** 18:3
**says** 6:10 7:24 12:3
  15:14 44:15
**scale** 33:18
**Schrader** 11:7
  24:25 37:11
**scope** 12:17,21 23:3
  23:9
**scrutiny** 11:18 23:5
  23:10,12 24:24
  28:4,4,7
**se** 34:14
**seated** 4:5 5:23
  47:1,7
**Sebelius** 43:2
**second** 8:18 12:7
  13:23,23 14:25,25
  16:10,19 19:2,23
  23:1,3,9 25:6,10
  26:19 28:10,12
  29:4,20 30:20
  34:12,17,18 38:4
  38:18 43:23 45:18
**Section** 10:16 22:19
  26:15,20,21 27:7
  30:2 34:8,18
  35:20 36:10,16,20
  37:7
**seduced** 15:23

**see** 36:16 37:21
  40:22 41:14
**seeing** 41:10
**seen** 38:11
**selection** 33:4
**self-control** 25:19
**sense** 23:13 28:15
  37:14 44:1
**sent** 33:5,6,11
**sentence** 26:14
  36:23 40:18,23
  41:23
**sentencing** 33:12
  36:5
**separate** 6:22
**serious** 15:10 17:20
  19:19 20:7,10
  40:5,13 43:8,12
**seriously** 30:23
**served** 21:12
**service** 1:21
**session** 4:4 47:8
**set** 8:24 22:25
  24:10 46:3,5
**Seventh** 13:20
**seven-year** 21:13
**severe** 25:18
**sex** 21:11
**sexual** 10:4 20:20
  20:24 21:18 22:6
**sheet** 45:1
**shining** 28:8
**shoot** 8:2
**show** 12:10,20
  22:21 29:6,22
**showing** 20:24
  21:10 24:15
**shown** 15:3 24:20
**shows** 29:19 44:13
  45:3,7
**sic** 8:21 31:13
**side** 26:8 33:18
  47:15 48:5
**sides** 8:11
**significant** 24:18
**similar** 11:21 13:18
**similarly** 10:3

  12:12 29:8
**simple** 18:13
**simply** 26:17 28:9
  28:15 29:21
**single** 16:8
**sister** 13:4
**sit** 9:6
**sitting** 11:8
**situation** 40:21
**society** 12:14 29:10
  29:15 31:10 41:16
  41:21,22
**somebody** 32:22
  40:10
**sorry** 6:9 16:13
  18:2
**sort** 46:6
**sound** 1:21 49:6
**SPEAKERS** 4:8
**speaks** 32:10 45:24
**specifically** 17:7
  20:11 31:7
**specified** 36:13
  37:3
**spends** 39:24
**stake** 38:10
**standard** 11:22
  22:23,24 23:16
  35:16,17 43:4
  46:4,6,7
**stands** 29:21
**started** 4:14
**state** 11:3 20:9
  21:25 24:6 31:23
  33:5,6 35:23,23
  36:7,9 39:7 40:4
  40:14,15 41:1
**stated** 16:10 20:2
  31:8
**statement** 27:20
  42:11 44:6 45:8
**statements** 24:12
  31:15
**states** 1:1,4,8 4:3
  4:21 17:9
**statistics** 32:11
**status** 4:15

**statute** 10:23 11:9
  12:18 26:8,22,23
  27:1 30:11 35:14
  37:4,9,18,20
  43:14 44:21
**statutes** 19:4 27:21
  43:11
**statutory** 10:13,20
  21:17 22:5 25:2,5
  35:10 36:14 38:3
  38:22,25
**stayed** 31:18
**stiffer** 41:23
**stolen** 13:16 25:16
**strange** 37:13
**street** 1:11,24 14:2
  14:18
**stretch** 15:21
**strict** 23:12,13 28:7
**studies** 20:23 24:15
  32:23 33:2
**study** 21:10,16,23
  21:24 22:3,6,12
  33:2,14 48:3
**subject** 36:10,12
**submit** 30:15 33:6
  33:17 35:9 38:19
  38:23 39:10 43:18
  44:11 45:2,5
**submitted** 20:19,23
  21:2,5 24:14 32:8
  32:24 34:5,9 39:6
  42:4
**subsequent** 44:12
  45:6
**substances** 15:9
**substantial** 19:5
  20:16
**succeed** 11:20,21
  12:2 46:10
**successful** 12:4
  28:25 30:21
**suffice** 8:14
**sufficient** 40:24
**suggest** 6:19 17:4
  43:15
**suggesting** 31:17

**suggestions** 36:3
**suggests** 31:9 39:18
**sui** 33:24
**Suite** 1:11,24
**summary** 5:2,3 7:5
  7:6,9,11 21:6
  25:22 47:14,20,21
**Superior** 15:20
**superseded** 38:6
**supplemental** 42:4
  42:11
**support** 7:4,9 13:8
**supporting** 11:6
  13:19
**suppose** 29:1 31:1
  34:23
**Supreme** 12:24
  17:10 19:9,15
  23:22 27:23 35:4
  38:24 42:5 43:7
  43:10
**sure** 16:20 38:8
  46:13
**surprising** 28:5
**surrebuttal** 8:20,23
**surrounding** 41:12
**system** 32:3

**T**

**T** 1:14 3:10 5:10
  49:2,2
**take** 27:14 30:23
  46:23 48:1,7
**taken** 27:4
**takes** 9:15
**talked** 45:24
**talking** 9:2,6 22:2
  43:3
**talks** 46:10
**teaches** 41:7
**teenaged** 10:5 16:4
**tell** 8:4 16:18 22:1
**tells** 38:24 39:22
  41:11
**ten** 44:18
**term** 9:23 35:21,24
  36:24 37:5,15

terms 37:12
test 24:19 28:14
    46:4
Texas 13:10
thank 4:16 5:23
    9:18 19:25 25:24
    25:25 26:3 41:24
    45:11,12
Thanks 39:11
theft 13:8
theirs 35:13
theoretical 8:22
theory 32:22 34:25
thing 7:8 31:20
things 19:13 27:10
think 8:4,7,7,21
    9:14 27:17 31:21
    46:11
third 10:18,21 11:1
    11:16 12:15 13:22
    16:14 17:2 18:14
    19:3 20:14 22:25
    25:4 27:13 28:2
    28:12,23 29:25
    30:22 34:3 43:21
    45:19
threat 12:13 29:10
    29:15 41:16,20,21
three 21:21 22:9,15
throwing 17:19
thumb 42:20
ties 16:9
time 7:20 8:4,10,24
    9:4 16:5 18:14
    25:19 35:2,2
    37:25 38:5 39:24
    40:14
timekeeper 9:1
times 21:12
Tobacco 1:5 4:22
today 10:9,11
    28:11 38:1
Todd 1:5 4:20
told 28:23
total 6:22
trade 24:9
TRANSCRIBER

2:11
transcript 1:7,21
    49:6
transcription 1:21
treaty 42:14,16
true 17:16 33:22
    49:6
trust 15:19
trying 16:18
turn 22:22 39:21
two 6:22,22,24
    10:12 12:8 13:25
    14:5,8,16,21 24:7
    28:5 35:25 36:25
    37:6 38:21 40:6
    47:14
two-step 46:4
type 33:10 38:11
typical 12:11 29:7
    29:14 41:15,19

                U
ultimate 41:13
unacceptable 32:18
unconstitutional
    10:10 11:14 26:23
    34:8 43:14
underage 15:14,15
    16:5
underlying 15:1
    41:10
understand 7:22
    15:22 38:7
understands 15:25
understood 36:19
unfair 24:9
unified 7:7,11
uniformly 9:25
    12:25
United 1:1,4,8 4:2
    4:21
unlawful 15:8
unprotected 34:12
unpublished 34:3
upheld 9:25 11:23
    12:18,25 13:5,10
    13:22 17:25 18:9

upholding 43:5
use 14:23 16:12
    17:1 32:1,5 37:21
    41:4
useful 27:17 28:21
users 15:8
utility 27:6 43:9
U.S 2:2,6 10:21
    38:16
U.S.C 9:21

                V
v 10:21 12:24 43:2
    43:11
VA 1:12
valid 30:12
validity 27:20
veering 30:1
vehicle 17:19
VERITEXT 1:23
versus 4:20 38:16
    47:11
victim 21:19 22:7
victims 21:13
victim's 21:18 22:7
viewed 33:12
violated 34:17
violates 34:18
violations 26:25
violence 24:17
    30:24 31:12,13
    39:5,23 40:1 41:8
    41:8
violent 10:2 13:2
    14:24 25:15 26:24
    31:9
voluntary 44:22
vs 1:3

                W
wait 9:3,5
want 4:13 8:1 35:4
wanted 40:18
wants 43:21
warrant 33:9 38:23
Washington 2:4,8
way 36:15,18 37:25

43:22 48:6
weapons 14:23
    42:14,16
week 35:3
weren't 13:1 43:21
Westlaw 13:11
we'll 8:16,23
we're 23:13 45:23
we've 6:18 20:19
    20:23 21:1 23:24
    24:14,20 32:25
    38:11 39:6 45:1
whatsoever 34:5
    38:2,3
wholesome 30:12
wife 42:18
wish 8:1
wishes 45:2
woman 42:15
word 29:11
words 37:3
works 37:9
wouldn't 23:13

                X
X 3:1,10

                Y
Y 2:11 49:4,15
year 9:24 24:5
    35:22 37:19
years 10:5,7 11:4
    17:5,22 18:6
    21:14,15,21 22:9
    22:15 24:7 25:20
    30:19 31:19 35:25
    36:25 37:6 40:19
    41:1 44:4,4,18
young 21:19 22:7

                1
1 10:13,15,20 11:1
    11:6,23 12:17,21
    13:5,10,24 15:7
    17:8 18:8 19:7
    20:6 23:18 24:3
    24:20 34:18 36:6

40:16
10 5:4 29:17 44:4
10:08 1:6
105 1:11
11:09 47:5
12:10 47:5
12:13 48:16
13 21:14
13-cv-06750 4:24
14 16:7
16 1:6
18 9:21 21:14
1800 1:24
1801 1:24
19010 1:15
19103 1:24
1993 18:13
1995 18:11,13,19
1998 17:23 18:7
    41:22

                2
2 10:14 11:13 35:12
20 2:3,7 5:2 7:23
20001 2:4
2011 18:12,22,23
2012 18:10,21
2013 18:21
2014 1:6 5:2,4
    13:11 49:15
202 2:4,8
20530 2:8
22 49:15
22314 1:12
2445788 13:12
25 8:8,13,17,25 9:2
    10:5 44:4
26 3:5

                3
3 15:8
30 46:20 47:2
30-minute 46:25
305 1:11
353-3098 2:4
37 21:11

| | |
|---|---|
| **4** | **925** 1:15 |
| **4** 3:3 | **925(c)** 30:2 |
| **41-year-old** 16:3 | |
| **42** 3:4 | |
| **46** 21:21 22:3,4 | |
| **47** 3:3 | |
| | |
| **5** | |
| **5:13-cv-06750-J...** 1:3 | |
| **514-3481** 2:8 | |
| **520-6181** 1:16 | |
| | |
| **6** | |
| **6** 15:9 | |
| **610** 1:16 | |
| **6105(d)** 44:14 | |
| **6122** 2:3 | |
| | |
| **7** | |
| **703** 1:12 | |
| **7220** 2:7 | |
| **73** 21:17 22:13 | |
| **777-6690** 1:25 | |
| | |
| **8** | |
| **8:45** 4:14 | |
| **835-9085** 1:12 | |
| **888** 1:25 | |
| | |
| **9** | |
| **9** 3:4 | |
| **921(a)(20)** 35:20 36:10 | |
| **921(a)(20)'s** 37:7 | |
| **921(a)(20)(B)** 36:16 | |
| **921(a)(20)(B)(2)** 37:12,16 | |
| **922(g)** 20:3 30:11 39:4 | |
| **922(g)(1)** 9:21 10:10,16 12:25 17:25 22:20 23:8 25:13 26:16,20,21 27:7 34:9 44:2 | |
| **922(g)(1)'s** 36:20 | |
| **922(g)(4)** 38:15 | |