IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

DANIEL BINDERUP,                    )
                                    )    Civil Action
            Plaintiff               )    No. 13-cv-06750
                                    )
      vs.                           )
                                    )
ERIC H. HOLDER, JR.,                )
  Attorney General of the           )
  United States; and                )
B. TODD JONES,                      )
  Director of the Bureau of         )
  Alcohol, Tobacco, Firearms        )
  and Explosives,                   )
                                    )
            Defendants              )

                    *    *    *

APPEARANCES:

      ALAN GURA, ESQUIRE
      DOUGLAS T. GOULD, ESQUIRE

            *On Behalf of Plaintiff*

      STUART F. DELERY, ESQUIRE
            Assistant Attorney General
      DIANNE KELLEHER, ESQUIRE
            Assistant Branch Director, United States Department of
            Justice
      DANIEL RIESS, ESQUIRE,
            Trial Attorney, United States Department of Justice
      LESLEY FARBY, ESQUIRE,
            Trial Attorney, United States Department of Justice
      ZANE DAVID MEMEGER, ESQUIRE
            United States Attorney
      ANNETTA FOSTER GIVHAN, ESQUIRE
            Assistant United States Attorney

            *On Behalf of Defendants*

                    *    *    *

                **O P I N I O N**

## TABLE OF CONTENTS

SUMMARY OF DECISION......................................... 3

JURISDICTION................................................ 6

VENUE....................................................... 6

PROCEDURAL HISTORY.......................................... 6

STANDARD OF REVIEW.......................................... 9

FACTS...................................................... 11

    Parties ............................................... 11

    Facts Underlying Plaintiff's Claims ................... 12

CONTENTIONS OF THE PARTIES................................. 14

DISCUSSION................................................. 15

    Plaintiff's Statutory Claim (Count One) ............... 15

    "Punishable by"....................................... 16

    Rule of Lenity........................................ 26

    Doctrine of Constitutional Avoidance.................. 28

    Plaintiff's Constitutional Claim (Count Two) ......... 34

    Applicable Framework.................................. 34

        Contentions of the Parties........................ 34

        Supreme Court Precedent: Heller & McDonald.......... 36

        Third Circuit Precedent ............................ 39

            Marzzarella................................... 40

            Barton........................................ 45

            Dutton........................................ 51

        The Barton Framework Controls...................... 55

    Analysis of As-Applied Challenge...................... 58

        No History of Violence ............................ 58

        Not a Statutory Rapist ............................ 65

    Defense Exhibits...................................... 72

CONCLUSION................................................. 84

This matter is before the court on Defendants' Motion to Dismiss or for Summary Judgment filed February 20, 2014 ("Defendants' Motion"), and Plaintiff's Motion for Summary Judgment filed March 10, 2014 ("Plaintiff's Motion").

For the reasons expressed below, I grant Defendants' Motion in part, dismiss it as moot in part, and deny it in part. I grant Plaintiff's Motion in part and deny it in part. I grant summary judgment in favor of defendants and against plaintiff on Count One of the Complaint filed November 21, 2013. I grant summary judgment in favor of plaintiff and against defendants on Count Two.

## SUMMARY OF DECISION

Plaintiff Daniel Binderup brings this federal civil rights action pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202, against defendant Eric H. Holder, Jr., Attorney General of the United States, and defendant B. Todd Jones, Director of the Bureau of Alcohol, Tobacco, Firearms and Explosives.

In 1998, plaintiff pled guilty to one count of Corruption of minors in violation of section 6301 of the Pennsylvania Crimes Code, 18 Pa.C.S.A. § 6301. Under Pennsylvania law, Corruption of minors is classified as a misdemeanor of the first degree. As such, it is punishable by a

term of imprisonment of not more than five years.  18 Pa.C.S.A.
§§ 106, and 6301.

Under federal criminal law, it is a crime for a person
"who has been convicted in any court of[] a crime punishable by
imprisonment for a term exceeding one year" to, among other
things, "possess in or affecting commerce, any firearm or
ammunition; or to receive any firearm or ammunition which has
been shipped or transported in interstate or foreign commerce."
18 U.S.C. § 922(g)(1).[1]  This is colloquially referred to as the
federal "felon-in-possession" offense.[2]

In Count One of his Complaint, plaintiff seeks
declaratory and injunctive relief barring defendants from
enforcing 18 U.S.C. § 922(g)(1) against him because his prior
Pennsylvania state conviction does not fall within the scope of
§ 922(g)(1)'s prohibition.

---

[1]       Whenever "§ 922(g)(1)" and "§ 921(a)(20)(B)" appear in this
Opinion, such reference is always to Title 18 of the United States Code.

[2]       Stinson v. United States, 508 U.S. 36, 39, 113 S.Ct. 1913, 1915,
123 L.Ed.2d 598, 604 (1993).

          Black's Law Dictionary defines the term "felon" as "[a] person
who has been convicted of a felony" and, in turn, defines the term "felony"
as "[a] serious crime [usually] punishable by imprisonment for more than one
year or by death."  BLACK'S LAW DICTIONARY, at 693-694 (9th ed. 2009).

          That treatment is consistent with the Supreme Court's use of the
term "felon-in-possession offense" to describe § 922(g)(1) in that
§ 922(g)(1) applies to any person "who has been convicted in any court of, a
crime punishable by imprisonment for a term exceeding one year" -- that is,
it applies to felons, as that term is commonly understood.  18 U.S.C.
§ 922(g)(1).

Because, as discussed further below, plaintiff was convicted of an offense "punishable by" -- that is, subject to a maximum possible penalty of -- five years imprisonment, he is subject to § 922(g)(1)'s prohibition notwithstanding the fact that Pennsylvania law labels Corruption of minors as a misdemeanor.  Accordingly, I grant Defendants' Motion, deny Plaintiff's Motion, and enter summary judgment in favor of defendants and against plaintiff on the statutory claim in Count One.  Therefore, I dismiss Defendants' Motion as moot to the extent it seeks to dismiss Count One.

In Count Two of his Complaint, plaintiff seeks a declaration that, as applied to him,[3] § 922(g)(1) violates the Second Amendment to the United States Constitution and, as in Count One, injunctive relief barring defendants from enforcing § 922(g)(1) against plaintiff.

As further discussed below, plaintiff distinguishes himself from those individuals traditionally disarmed as the result of prior criminal conduct and demonstrates that he poses

---

[3]        There are, generally, two types of challenges which a party may raise which attack the constitutionality of a statute: facial challenges and as-applied challenges.

In order to succeed on a facial challenge to the constitutionality of a particular statutory provision, the challenging party must demonstrate that there is no set of circumstances under which the statutory provision could be applied without violating the constitution.  See United States v. Mitchell, 652 F.3d 387, 415 (3d Cir. 2011).

By contrast, a party seeking to prevail on an as-applied challenge must demonstrate that, under the specific circumstances presented in the case, he was deprived of a constitutional right.  Id. at 406.

no greater threat of future violent criminal activity than the average law-abiding citizen.  Therefore, he prevails on his as-applied challenges to § 922(g)(1) on Second-Amendment grounds under the framework for such claims set forth by the United States Court of Appeals for the Third Circuit in <u>United States v. Barton</u>, 633 F.3d 168 (3d Cir. 2011).

Accordingly, I grant Plaintiff's Motion, deny Defendants' Motion, and enter summary judgment in favor of defendants and against plaintiff on the constitutional claim in Count Two.

## JURISDICTION

This court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 because plaintiff's claims each present a substantial federal question.

## VENUE

Venue is proper pursuant to 28 U.S.C. § 1391(e)(1)(B) and (C) because a substantial part of the events or omissions giving rise to the claim occurred, and plaintiff resides, in Lancaster County, Pennsylvania, which located within this judicial district.  28 U.S.C. §§ 118, 1391.

## PROCEDURAL HISTORY

Plaintiff initiated this federal civil-rights declaratory action by filing his Complaint on November 21, 2013.

Defendants' Motion to Dismiss or for Summary Judgment was filed February 20, 2014.[4]

On March 10, 2014 Plaintiff's Motion,[5] and Plaintiff's Memorandum of Points and Authorities in Opposition to

---

[4]     Defendants' Motion was filed together with

(A)     Memorandum in Support of Defendants' Motion to Dismiss or for Summary Judgment ("Defendants' Memorandum in Support");

(B)     Exhibit 1 to Defendants' Motion, Police Criminal Complaint filed September 30, 1997 in Commonwealth of Pennsylvania v. Binderup, Crim. No. 4127-1997 (C.C.P., Lanc. Co.) (redacted);

(C)     Exhibit 2 to Defendants' Motion, Sentencing Order and Guilty Plea each dated July 15, 1998, Commonwealth of Pennsylvania v. Binderup, Crim. No. 4127-1997 (C.C.P., Lanc. Co.)(redacted);

(D)     Exhibit 3 to Defendants' Motion, United States Department of Justice, Bureau of Justice Statistics Fact Sheet: Profile of Nonviolent Offenders Exiting State Prisons (Oct. 2004)(hereinafter, "D.O.J., B.J.S. Fact Sheet");

(E)     Exhibit 4 to Defendants' Motion, Mona A. Wright, et al., Effectiveness of Denial of Handgun Purchase to Persons Believed to Be at High Risk for Firearm Violence, 89 AM. J. OF PUBLIC HEALTH 88 (Jan. 1999) (hereinafter, "Wright et al., Effectiveness of Denial");

(F)     Exhibit 5 to Defendants' Motion, Robert Miller, Preventing Adolescent Pregnancy and Associated Risks, 41 CAN. FAM. PHYSICIAN 1525 (Sept. 1995);

(G)     Exhibit 6 to Defendants' Motion, R. Rivera, et al., Contraception for Adolescents: Social, Clinical and Service Delivery Considerations, 75 INT'L J. GYNEC. & OBSTET. 149 (2001);

(H)     Exhibit 7 to Defendants' Motion, Marcia L. Shew, et al., Interval Between Menarche and First Sexual Intercourse, Related to Risk of Human Papillomavirus Infection, 125 J. PEDIATRICS 661 (Oct. 1994); and

(I)     Exhibit 8 to Defendants' Motion, Amahuaro A. Edebiri, Cervical Intraepithelial Neoplasia: The Role of Age at First Coitus in Its Etiology, 35 J. REPROD. MED. 256 (Mar. 1990).

Defendants' Motion to Dismiss or for Summary Judgment ("Plaintiff's Memorandum in Opposition"), were each filed.

On April 10, 2014, with leave of court, Defendants' Combined Opposition to Plaintiff's Motion for Summary Judgment and Reply Brief in Support of Their Motion to Dismiss or For Summary Judgment ("Defendants' Combined Opposition and Reply Brief") was filed.[6]

On June 6, 2014, plaintiff filed a Notice of Supplemental Authority concerning the Opinion of the United States Supreme Court issued on June 2, 2014 in Bond v. United States, 134 S.Ct. 2077, 189 L.Ed.2d 1 (U.S. 2014).

Oral argument on the within motions was held before me on June 16, 2014.  At the close of oral argument, I took this matter under advisement.  Hence this Opinion.

---

[5]      Plaintiff's Motion was filed together with

    (A)   Memorandum of Points and Authorities in Support of Plaintiff's Motion for Summary Judgment ("Plaintiff's Memorandum in Support"); and

    (B)   Declaration of Daniel Binderup executed March 7, 2014, together with

        (i)   Exhibit A to Declaration of Daniel Binderup, Criminal Docket Entry, Commonwealth of Pennsylvania v. Daniel Richard Binderup, Docket Number CP-36-CR-0004127-1997 (C.C.P., Lanc. Co.); and

       (ii)   Exhibit B to Declaration of Daniel Binderup, Order dated and filed June 1, 2009 in Daniel Binderup v. Restoration of Firearm Rights, Docket Number MD 314-2009 (C.C.P., Lanc. Co.).

[6]      Defendants' Combined Opposition and Reply Brief was filed together with Exhibit 1 thereto, a copy of John E. Wetzel, Secretary, Pennsylvania Department of Corrections, Recidivism Report 2013 (released February 8, 2013)("Pa.D.O.C. Recidivism Report 2013").

## **STANDARD OF REVIEW**

Rule 56(a) of the Federal Rules of Civil Procedure permits a party to seek summary judgment with respect to a claim or defense, or part of a claim or defense.  Rule 56(a) provides, in pertinent part, that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed.R.Civ.P. 56(a); <u>National Association for the Advancement of Colored People "NAACP" v. North Hudson Regional Fire & Rescue</u>, 665 F.3d 464, 475 (3d Cir. 2012).

For a fact to be considered material, it "must have the potential to alter the outcome of the case."  <u>Id.</u> (citing <u>Kaucher v. County of Bucks</u>, 455 F.3d 418, 423 (3d Cir. 2006)).  Disputes concerning facts which are irrelevant or unnecessary do not preclude the district court from granting summary judgment.  <u>Id.</u>

Where a party asserts that a particular fact is, or cannot be, genuinely disputed, the party must provide support for its assertion.  Fed.R.Civ.P. 56(c)(1).  Rule 56(c)(1) provides that a party may support its factual assertions by

> (A) citing particular parts of materials in the record, including depositions, documents, electronically stored information,

>       affidavits or declarations, stipulations
>       (including those made for purposes of the
>       motion only), admissions, interrogatory
>       answers, or other materials; or
>
>   (B) showing that the materials cited do not
>       establish the absence or presence of a
>       genuine dispute, or that an adverse party
>       cannot produce admissible evidence to
>       support the fact.

Fed.R.Civ.P. 56(c)(1).

When considering a motion for summary judgment, the district court must view the facts and record evidence presented "in the light most favorable to the non[-]moving party."  North Hudson, 665 F.3d at 475 (quoting Scott v. Harris, 550 U.S. 372, 380, 127 S.Ct. 1769, 167 L.Ed.2d 686 (2007)).

If the moving party shows that there is no genuine issue of fact for trial, "the non-moving party then bears the burden of identifying evidence that creates a genuine dispute regarding material facts."  Id. (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)).

Where a defendant seeks summary judgment, the plaintiff cannot avert summary judgment with speculation, or by resting on the allegations in his pleadings, but rather he must present competent evidence from which a jury could reasonably find in his favor.  Ridgewood Board of Education v. N.E. for

M.E., 172 F.3d 238, 252 (3d Cir 1999); Woods v. Bentsen,
889 F.Supp. 179, 184 (E.D.Pa. 1995)(Reed, J.).

"Ultimately, [w]here the record taken as a whole could
not lead a rational trier of fact to find for the non-moving
party, there is no genuine issue for trial." North Hudson,
665 F.3d at 475 (quoting Matsushita Electric Industries Co. v.
Zenith Radio Corp., 475 U.S. 574, 587, 106 S.Ct. 1348,
89 L.Ed.2d 538 (1986))(internal quotations omitted and
alteration in original).

## FACTS

Upon consideration of the pleadings, record papers,
exhibits, and declarations, the following facts are undisputed.

### Parties

Plaintiff Daniel Binderup resides in Manheim,
Lancaster County, Pennsylvania.  He is over the age of 21.  He
is not presently under indictment.  He has never been convicted
of a crime of domestic violence (felony or misdemeanor).  He is
not an unlawful user of, or addicted to, any controlled
substance.[7]

He has never been discharged from the armed forces
under dishonorable conditions.  He has never renounced his
United States citizenship.  He has never been subject to a
restraining order related to an intimate partner.  He has never

---

[7]        Declaration of Daniel Binderup at ¶¶ 1 and 3.

been adjudicated a mental defective or committed to a mental institution.[8]

Defendant Eric H. Holder, Jr. is the Attorney General of the United States.  Defendant B. Todd Jones is the Director of the Bureau of Alcohol, Tobacco, Firearms, and Explosives within the United States Department of Justice.[9]

## Facts Underlying Plaintiff's Claims

Mr. Binderup presently intends to purchase and possess a handgun and a long gun within his own home to defend himself and his family.[10]  However, sixteen years ago, on July 15, 1998, Mr. Binderup pled guilty and was convicted in the Court of Common Pleas of Lancaster County, Pennsylvania of one count of Corruption of minors in violation of 18 Pa.C.S.A. § 6301(a).[11]

Pennsylvania classifies the offense of Mr. Binderup's conviction as a misdemeanor of the first degree, which is punishable by a maximum term of imprisonment of five years.  Mr. Binderup's offense of conviction did not carry a mandatory minimum term of imprisonment.  See 18 Pa.C.S.A. §§ 106(b)(6), and 6301(a).  Mr. Binderup was sentenced to, and served, a term of three years' probation.  He paid court costs and restitution,

---

[8]         Declaration of Daniel Binderup at ¶¶ 1 and 3.

[9]         Complaint at ¶¶ 2 and 3.

[10]        Declaration of Daniel Binderup at ¶ 2.

[11]        Id. at ¶ 4.

as required.  He was not sentenced to a term of imprisonment for his conviction.[12]

The charge and his conviction stemmed from a romantic affair that Mr. Binderup conducted with a seventeen-year-old employee of his bakery business.  Mr. Binderup was 41 years old at the time of the relationship.  Thus, Mr. Binderup (the employer) was 24 years older than his mistress (the employee).[13]

Mr. Binderup acknowledges that what he did was wrong. His wife forgave him and they remain married.  He currently owns and operates a plumbing business and has not been convicted of any further offenses.[14]

On June 1, 2009, the Court of Common Pleas of Lancaster County granted a petition by Mr. Binderup pursuant to 18 Pa.C.S.A. § 6105(d) to remove his disqualification from owning or possession firearms which was imposed under Pennsylvania law as the result of his 1997 conviction for Corruption of minors.[15]

Although his Pennsylvania state-law disqualification has been lifted and he desires to own and possess firearms for self-defense in his home, Mr. Binderup refrains from purchasing

---

[12]      Declaration of Daniel Binderup at ¶ 6.

[13]      Id. at ¶ 5.

[14]      Id. at ¶ 7.

[15]      Id. at ¶ 8, and Exhibit B to Declaration of Daniel Binderup.

-13-

or possessing a firearm for that purpose because he fears arrest, prosecution, and imprisonment by federal authorities under 18 U.S.C. § 922(g)(1).  Moreover, the requisite form for the purchase of a firearm asks whether the prospective purchaser has been convicted of a crime punishable by more than one year of imprisonment.  Mr. Binderup is unwilling to answer in the negative (for fear of prosecution for False statements to a federal firearms licensee).  Should he disclose his conviction on such form, all federal firearms licensees will be prohibited from selling a firearm to him.  Thus, Mr. Binderup is prevented from obtaining a firearm from a federally-licensed dealer.[16]

### CONTENTIONS OF THE PARTIES

Defendants contend that plaintiff's claims should be dismissed or summary judgment should be entered in their favor because 18 U.S.C. § 922(g)(1) applies to plaintiff, and application of that statute to plaintiff does not violate his rights under the the Second Amendment to the United States Constitution.

Plaintiff contends that he is entitled to summary judgment in his favor because § 922(g)(1) does not apply to him based upon his prior criminal conviction.  He also argues, alternatively, that § 922(g)(1), as applied to him, violates the Second Amendment.

---

[16]     Declaration of Daniel Binderup at ¶¶ 9-11.

## DISCUSSION

### Plaintiff's Statutory Claim (Count One)

As noted above, in Count One of his Complaint, plaintiff seeks declaratory and injunctive relief barring defendants from enforcing 18 U.S.C. § 922(g)(1) against him because his prior Pennsylvania state conviction for Corruption of minors in violation of 18 Pa.C.S.A. § 6301 does not fall within the scope of § 922(g)(1)'s prohibition.

As it pertains to plaintiff, § 922(g)(1) provides that

[i]t shall be unlawful for any person --

> (1) who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year;

>          *   *   *

> to...possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce.

18 U.S.C. § 922(g)(1).

The term "crime punishable by imprisonment for a term exceeding one year" is defined by the statute, in pertinent part, as follows:

> (20) The term "crime punishable by imprisonment for a term exceeding one year" *does not include --*

>          *   *   *

> (B) *any State offense classified by the laws of the State as a misdemeanor and punishable by a term of imprisonment of two years or less.*

-15-

> What constitutes a conviction of such a crime shall be
> determined in accordance with the law of the
> jurisdiction in which the proceedings were held.  Any
> conviction which has been expunged, or set aside or
> for which a person has been pardoned or has had civil
> rights restored shall not be considered a conviction
> for purposes of this chapter, unless such pardon,
> expungement, or restoration of civil rights expressly
> provides that the person may not ship, transport,
> possess, or receive firearms.

18 U.S.C. § 921(a)(20).

### **"Punishable by"**

Plaintiff claims that his prior Pennsylvania state conviction for Corruption of minors in violation of 18 Pa.C.S.A. § 6301(a) does not fall within the scope of § 922(g)(1)'s prohibition because it was for a "State offense classified by the laws of the State as a misdemeanor and punishable by a term of imprisonment of two years or less" and, therefore, is excluded from § 922(g)(1)'s prohibition by the definition set forth in § 921(a)(20)(B).

The parties agree that Pennsylvania classifies the offense of Mr. Binderup's conviction as a Misdemeanor of the first degree and that the maximum possible punishment for such an offense is not more than five years imprisonment.  Thus, the determinative question as to Count One is whether plaintiff's prior offense of conviction is "punishable by a term of imprisonment of two years or less".  18 U.S.C. § 921(a)(20)(B).

     As explained by the United States Court of Appeals for
the Third Circuit, § 922(g)(1) does not actually require a
person to have been convicted of a felony.  Rather, the statute
requires a person to have been convicted of a crime punishable
by imprisonment for a term exceeding one year, but that crime
may not be a state-law misdemeanor which is punishable by
imprisonment for a term of two years or less.  United States v.
Schoolcraft, 879 F.3d 64, 69 (3d Cir. 1989)(citing § 922(g)(1)
and § 921(a)(20)(B)).

     Plaintiff contends that the phrase "punishable by" is
subject to multiple interpretations.[17]  Plaintiff contends that
the phrase "punishable by" can, and should, be interpreted to
mean "capable of being punished [by]".[18]  As described further
below, the interpretation of the phrase "punishable by" as used
in § 922(g)(1) and § 921(a)(20) which has been applied by the
courts takes "punishable by" to mean "subject to a maximum
possible penalty of".

     The Schoolcraft case involved a direct appeal from
defendant Schoolcraft's conviction under § 922(g)(1).  The prior
conviction underlying that federal § 922(g)(1) charge was a
Pennsylvania state-court conviction for Robbery.  See
Schoolcraft, 879 F.3d at 66.  Under Pennsylvania law, the lowest

---

[17]          Plaintiff's Memorandum in Support at page 8.

[18]          Id. at page 9.

classification for Robbery is as a felony of the third degree. 18 Pa.C.S.A. § 3701.  Third-degree felonies under Pennsylvania law are punishable by a term of imprisonment of not more than seven years.  18 Pa.C.S.A. §§ 106, 1103.

In Schoolcraft, the Third Circuit rejected defendant's insufficient-evidence challenge to his conviction, which challenge was based on the argument that the government failed to prove at trial that he had a prior conviction which fell within § 922(g)(1)'s prohibition.  Schoolcraft, 879 F.3d at 69.

In holding that the government provided sufficient evidence of defendant's guilt under § 922(g)(1), the Third Circuit concluded that defendant's prior Pennsylvania conviction for Robbery was a qualifying predicate conviction and that the government provided sufficient evidence defendant's guilt under § 922(g)(1).  Schoolcraft, 879 F.3d at 70.  Specifically, Third Circuit explained that

> [t]he robbery Schoolcraft had been previously convicted of could not have been a misdemeanor, *nor could it have been "punishable by a term of imprisonment of two years or less."*  We have reviewed the relevant Pennsylvania statutes, which show the crime of robbery as a felony and the *maximum sentences* ranging from seven to twenty years....  In sum, the testimony established that Schoolcraft had been convicted of a crime punishable for a term exceeding one year and that the crime was not a misdemeanor subject to a sentence of two years or less.

Id. (citing 18 Pa.C.S.A. §§ 1103, 3701)(emphasis added and internal citations omitted).

-18-

In other words, defendant Schoolcraft was not saved by
§ 921(a)(20)(B) -- the same definitional exclusion relied on by
plaintiff Binderup -- both because Robbery (unlike Corruption of
minors) is never classified as a misdemeanor under Pennsylvania
law, and because the lowest maximum possible sentence for
Robbery (that is, for Robbery as a third-degree felony) is a
term of imprisonment of not more than seven years.

In sum, the Third Circuit in Schoolcraft looked to the
maximum permissible sentence to determine whether defendant
Schoolcraft's prior Robbery conviction was for an offense
"punishable by a term of imprisonment of two years or less" for
purposes of the § 921(a)(20)(B) exclusion.  879 F.3d at 69-70.

Subsequent to the Schoolcraft case, the Third Circuit,
in United States v. Essig, 10 F.3d 968 (3d Cir. 1993), rejected
the argument raised that the term "punishable" in § 921(a)(20)
"means *actually* 'punished' by a year or more of incarceration."
Essig, 10 F.3d at 972 (emphasis added).[19]  There, the Third
Circuit stated that the United States Supreme Court "has clearly
established that *it is the potential sentence that controls* and
not the one actually imposed...."  Id. At 973 (citing Dickerson

---

[19]        In Essig, defendant's counsel on collateral appeal conceded that
"' a crime punishable by imprisonment for a term exceeding one year' is a
crime for which the *maximum permissible sentence*, rather than the time
actually served, is more than one year under currently controlling caselaw."
Essig, 10 F.3d at 972.

v. New Banner Institute, Inc., 460 U.S. 103, 113, 103 S.Ct. 986, 992, 74 L.Ed.2d 845 (1983))(emphasis added).[20]

  The Opinion of the United States Supreme Court in Logan v. United States, 552 U.S. 23, 128 S.Ct. 475, 169 L.Ed.2d 432 (2007) further confirms that the phrase "punishable by" in § 921(a)(20)(B) is to be interpreted by reference to the maximum possible punishment for the underlying offense.

  In Logan, defendant-petitioner James D. Logan pled guilty to one count of possession of a firearm in violation of § 922(g)(1).  Because of his criminal record, which included three Minnesota state-law misdemeanor convictions, Mr. Logan was subject to (and the district court imposed) a mandatory minimum fifteen-year term of imprisonment under the Armed Career Criminal Act, 18 U.S.C. § 924(e)(1)(hereinafter "ACCA").[21]  Logan, 552 U.S. at 26, 128 S.Ct. at 478, 169 L.Ed.2d at 437.

---

[20]  Indeed, here the parties are in agreement that it is not the actual sentence imposed which is relevant to the "punishable by" inquiry under §§ 922(g)(1) and 921(a)(20).  They are in agreement that it is the potential punishment for the prior offense that matters.  Their disagreement is whether the relevant potential punishment is the "maximum permissible " punishment (the position advanced by defendants) or the "whole range of permissible punishments" (the position advance by plaintiff).

[21]  The Supreme Court explained the ACCA in Logan:

    Federal law generally prohibits the possession of a firearm by a person convicted of "a crime punishable by imprison- ment for a term exceeding one year."  18 U.S.C. § 922(g)(1). Ordinarily, the maximum felon-in-possession sentence is ten years.  See § 924(a)(2).  If the offender's prior criminal record

(Footnote 21 continued):

Mr. Logan appealed the district court's application of the ACCA sentence enhancement, contending that none of his Minnesota misdemeanor convictions qualified as a predicate "violent felony", because those convictions did not cause the loss of his civil rights. Logan, 552 U.S. at 29, 128 S.Ct. at 480-481, 169 L.Ed.2d at 439. The Supreme Court upheld the application of the ACCA sentence enhancement to Mr. Logan based upon his three prior Minnesota misdemeanor convictions.

The statutory definition provided by § 921(a)(20) of the term "crime punishable by imprisonment for a term exceeding one year" applies to both § 922(g)(1)(the substantive felon-in-possession offense) and § 924(e)(the ACCA sentencing enhancement). Thus, the misdemeanor exception at issue here is the same misdemeanor exception discussed by the Supreme Court in Logan.

The sentence enhancement provided for by the ACCA applies only to certain predicate offenses, including "violent felon[ies]". See 18 U.S.C. § 924(e)(2)(B). As the Supreme Court in Logan explained:

---

(Continuation of footnote 21):

> includes at least three convictions for "violent felon[ies]" or "serious drug offense[s]," however, the maximum sentence increases to life, and ACCA mandates a minimum term of 15 years. § 924(e)(1)(2000 ed., Supp. V).

Logan, 552 U.S. at 27, 128 S.Ct. at 479, 169 L.Ed.2d at 437.

> Congress defined the term "violent felony" to include specified crimes "punishable by imprisonment for a term exceeding one year." § 924(e)(2)(B)(2000 ed.). *An offense classified by a State as a misdemeanor*, however, *may qualify* as a "violent felony" for ACCA-enhancement purposes (or *as a predicate for a felon-in-possession conviction under § 922(g)*) only *if the offense is punishable by more than two years in prison. § 921(a)(20)(B).*

Logan, 552 U.S. at 27, 128 S.Ct. at 479, 169 L.Ed.2d at 437-438 (emphasis added).

The Court further stated that § 921(a)(20)(B) "places within ACCA's reach state misdemeanor convictions punishable by more than two years imprisonment" and "[a]n offender would fall within ACCA's reach if his three prior convictions carried potential prison terms of over two years...." Logan, 552 U.S. at 34-35, 128 S.Ct. at 483, 169 L.Ed.2d at 442.

Moreover, the Court in Logan noted that Minnesota state law had subsequently been amended to reduce the maximum term of imprisonment for misdemeanors to a maximum of two years and "thus [Minnesota] no longer has any misdemeanors that qualify as ACCA predicates" -- that is, all Minnesota misdemeanors fall within the misdemeanor exception because none is subject to a maximum term of imprisonment of greater than two years. Logan, 552 U.S. at 29, 128 S.Ct. at 483, 169 L.Ed.2d at 442.

The Opinion of the United States Supreme Court in Logan confirms what was established by reading the Opinions of

the Third Circuit in Schoolcraft and Essig together.  Namely,
that the phrase "punishable by" in § 921(a)(20)(B) concerns the
maximum potential punishment for the state-law misdemeanor
offenses and means, more specifically, "subject to a maximum
possible punishment of".

        Most recently -- and subsequent to the United States
Supreme Court decision in District of Columbia v. Heller,
554 U.S. 570, 128 S.Ct. 2783, 171 L.Ed.2d 637 (2008) -- the
issue of whether a Pennsylvania first-degree misdemeanor
conviction qualified as a predicate prior conviction to
disqualify an individual from lawfully possessing a firearm
under § 922(g)(1) was addressed by my colleague, Senior United
States District Judge Berle M. Schiller and the Third Circuit on
appeal.  Dutton v. Commonwealth of Pennsylvania,
2012 WL 3020651, at *1 (E.D.Pa. July 23, 2012)(Schiller, S.J.)
("Dutton I"), aff'd 503 Fed.Appx. 125 (3d Cir. 2012)("Dutton
II").

        There, plaintiff Kelly Dutton pro se brought claims
against the Commonwealth of Pennsylvania, the Pennsylvania State
Police, and the Attorney General of Pennsylvania under 42 U.S.C.
§ 1983 alleging that those defendants were unlawfully
prohibiting him from purchasing a firearm.  Dutton I,
2012 WL 3020651, at *1.

Plaintiff Dutton had two prior Pennsylvania state-law convictions for first-degree misdemeanors, which are punishable by a maximum term of imprisonment of five years.  Dutton I, 2012 WL 3020651, at *1 (citing 18 Pa.C.S.A. § 106(b)(6)).  Plaintiff Dutton contended that § 922(g)(1) applies only to felonies and misdemeanor crimes of domestic violence and that he was not subject to § 922(g)(1)'s prohibition because his misdemeanor crimes were not domestic violence offenses.  Dutton I, 2012 WL 3020651, at *1.

Judge Schiller concluded that plaintiff Dutton's prior Pennsylvania convictions for first-degree misdemeanors fell within § 922(g)(1)'s prohibition and, thus, precluded him from obtaining a firearm permit.  Accordingly, Judge Schiller granted defendants' motion to dismiss Mr. Dutton's claims.

In reaching that conclusion, Judge Schiller reasoned that a crime classified as a first-degree misdemeanor under Pennsylvania law carries a maximum penalty of five years imprisonment and, accordingly, "a Pennsylvania first-degree misdemeanor conviction does not satisfy the Section 921(a)(20) exception to Section 922(g)(1)...."  Dutton I, 2012 WL 3020651, at *3.  Adoption of the interpretation of "punishable by" which defendants advance here is implicit in Judge Schiller's conclusion in Dutton I.

-24-

Plaintiff Dutton appealed.  By per curiam Opinion, the
United States Court of Appeals for the Third Circuit summarily
affirmed Judge Schiller's decision to grant defendants' motion
and dismiss plaintiff's claims.  Dutton II, 503 Fed.Appx.
at 126.  In doing so, the Third Circuit explained that
§ 922(g)(1)

> prohibits individuals who have been convicted of "a
> crime punishable by imprisonment for a term exceeding
> one year" from possessing a firearm.  However, this
> term specifically does not include "any State offense
> classified by the laws of the State as a misdemeanor
> and punishable by a term of imprisonment of two years
> or less."  18 U.S.C. § 921(a)(20)(B).  While both of
> Dutton's previous convictions are classified as first
> degree misdemeanors in Pennsylvania,..., first degree
> misdemeanors carry a *maximum penalty* of five years'
> incarceration, 18 Pa.[C.S.A.] § 106(b)(6).
> Accordingly, *a conviction for a first degree*
> *misdemeanor in Pennsylvania does not satisfy the*
> *exception created in 18 U.S.C. § 921(a)(20)*....

Dutton II, 503 Fed.Appx. at 127 (internal citations omitted and
emphasis added).  As with the district court's decision there,
the Third Circuit in Dutton II -- albeit in a non-precedential
Opinion -- implicitly adopted the interpretation of "punishable
by" which is advanced by defendants here.

The cases discussed above demonstrate that the phrase
"punishable by", as utilized in § 921(a)(20) and § 922(g)(1),
concerns the maximum,(see Schoolcraft, supra), potential, (see
Essig, supra), term of imprisonment applicable to a particular
prior state-law conviction.  Judge Schiller's Opinion in

Dutton I, and the summary affirmance thereof by the Third Circuit in Dutton II confirms the propriety of looking to the maximum possible term of imprisonment for an offense to determine whether that offense is "punishable by imprisonment for a term exceeding one year" under § 922(g)(1) or "punishable by a term of imprisonment of two years or less" under § 921(a)(20)(B).  Dutton II, 503 Fed.Appx. at 127; Dutton I, 2012 WL 3020651, at *3.

Here, plaintiff's prior conviction for Corruption of minors is a first-degree misdemeanor under Pennsylvania law and, as such, is punishable by a maximum possible term of five years imprisonment.  Accordingly, based upon the case law discussed above, plaintiff's prior conviction falls within § 922(g)(1)'s prohibition and is not excluded therefrom by § 921(a)(20)(B).  Therefore, I deny Plaintiff's Motion, grant Defendants' Motion, and enter summary judgment in favor of defendants and against plaintiff on plaintiff's claim in Count One of the Complaint.

### Rule of Lenity

In support of his claim in Count One, plaintiff contends that the rule of lenity requires the adoption of his preferred "capable of" interpretation of the statutory phrase "punishable by" in § 922(g)(1) and § 921(a)(20).[22]  Defendants

---

[22]     Plaintiff's Memorandum in Support at pages 7-8.

contend that the rule of lenity is inapplicable here because the court is not faced with a grievous statutory ambiguity.[23]

The Third Circuit has described the operation of the rule of lenity as follows:

> In interpreting an ambiguous criminal statute, the court should resolve the ambiguity in the defendant's favor.  The rule of lenity applies in those situations in which a reasonable doubt persists about a statute's intended scope even after resort to the language and structure, legislative history, and motivating policies of the statute.  *The rule is not properly invoked simply because a statute requires consideration and interpretation to confirm its meaning.  It applies only if there is* such *grievous ambiguity* or uncertainty in a statute that, after seizing everything from which aid can be derived, the Court can make no more than a guess as to what Congress intended.

United States v. Kouevi, 698 F.3d 126, 138 (3d Cir. 2012) (quoting United States v. Doe, 564 F.3d 305, 315 (3d Cir. 2009))(emphasis added).

While plaintiff posits an alternative interpretation of the phrase "punishable by" in § 922(g)(1) and § 921(a)(20), "[t]he simple existence of some statutory ambiguity...is not sufficient to warrant application of the rule of lenity, for most statutes are ambiguous to some degree."  Kouevi, 698 F.3d at 138 (quoting Dean v. United States, 556 U.S. 568, 577, 129 S.Ct. 1849, 173 L.Ed.2d 785 (2009)).

---

[23]     Defendants' Combined Opposition and Reply Brief at pages 6-7.

Given the consistent interpretation and application of "punishable by" with reference to the maximum possible punishment for the offense of conviction, I conclude that the phrase "punishable by" is not so grievously ambiguous so as to warrant application of the rule of lenity to support adoption of plaintiff's preferred interpretation of that phrase.

### Doctrine of Constitutional Avoidance

Additionally, plaintiff urges the court to adopt his proposed interpretation of the phrase "punishable by" based on the doctrine of constitutional avoidance.[24]

Specifically, plaintiff contends that if his "capable of" interpretation of the phrase "punishable by" is rejected in favor of the "subject to a maximum possible punishment of" interpretation -- that is, in favor of the interpretation which has been applied uniformly to date by courts interpreting the § 922(g)(1) prohibition and the § 921(a)(20)(B) misdemeanor exception -- then the § 922(g)(1) prohibition will be applied to plaintiff and others like him who have been convicted of non-violent state-law misdemeanor offenses with a maximum possible punishment greater than two years imprisonment but who nonetheless could have (and may well have) been sentenced to a term of imprisonment of less than two years or even a non-custodial sentence.

---

[24] Plaintiff's Memorandum in Support at pages 13-15.

Moreover, plaintiff contends that he and other individuals convicted of non-violent state-law misdemeanors are at low risk of recidivism, pose no greater threat to society than a typical law-abiding citizen, and will therefore be able to present serious as-applied post-Heller Second Amendment challenges to § 922(g)(1).[25]  Because of the potential for such as-applied challenges to § 922(g)(1), plaintiff contends that the doctrine of constitutional avoidance compels the court to adopt his "capable of" interpretation of the phrase "punishable by".[26]

Defendant contends that the doctrine of constitutional avoidance does not compel adoption of plaintiff's proposed interpretation of "punishable by" because application of § 922(g)(1)'s prohibition to plaintiff creates no serious constitutional question to be avoided.[27]

"[W]here a statute is susceptible of two constructions, by one of which grave and doubtful constitutional questions arise and by the other of which such questions are avoided, our duty is to adopt the latter." Jones v. United States, 529 U.S. 848, 120 S.Ct. 1904, 146 L.Ed.2d 902 (2000) (quoting United States ex rel. Attorney General v. Delaware &

---

[25]     See Plaintiff's Memorandum in Support at page 15.

[26]     Id.

[27]     Defendants Combined Opposition and Reply Brief at page 7.

Hudson Co., 213 U.S. 366, 408, 53 L.Ed. 836, 29 S.Ct. 527
(1909)).

> The Third Circuit has explained that
>
> [t]he doctrine of constitutional avoidance applies
> "[w]here an otherwise acceptable construction of a
> statute would raise serious constitutional problems."
> Edward D. Debartolo Corp. v. Florida Gulf Coast
> Building and Construction Trades Council,
> 485 U.S. 568, 575, 108 S.Ct. 1392, 99 L.Ed.2d 645
> (1988).  In such instances, "the Court will construe
> the statute to avoid such problems unless such
> construction is plainly contrary to the intent of
> Congress."  Id.  *Before this canon of interpretation
> may be used, there must exist a doubt as to the
> meaning of the statute*.

United States v. Grier, 475 F.3d 556, 567 n.7 (3d Cir. 2007)
(emphasis added).

Here, although plaintiff disagrees with the case law
interpreting the phrase "punishable by" as used in § 922(g)(1)
and § 921(a)(20)(B) and posits an alternative interpretation of
that phrase, the case law interpreting and applying the phrase
"punishable by" in those statutory provisions leaves no doubt
that the meaning of the phrase "punishable by" concerns the
maximum possible punishment for a particular offense, and does
not concern the full range of conceivable punishments
permissible for that offense.

Accordingly, the doctrine of constitutional avoidance
does not mandate adoption of plaintiff's proposed interpretation
of "punishable by" which would, in turn, place plaintiff's

underlying Pennsylvania first-degree misdemeanor conviction for

Corruption of minors conviction within the misdemeanor exception

created by § 921(a)(20)(B) to § 922(g)(1)'s prohibition.

I also note that, on June 6, 2014, in advance of the

June 16, 2014 oral argument on the within motions, plaintiff

filed a Notice of Supplemental Authority concerning the Opinion

of the United States Supreme Court issued on June 2, 2014 in

Bond v. United States, 134 S.Ct. 2077, 189 L.Ed.2d 1 (U.S.

2014).

Plaintiff contends that the Bond case[28] provides

further support for plaintiff's proposed interpretation of

---

[28]     The Bond case arose in this judicial district.  Carol Anne Bond,
a microbiologist from Lansdale, Montgomery County, Pennsylvania, discovered
that her closest friend Myrlinda Haynes was pregnant.  Ms. Bond came to learn
that her husband was the father of Ms. Haynes child.  Ms. Bond sought
revenge.  Bond, 134 S.Ct. at 2085, 189 L.Ed.2d at 8-9.

        Specifically, Ms. Bond procured two chemicals online from
Amazon.com -- each of which is toxic to humans and lethal in high-enough
doses -- and went to Ms. Haynes home 24 times over 8 months where she spread
the chemicals on Ms. Haynes mailbox (she also removed some of Ms. Haynes
mail), car door, and doorknob.  The chemicals are visible to the eye and Ms.
Haynes saw the substance (and avoided touching it) on all but one occasion
when Ms. Haynes touched the substance and suffered a minor chemical burn on
her thumb.  Ms. Bond was charged with two counts of theft of mail, in
violation of 18 U.S.C. § 1708, and two counts of possessing and using a
chemical weapon, in violation of 18 U.S.C. § 229(a).  Bond, 134 S.Ct. at
2085, 189 L.Ed.2d at 8-9.

        Ms. Bond contended that the § 229 did not reach her conduct
because the statute's exception for the use of chemicals for "peaceful
purposes", see 18 U.S.C. § 229F(1)(A), (7)(A), must be understood in
contradistinction to "warlike" purposes and that her conduct (even if
reprehensible) was not warlike. Bond, 134 S.Ct. at 2086, 189 L.Ed.2d at 9-10.

        In addition to that statutory argument, Ms. Bond also raised a
constitutional argument that § 229, as applied to her conduct, is not

(Footnote 27 continued):

"punishable by" pursuant to the doctrine of constitutional avoidance.[29]

Ms. Bond, as Mr. Binderup does here, presented both a statutory claim and a constitutional claim.  And, as plaintiff notes,[30] the Supreme Court reiterated there that "it is 'a well-established principle governing the prudent exercise of this Court's jurisdiction that normally the Court will not decide a constitutional question if there is some other ground upon which to dispose of the case.'"  Bond, 134 S.Ct. at 2087, 189 L.Ed.2d at 11 (quoting Escambia County v. McMillan, 466 U.S. 48, 51, 104 S.Ct. 1577, 80 L.Ed.2d 36 (1984)(per curiam).

The Court in Bond did not rely upon this well-established principle to determine the appropriate reading of the statute and thereby answer the question presented by Ms. Bond's statutory claim -- the Court relied upon "basic principles of federalism embodied in the Constitution" to resolve the statutory question.  134 S.Ct. at 2090, 189 L.Ed.2d at 14.

---

(Continuation of footnote 27):

necessary and proper means of executing the federal government's treaty power, U.S.CONST., Art. II, § 2, cl. 2, and thereby violates the Tenth Amendment to the United States Constitution.  Bond, 134 S.Ct. at 2085-2087, 189 L.Ed.2d at 9-10.

[29]      Notice of Supplemental Authority at page 3.

[30]      Id. at page 2.

Rather, the Court relied upon that well-established principle -- the principle of not deciding constitutional questions where such a decision is not necessary to the resolution of the case -- in order to determine the sequence in which it would analyze the questions presented by Ms. Bond. 134 S.Ct. at 2087, 189 L.Ed.2d at 11.  In short, that well-established principle did not drive the outcome of the statutory question in Bond but dictated that the statutory question must be addressed first.

Here, as the Court did in Bond, I address plaintiff's statutory claim first.  That order of analysis is consistent with the maxim that a court should "not decide a constitutional question if there is some other ground upon which to dispose of the case."  Bond, 134 S.Ct. at 2087, 189 L.Ed.2d at 11 (internal quoations omitted).  Unlike Bond, however, disposition of plaintiff's statutory claim (because plaintiff does not succeed on that claim, as explained above) does not obviate the need to reach his constitutional claim.

For all of the reasons expressed above, plaintiff is subject to § 922(g)(1)'s prohibition and I enter summary judgment in favor of defendants and against plaintiff on plaintiff's statutory claim asserted in Count One of the Complaint.  Accordingly, I now turn to plaintiff's constitutional claim asserted in Count Two.

## <u>Plaintiff's Constitutional Claim (Count Two)</u>

In Count Two of his Complaint, plaintiff seeks a declaration that, as applied to him, § 922(g)(1) violates the Second Amendment to the United States Constitution and requests injunctive relief barring defendants from enforcing § 922(g)(1) against him.

### Applicable Framework

Initially, I address the issue of the appropriate framework is to be applied in resolving the question presented by plaintiff's claim in Count Two.

#### *Contentions of the Parties*

Defendants' Memorandum in Support of their motion to dismiss or for summary judgment addresses plaintiff's as-applied Second Amendment claim primarily under the means-end framework set forth by the Third Circuit in <u>United States v. Marzzarella</u>, 614 F.3d 85 (3d Cir. 2010), <u>cert.</u> <u>denied</u>, 131 S.Ct. 958, 178 L.Ed.2d 790 (U.S. 2011).[31]  Under that framework, defendants contend that plaintiff's Second Amendment claim fails because there is a reasonable fit between § 922(g)(1), as applied to plaintiff, and the government's important interest in protecting public safety and reducing crime.[32]

---

[31]        <u>See</u> Defendants' Memorandum in Support at pages 6-24.

[32]        <u>Id.</u> at page 24.

However, Defendants' Memorandum in Support also cites the Opinion of the Third Circuit in United States v. Barton, 633 F.3d 168 (3d Cir. 2011).  Defendants contend that under the framework set forth in Barton, plaintiff's as-applied Second Amendment Claim fails because he was convicted of a serious (rather than a minor) crime and because he cannot demonstrate that he is fundamentally different from persons historically excluded from Second Amendment protections.[33]

Plaintiff's Memorandum in Support of his motion for summary judgment contends that Barton provides the applicable roadmap for addressing plaintiff's as-applied Second Amendment claim.[34]  Plaintiff's Memorandum in Opposition to defendants' motion to dismiss or for summary judgment contends that the means-end framework set forth in Marzzarella does not apply to plaintiff's as-applied challenge and Barton controls.[35]

Defendants' Combined Opposition and Reply Brief reasserts their position that Marzzarella governs the Second Amendment claim, but address Barton alternatively in the event that it controls.[36]

_____

[33]    Defendants' Memorandum in Support at pages 18-19, and 24.

[34]    Id. at page 17.

[35]    Plaintiff's Memorandum in Opposition at pages 4-5.

[36]    Defendants' Combined Opposition and Reply Brief at page i.

However, at oral argument, defendants' counsel argued in opposition first under Barton and then under Marzzarella.  I inquired of defendants' counsel whether or not that order of argument reflected defendants' prediction that the Third Circuit would likely find Barton to be the governing framework appropriately applicable to plaintiff's claim in Count Two. Counsel responded, candidly, that defendants are not certain, think that Barton speaks more directly to as-applied challenges, and briefed the issue under both frameworks in an abundance of caution.[37]

For the reasons expressed below, I agree with plaintiff's position, and defendants' prediction, that the Opinion of the Third Circuit in Barton supplies the controlling framework for plaintiff's as-applied Second Amendment challenge to § 922(g)(1) in Count Two of the Complaint.

*Supreme Court Precedent: Heller & McDonald*

The Second Amendment to the United States Constitution provides: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed."  U.S. Const., amend. II.

In District of Columbia v. Heller, 554 U.S. 570, 128 S.Ct. 2783, 171 L.Ed.2d 637 (2008), the United States

---

[37]     See Transcript of Motions Hearing Before the Honorable James Knoll Gardner, United States District Judge, held June 16, 2014 ("Transcript of Motion Hearing"), at pages 45-46.

Supreme Court held that the right enshrined in the Second
Amendment is an individual (rather than collective) right which
is not conditional upon one's service in the militia.  _Heller_,
554 U.S. at 595, 128 S.Ct. at 2799, 171 L.Ed.2d at 659; _see_
_United States v. Barton_, 633 F.3d 168, 170 (3d Cir. 2011)(citing
_Heller_, _supra_).

Specifically, the _Heller_ Court held that -- while the
specific contours and substance of the right may be subject to
further refinement if and when the issue is properly before the
Court -- the Second Amendment guarantees "the right of _law-
abiding_, responsible citizens to use arms in defense of hearth
and home."  _Heller_, 554 U.S. at 635, 128 S.Ct. at 2821,
171 L.Ed.2d at 683 (emphasis added).  With respect to the
District of Columbia's "requirement that firearms _in the home_ be
rendered and kept inoperable at all times", the Court stated
that requirement "makes it impossible for citizens to use them
for the _core lawful purpose of self-defense_ and is hence
unconstitutional."  _Heller_, 554 U.S. at 630, 128 S.Ct. at 2818,
171 L.Ed.2d at 680 (emphasis added).

Subsequently, in _McDonald v. City of Chicago_,
561 U.S. 742, 130 S.Ct. 3020, 177 L.Ed.2d 894 (2010) -- where
the Court held that the Second Amendment is incorporated
pursuant to the Due Process Clause of the Fourteenth Amendment
to the United States Constitution and, thus, applies to state as

-37-

well as the federal government -- the Court explained that its earlier Opinion in <u>Heller</u> "point[ed] unmistakably" toward the conclusion that the right to keep and bear arms is fundamental to our scheme of ordered liberty and deeply rooted in this nation's history and tradition.  <u>McDonald</u>, 561 U.S. at ___, 130 S.Ct. at 3036, 117 L.Ed.2d at 914.

The Court in <u>McDonald</u> described the "central holding" of its Opinion in <u>Heller</u> as the conclusion that "the Second Amendment protects a personal right to keep and bear arms for lawful purposes, most notably for self-defense within the home." <u>McDonald</u>, 561 U.S. at ___, 130 S.Ct. at 3044, 177 L.Ed.2d at 922.

In short, the Court has held that "the Second Amendment protects the right to possess a handgun in the home for the purpose of self-defense" which "is fundamental from an American perspective".  <u>Id.</u>, 561 U.S. at ___, 130 S.Ct. at 3050, 177 L.Ed.2d at 929.

Nevertheless, in recognizing the Second Amendment as protecting an individual right to keep and bear arms -- and the core of that right being the right to keep and bear arms for the lawful purpose of defending one's hearth and home -- the Court in <u>Heller</u> stated expressly that

> *nothing in [its] opinion should be taken to cast doubt*
> *on longstanding prohibitions on the possession of*
> *firearms by felons and the mentally ill, or laws*

-38-

> forbidding the carrying of firearms in sensitive
> places such as schools and government buildings, or
> laws imposing conditions and qualifications on the
> commercial sale of arms.

554 U.S. at 626-627, 128 S.Ct. at 2816-2817, 171 L.Ed.2d. at 678
(emphasis added).

In a footnote at the end of the above-quoted sentence,
the Court stated that it identified those "*presumptively lawful*
regulatory measures only as examples" and that the "list does
not purport to be exhaustive."  Heller, 554 U.S. at 627 n.26,
128 S.Ct. at 2817, 171 L.Ed.2d. at 678 (emphasis added).

Reiterating that point in McDonald, the Court stated
that its holding in the Heller case "did not cast doubt on such
longstanding regulatory measures as 'prohibitions on the
possession of firearms by felons...,'" and "[d]espite [the]
municipal respondents' doomsday proclamations, incorporation [of
the Second Amendment to the states] does not imperil every law
regulating firearms."  McDonald, 561 U.S. at ___, 130 S.Ct. at
3047, 177 L.Ed.2d at 926.

### Third Circuit Precedent

The United States Court of Appeals for the Third
Circuit has had occasion to address claims pressed under the
Second Amendment in the wake of the Opinions of the United
States Supreme Court in Heller and McDonald.  The Third Circuit
has issued both precedential, see United States v. Marzzarella,

-39-

614 F.3d 85 (3d Cir. 2010), cert. denied, 131 S.Ct. 958,
178 L.Ed.2d 790 (U.S. 2011); United States v. Barton,
633 F.3d 168 (3d Cir. 2011), and non-precedential Opinions in
those matters.  See Dutton v. Commonwealth of Pennsylvania,
503 Fed.Appx. 125 (3d Cir. 2012)("Dutton II"), affirming
2012 WL 3020651, at *1 (E.D.Pa. July 23, 2012)(Schiller, S.J.)
("Dutton I").  Each case bears examination and I address them in
turn.

Marzzarella

Defendant Micheal Marzzarella was charged with
possession of a handgun with an obliterated serial number in
violation of 18 U.S.C. § 922(k).[38]  Mr. Marzzarella filed a
motion with the district court to dismiss the indictment
charging him with that offense because § 922(k), as applied to
him, violated his Second Amendment right to bear arms pursuant
to the United States Supreme Court's decision in Heller, supra.
Marzzarella, 614 F.3d at 88.  The district court denied the

---

[38]     That provision states:

        It shall be unlawful for any person knowingly to transport, ship,
        or receive, in interstate or foreign commerce, any firearm which
        has had the importer's or manufacturer's serial number removed,
        obliterated, or altered or to possess or receive any firearm
        which has had the importer's or manufacturer's serial number
        removed, obliterated, or altered and has, at any time, been
        shipped or transported in interstate or foreign commerce.

18 U.S.C. § 922(k).  In other words, § 922(k) prohibits possession of any
firearm which has had its serial number altered or destroyed, regardless of
where such a firearm is possessed.  See id.

motion to dismiss the indictment.[39]   Thereafter, Mr. Marzzarella entered a conditional guilty plea, reserving the right to challenge the constitutionality of § 922(k) on appeal.

On appeal, this issue presented to the Third Circuit was "whether Defendant Micheal Marzzarella's conviction under 18 U.S.C. § 922(k) for possession of a handgun with an obliterated serial number violates his Second Amendment right to keep and bear arms." Marzzarella, 614 F.3d at 87.  The court held that it did not.

The Third Circuit in Marzzarella stated that it read Heller to suggest a two-pronged approach to Second Amendment challenges. Marzzarella, 614 F.3d at 90.  Under the first prong, a court asks "whether the challenged law imposes a burden on conduct falling within the scope of the Second Amendment's guarantee." Marzzarella, 614 F.3d at 89.  "If it does not, [the] inquiry is complete" and there is no Second Amendment violation.

---

[39]    The district court denied the motion to dismiss, "holding that the Second Amendment does not protect a right to own handguns with obliterated serial numbers and that § 922(k) does not meaningfully burden the 'core' right recognized in Heller...." Marzzarella, 614 F.3d at 88.

        The district court further held that "because § 922(k) is designed to regulate the commercial sale of firearms and to prevent possession by a class of presumptively dangerous individuals, it is analogous to several longstanding limitation on the right to bear arms identified as presumptively valid in Heller", and "[f]inally,...that even if Marzzarella's possession of the Titan pistol was protected by the Second Amendment, § 922(k) would pass muster under intermediate scrutiny as a constitutionally permissible regulation of Second Amendment Rights." Marzzarella, 614 F.3d at 88.

"If it does, [the court] evaluate[s] the law under some form of means-end scrutiny." Marzzarella, 614 F.3d at 89. This means-end scrutiny is the second prong. "If the law passes muster under that [means-end] standard, it is constitutional. If it fails, it is invalid." Id. at 89. The Third Circuit spoke of application of this two-prong approach to Second Amendment challenges and did not limit its application exclusively to facial or as-applied challenges. See id.

With respect to the scope of the personal right guaranteed by the Second Amendment, the Third Circuit in Marzzarella stated:

> Heller delineates some of the boundaries of the Second Amendment right to bear arms. At its core, the Second Amendment protects the right of law-abiding citizens to possess non-dangerous weapons for self-defense in the home. And certainly, to some degree, it must protect the right of law-abiding citizens to possess firearms for other, as-yet-undefined, lawful purposes. The right is not unlimited, however, as *the Second Amendment affords no protection for* the possession of dangerous and unusual weapons, *possession by felons* and the mentally ill, and the carrying of weapons in certain sensitive places.

Id. at 92 (internal quotations and citations omitted)(emphasis added). There is no mention or suggestion anywhere in the court's Opinion that Mr. Marzzarella had any prior criminal convictions.

The Third Circuit rejected Mr. Marzzarella's argument that § 922(k) is unconstitutional because the Second Amendment

categorically protects the right to possess unmarked firearms.

Marzzarella, 614 F.3d at 93.  Despite finding that "there is no

categorical protection for unmarked firearms," the Third Circuit

nevertheless stated that "[Mr.] Marzzarella's conduct may still

fall within the Second Amendment because his possession of the

Titan pistol in his home implicates his interest in the defense

of hearth and home -- the core protection of the Second

Amendment."  Id. at 94.

Ultimately, the Third Circuit determined that it did

not need to resolve the question of whether the Second Amendment

ensured the right to possess an unmarked firearm (that is, a

handgun with an obliterated serial number) in the home because

the court concluded that § 922(k) would pass constitutional

muster under means-end scrutiny in the even that it did in fact

burden Second-Amendment protected conduct.  Marzzarella,

614 F.3d at 95.  In other words, the Third Circuit concluded

that it need not resolve the question posed by prong one because

Mr. Marzzarella's claim failed on prong two in any event.

With respect to prong two -- the application of means-

end scrutiny to the challenged statutory provision -- the Third

Circuit in Marzzarella concluded that intermediate scrutiny,

rather than strict scrutiny, would apply to § 922(k).[40]   The
Third Circuit held that § 922(k) passed muster under
intermediate scrutiny because preserving the ability of law
enforcement officers to conduct serial-number tracing
constitutes a substantial or important governmental interest,
and there is a reasonable fit between that important interest
(the end) and the prohibition of possession of unmarked firearms
(the means) employed to effectuate it.  Marzzarella, 614 F.3d
at 98-99.

     Although the Third Circuit held that intermediate
scrutiny applied to Mr. Marzzarella's claim, the court held (in
the alternative) that the § 922(k) passed constitutional muster
under strict scrutiny if that was the proper level of means-end
scrutiny.  Id. at 99.  In so holding, the Third Circuit
concluded that the government's interest in being able to trace
and recover information about recovered firearms (and, in turn,
to solve and potentially prevent crimes) is not only important,
but compelling.  Moreover, the Third Circuit concluded that,
because there is no comprehensive inventory and tracing system
other than the serial number system, § 922(k) is narrowly

---

[40]     The court reached that conclusion by reasoning that § 922(k) did
not prohibit the exercise of Mr. Marzzarella's Second Amendment right to
possess a firearm in his home for the purpose of self-defense.  Rather, the
court read § 922(k) as a regulation on the manner in which Mr. Marzzarella
could exercise his Second Amendment right -- that is, he could possess a
firearm at home, but it could not be a firearm with an obliterated serial
number.  Marzzarella, 614 F.3d at 97.

tailored to serve that compelling governmental interest.
Marzzarella, 614 F.3d at 99-101.

In sum, the Third Circuit concluded that Mr.
Marzzarella's conviction for violation of § 922(k) must stand
because even if that statutory provision burdened Second-
Amendment-protected conduct, § 922(k) passes muster under both
intermediate and strict scrutiny.  Id. at 101.

### Barton

The Third Circuit next addressed a Second Amendment
challenge to a provision of 18 U.S.C. § 922 in the Barton case.
There, defendant James Barton was charged by indictment with two
counts of being a felon in possession of a firearm and
ammunition in violation of 18 U.S.C. § 922(g) -- the same
provision which plaintiff Binderup challenges here.  Barton,
633 F.3d at 170.

Like Mr. Marzzarella, Mr. Barton filed a motion to
dismiss the Indictment on Second-Amendment grounds and, when the
motion to dismiss was denied by the district court, entered
conditional pleas of guilty to the charged offenses and reserved
his right to appeal the denial of his motion to dismiss on
Second-Amendment grounds.  Id.

On appeal, Mr. Barton argued that the Supreme Court's
statement in Heller concerning the presumptive lawfulness of
felon gun dispossession statutes is mere dicta.  The Third

-45-

Circuit rejected this argument, holding that the Supreme Court's list of "presumptively lawful" regulations in <u>Heller</u> -- including "prohibitions on the possession of firearms by felons" -- is not mere dicta, but rather an "outcome-determinative" part of the Court's holding there (and thus binding on all lower courts). <u>Barton</u>, 633 F.3d at 171.

Accordingly, the Third Circuit rejected Mr. Barton's facial challenge to § 922(g)(1). In doing so, the court reasoned that § 922(g)(1), the felon-in-possession prohibition, is "one of <u>Heller</u>'s enumerated exceptions" which is presumed to fall outside the scope of the Second Amendment right as recognized in <u>Heller</u>. <u>Barton</u>, 633 F.3d at 172.

Moreover, the Third Circuit noted that "the Supreme Court has twice stated that felon gun-dispossession statues are 'presumptively lawful.'" <u>Id.</u> (quoting <u>Heller</u>, 554 U.S. at 627 n.26, 128 S.Ct. at 2817, 171 L.Ed.2d. at 678; and <u>McDonald</u>, 561 U.S. at ___, 130 S.Ct. at 3047, 177 L.Ed.2d at 926).[41]

Ultimately, the Third Circuit held that <u>Heller</u> requires courts to presume, under most circumstances, that felon dispossession statutes like § 922(g)(1) "regulate conduct which is unprotected by the Second Amendment" and, therefore, that Mr.

---

[41]        The Third Circuit explained that, for purposes of <u>Heller</u>'s presumption, "lawful" prohibitions are those that "regulate[] conduct fall[ing outside] the scope of the Second Amendment's guarantee." <u>Barton</u>, 633 F.3d at 172 (quoting <u>Marzzarella</u>, 614 F.3d at 91).

Barton's facial challenge to the constitutionality of § 922(g)(1) failed.  Barton, 633 F.3d at 172.[42]

Having denied Mr. Barton's facial challenge to § 922(g)(1), the Third Circuit turned to the as-applied challenge to his conviction under that provision.  The court reasoned that, by describing felon gun dispossession statutes as "presumptively lawful" in Heller, the Supreme Court clearly implied that the presumption could be rebutted.  Accordingly, the Third Circuit held that it is possible that a felon could successfully raise an as-applied challenge to such statutes.  Barton, 633 F.3d at 173.  Plaintiff Binderup asserts just such a challenge.

Although the Third Circuit took Heller to permit an as-applied challenge to § 922(g)(1), the circuit court in Barton noted that the Opinion of the Supreme Court in "Heller does not catalogue the facts [the court] must consider when reviewing a felon's as-applied challenge."  Barton, 633 F.3d at 173.

Absent such direction from the Supreme Court, the Third Circuit determined that "to evaluate [Mr.] Barton's as-applied challenge, [it would] look to the historical pedigree of 18 U.S.C. § 922(g) to determine whether the traditional

---

[42]         Recognizing the import of Barton, plaintiff does not assert an as-applied challenge to § 922(g)(1) in this action.

justifications underlying the statute support a finding of permanent disability in this case." <u>Barton</u>, 633 F.3d at 173.

Turning to the historical pedigree of § 922(g), the Third Circuit noted that the United States Congress did not pass a federal statute prohibiting felons from possessing firearms until 1939, <u>id.</u> at 173 (citing Federal Firearms Act (FFA), ch.850, § 1(6), 52 Stat. 1250, 1251 (1938)),[43] and, even then, that prohibition applied only to those convicted of a "crime of violence". <u>Id.</u> (citing C. Kevin Marshall, <u>Why Can't Martha Stewart Have a Gun?</u>, 32 Harv. J.L. & Pub. Pol'y 695, 698 (2009)).

Continuing its historical review, the <u>Barton</u> court noted that the ratifying conventions in Pennsylvania, Massachusetts, and New Hampshire ("which were considered 'highly influential' by the Supreme Court in <u>Heller</u>"), <u>Barton</u>, 633 F.3d at 173 (quoting <u>Heller</u>, 554 U.S. at 604, 128 S.Ct. at 2804, 171 L.Ed.2d. at 665), confirmed that "the common law right to keep and bear arms did not extend to those who were *likely to commit violent offenses*." <u>Barton</u>, 633 F.3d at 173 (emphasis added).

Based on this this historical review, the Third Circuit stated that

---

[43] Section 2(f) of the Federal Firearms Act stated that "[i]t shall be unlawful for any person who has been convicted of a crime of violence...to receive any firearm or ammunition which has been shipped for transported in interstate...commerce...."

> [t]o raise a successful as-applied challenge, [the
> challenger] must present facts about himself and his
> background that distinguish his circumstances from
> those of persons historically barred from Second
> Amendment protections.  For instance, a felon
> convicted of a minor, non-violent crime might show
> that he is no more dangerous than a typical law-
> abiding citizen.  Similarly, a court might find that a
> felon whose crime of conviction is decades-old poses
> no continuing threat to society.

Barton, 633 F.3d at 174.

Applying that framework, the Third Circuit held that Mr. Barton failed to present a factual basis for a successful as-applied challenge.  The circuit court so held because Mr. Barton did not argue (nor could he have credibly argued) that his predicate offenses (convictions for possession of cocaine with intent to distribute, and receipt of a stolen firearm), id. at 170, did not make him "no more likely than the average citizen" to commit a future crime of violence.  Id. at 174.

In concluding that Mr. Barton had failed (and would have been unable) to make such a demonstration, the Third Circuit noted both that courts have held in numerous contexts that "offenses relating to drug trafficking and receiving stolen weapons are closely related to violent crime", Barton, 633 F.3d at 174 (collecting cases), and that the record demonstrated that Mr. Barton had not been rehabilitated but rather was a recidivist who had admitted recently selling a firearm with an obli-

terated serial number to a confidential police informant.
Barton, 633 F.3d at 174.[44]

Here, plaintiff Binderup asserts that § 922(g)(1), as
applied to him, violates the Second Amendment and seeks to
prevail on that claim under Barton by demonstrating that he "'is
no more dangerous than a typical-law, abiding citizen,' and
'poses no continuing threat to society.'"[45]

---

[44]   As an alternative, "fallback" argument, Mr. Barton contended
that, even if his actions place him in the category of offenders which
society has determined "not to be trusted to possess a firearm", he
nevertheless has a fundamental right to use a weapon for the purpose of
defending "hearth and home". Barton, 633 F.3d at 174.   Specifically, Mr.
Barton argued that "§ 922(g)(1), like the ordinance struck down in Heller, is
unconstitutional to the extent that it restricts his fundamental right to
keep a weapon in his home for self-defense." Id. (explaining Barton's
position).

The Third Circuit held that Mr. Barton's fallback argument was
foreclosed by Marzzarella. Barton, 633 F.3d at 174-175.   The Barton court
recognized the Third Circuit's statement in Marzzarella that a "felon
arguably possesses just as strong an *interest* in defending himself and his
home as any law-abiding individual." Id. at 174 (quoting Marzzarella,
614 F.3d at 92).   However, the Barton court explained that Marzzarella "*held*
that 'a felony conviction disqualifies an individual from asserting' his
fundamental right to 'defense of hearth and home.'" Id. (quoting
Marzzarella, 614 F.3d at 92).

In this respect, the Third Circuit noted that the fundamental
right under the Second Amendment is "not unique" and is like other
fundamental constitutional rights (like the right to vote) for which a felony
conviction may trigger disabilities that have been upheld by the Supreme
Court. Id. at 175 (citing and quoting, among others, Richardson v. Ramirez,
418 U.S. 24, 54-56, 94 S.Ct. 2655, 41 L.Ed.2d 551 (1974) which upheld a state
law disenfranchising felons on the basis of criminal conviction).

The Third Circuit "[found] persuasive the Ninth Circuit's
conclusion that 'felons are categorically different from the individuals who
have a fundamental right to bear arms." Id. (quoting United States v.
Vongxay, 594 F.3d 1111, 1115 (9th Cir. 2010)).

[45]   Plaintiff's Memorandum in Support at page 19 (quoting Barton,
633 F.3d at 174.)

<u>Dutton</u>

Unlike <u>Marzzarella</u> and <u>Barton</u>, which involved appeals from criminal convictions, the <u>Dutton</u> case involved a civil-rights action brought by plaintiff Kelly Dutton pro se pursuant to 42 U.S.C. § 1983.

Mr. Dutton brought claims against defendants Pennsylvania State Police, the Commonwealth of Pennsylvania, and the Pennsylvania Office of Attorney General, alleging that they were unlawfully prohibiting him from purchasing a firearm. <u>Dutton I</u>, 2012 WL 3020651 at *1.

Specifically, Mr. Dutton, acting pro se, attempted to purchase a firearm in Pennsylvania.  The Pennsylvania Instant Check System revealed two prior convictions in Pennsylvania for first-degree misdemeanors -- one for carrying a firearm on a public street, the second for carrying a firearm without a license.  As a result, Mr. Dutton was not permitted to purchase a firearm.

He challenged this denial to the Firearms Division of the Pennsylvania State Police and was informed that the denial was based upon his prior convictions and which disqualified him under 18 U.S.C. § 922(g)(1).  <u>Dutton I</u>, 2012 WL 3020651 at *1.

Mr. Dutton claimed that the denial based upon § 922(g)(1) was unlawful because, according to Mr. Dutton, that statutory provision "applies only to felonies and misdemeanors

of domestic violence." Dutton I, 2012 WL 3020651 at *1.
Defendants moved to dismiss under Fed.R.Civ.P. 12(b)(6) on the
grounds that Mr. Dutton failed to state a claim.

As discussed further in the above section concerning
Plaintiff's Statutory Claim (Count One), Judge Schiller granted
defendants' motion and dismissed Mr. Dutton's claim that the
denial violated his federal statutory rights under § 922(g)(1).
In explaining the statutory nature of the claim asserted by Mr.
Dutton, Judge Schiller noted that, even when plaintiff's
pleading was construed liberally, as required because he was
proceeding pro se, Mr. Dutton did not assert a Second Amendment
challenge to § 922(g)(1).

Nevertheless, Judge Schiller noted that the Opinion of
the Third Circuit in Barton would foreclose a facial challenge
to § 922(g)(1) even if one were asserted by Mr. Dutton, and that
an as-applied challenge by Mr. Dutton would fail because he had
not presented any facts which would distinguish him from other
felons categorically unprotected by the Second Amendment.
Dutton I, 2012 WL 3020651 at *2 n.3.  Because Judge Schiller
concluded that the facts presented by Mr. Dutton could not
sufficiently state a facial or as-applied Second Amendment
challenge to § 922(g)(1), he did not grant leave to amend for
Mr. Dutton to assert such claims and, instead, dismissed Mr.

Dutton's Complaint with prejudice.  Dutton I, 2012 WL 3020651 at *2.

Mr. Dutton appealed Judge Schiller's grant of defendants' motion to dismiss.  The Third Circuit summarily affirmed Judge Schiller's decision, holding that a Pennsylvania first-degree misdemeanor carries a maximum term of imprisonment of five years and, thus, does not qualify for § 921(a)(20)(B)'s exception to § 922(g)(1)'s prohibition.  Dutton II, 503 Fed.Appx. at 127.

Like Judge Schiller, the Third Circuit took Mr. Dutton to be asserting a violation of his statutory rights and not a Second Amendment challenge to § 922(g)(1).  Id. at 126-127. However, like Judge Schiller, the Third Circuit also considered the outcome if Mr. Dutton were attempting to assert a Second Amendment claim.  Id. at 127 n.1.

In doing so, the Third Circuit noted that Barton clearly foreclosed a facial challenge to § 922(g)(1) and that Mr. Dutton was similar to Mr. Barton in that he also "presented no facts distinguishing him from those of other felons who are categorically unprotected by the Second Amendment."  Dutton II, at 127 n.1.  Moreover, the Third Circuit upheld Judge Schiller's decision not to grant leave for Mr. Dutton to amend his pleading, stating that it "[did] not see how *any amendment* to [Mr.] Dutton's complaint would save his claim."  Id.

-53-

This statement by the Third Circuit affirming the denial of leave to amend clearly indicates that no amendment would save the claim which Judge Schiller and the Third Circuit took Mr. Dutton to actually be asserting -- namely, Mr. Dutton's statutory claim that § 922(g)(1) only applies to felonies and misdemeanor crimes of domestic violence and, therefore, does not apply to him regarding his two Pennsylvania first-degree, non-domestic-violence misdemeanor convictions.

However, to read that footnoted statement by the Third Circuit in Dutton II to mean that there is no conceivable set of facts which Mr. Dutton could muster that would sufficiently state an as-applied challenge to § 922(g)(1) would effectively overrule the precedential Opinion in Barton.  Rather, Dutton I and Dutton II are more appropriately read together to support the proposition, wholly consistent with the Third Circuit's precedential Opinion in Barton, that a party seeking to raise an as-applied Second-Amendment challenge to § 922(g)(1) must present facts distinguishing themselves from other felons unprotected by the Second Amendment. See Barton, 633 F.3d at 174; Dutton II, at 127 n.1.

In short, the Dutton case reinforces that which the parties here do not seriously dispute -- namely, that a party may assert an as-applied Second-Amendment challenge to § 922(g)(1) and, the party asserting such challenge bears the

-54-

burden of demonstrating facts sufficient to show that application of § 922(g)(1) to him or her violates the Second Amendment.

The central question presented by plaintiff Binderup's claim in Count Two is whether he has presented such facts here. Mr. Dutton did not attempt to make such a showing and, accordingly, neither Judge Schiller, nor the Third Circuit had occasion to address whether or not that (unattempted) showing was sufficient.  Accordingly, while the Dutton case certainly reinforces the principles articulated in the Barton case, it does not provide significant guidance in addressing the sufficiency of plaintiff's showing on his as-applied challenge to § 922(g)(1) here.

*The Barton Framework Controls*

Upon review of the caselaw discussed above, I conclude that Barton governs plaintiff's as-applied Second-Amendment claim in this action.

As discussed above, the Third Circuit in Marzzarella laid out a two-prong framework for Second-Amendment challenges and did not explicitly limit the application of that framework (including the application of means-end scrutiny to provisions which infringe on Second-Amendment-protected activity) to facial constitutional challenges asserted under the Second Amendment. In the absence of such a limitation, it is certainly

-55-

understandable why defendants first addressed plaintiff's as-
applied Second Amendment claim under the Marzzarella framework.

Indeed, the United States Court of Appeals for the
Ninth Circuit adopted the two-prong Marzzarella framework in
United States v. Chovan, 735 F.3d 1127 (9th Cir. 2013) and
applied it to defendant-appellant Chovan's claim on appeal that
§ 922(g), both on its face and as applied to him, violated the
Second Amendment.  Id. at 1129-1130.  Thus, the Marzzarella
framework could conceivably be applied to an as-applied Second-
Amendment claim.

However, as noted above, the second prong of the
Marzzarella framework requires the application of means-end
scrutiny to determine whether a particular provision which
burdens protected conduct passes constitutional muster.  The
Third Circuit in Marzzarella, 614 F.3d at 97, and the Ninth
Circuit in Chovan, 735 F.3d at 1138, applied intermediate
scrutiny in conducting its prong-two analysis under Marzzarella.
The Third Circuit also applied strict scrutiny in an alternative
analysis of the constitutionality of § 922(k) under prong two in
Marzzarella.  Marzzarella, 614 F.3d at 99-100.

The application of either intermediate or strict
scrutiny by the Third Circuit in Marzzarella is noteworthy as a
point of contrast with the framework set forth by the Third
Circuit for as-applied challenges in Barton.

As the Third Circuit has stated, "[u]nder intermediate scrutiny, the State must assert a significant, substantial or important interest and there must be a reasonable fit between the asserted interest and the challenged regulation." Drake v. Filko, 724 F.3d 426, 453 (3d Cir. 2013).  In other words, where intermediate scrutiny applies, the party seeking to uphold a challenged provision has the burden of demonstrating the constitutionality of that provision.  See id.

Similarly, in Chovan, the Opinion of the Ninth Circuit clearly demonstrates that the burden of overcoming intermediate scrutiny on prong two of the Marzzarella framework rests with the party seeking to uphold the challenged provision.  Chovan, 735 F.3d at 1140-1141.

By contrast, the Opinion of the Third Circuit in Barton clearly placed the burden on Mr. Barton -- that is, the party challenging the constitutionality of § 922(g)(1) -- to present facts demonstrating the unconstitutionality of § 922(g)(1) as applied to him.  The principle that the party seeking to assert an as-applied constitutional challenge under the Second Amendment bears the burden of demonstrating the unconstitutionality of a particular provision as applied to the challenger is reinforced by the Dutton case discussed above.

Accordingly, I conclude that Barton -- the more recent, and directly-on-point precedential Opinion of the Third

-57-

Circuit -- provides the framework governing plaintiff's as-
applied claim in Count Two.

### Analysis of As-Applied Challenge

The crux of plaintiff Daniel Binderup's as-applied
Second Amendment challenge to the constitutionality of applying
§ 922(g)(1)'s prohibition to him, specifically, is his
contention that "[h]e is no more dangerous than a typical law-
abiding citizen,' and 'poses no continuing threat to society."[46]
The undisputed material facts presented in this case support
that claim.

*No History of Violence*

Plaintiff was born in the spring of 1955 and is
presently 59 years old.[47]  He and his wife of 40 years have
raised two children.  From 1989 through 2001, he owned and
operated a bakery which employed eight people.[48]

From June 1996 through August 1997, a period of
fourteen months, plaintiff carried on a sexual relationship with
one of the females employed at his bakery.  At the time this
sexual relationship began, the female employee was seventeen

---

[46]        Plaintiff's Memorandum in Support at page 19 (quoting Barton,
633 F.3d at 174).

[47]        See Criminal Docket in Commonwealth of Pennsylvania v. Daniel
Richard Binderup, Docket No. CP-36-CR-004127-1997, in the Court of Common
Pleas of Lancaster County, Pennsylvania, submitted as Exhibit A to the
Declaration of Daniel Binderup, with date of birth redacted.

[48]        Declaration of Daniel Binderup at ¶ 7.

years old.  Plaintiff later admitted to a detective of the
Manheim Township Police Department that he knew that the female
employee with whom he had intercourse on multiple occasions over
more than a year's time was less than eighteen years old.[49]

On October 1, 1997, based upon his sexual relationship
with his seventeen-year-old employee, plaintiff was charged with
one count of Corruption of minors in violation of 18 Pa.C.S.A.
§ 6301(a) as a misdemeanor of the first degree[50] -- that is,
plaintiff was charged under 18 Pa.C.S.A. § 6301(a)(1)(i).

Plaintiff was not charged with Corruption of minors in
violation of 18 Pa.C.S.A. § 6301(a)(1)(ii), which relates to the
corruption of minors by a course of conduct in violation of
Chapter 31 of Title 18 of the Pennsylvania Crimes Code -- that
is, a course of conduct which would constitute another sexual
offense against a person under Pennsylvania law.[51]

---

[49]    Exhibit 1 to Defendants' Motion, Police Criminal Complaint, at
pages 2-3.

[50]    Id. at pages 1-2.

[51]    See id.; Exhibit 2 to Defendants' Motion, Sentencing Order, at
page 1.

A course of conduct in violation of Title 18, Chapter 31 of the
Pennsylvania Crimes Code would involve Rape (§ 3121)(first-degree felony);
Statutory sexual assault (§ 3122.1)(first- or second-degree felony);
Involuntary deviate sexual intercourse (§ 3123.1)(first-degree felony),
Sexual assault (§ 3124.1)(second-degree felony); Institutional sexual assault
(§ 3124.2)(third-degree felony); Sexual assault by sports official,
volunteer, or employee of nonprofit association (§ 3124.3)(third-degree
felony); Aggravated indecent assault (§ 3125)(first- or second-degree felony,
depending on circumstances); Indecent assault (§ 3126)(first- or second-
degree misdemeanor or first-degree felony depending on circumstances);

(Footnote 51 continued):

Plaintiff pled guilty on November 25, 1997 to one count of Corruption of minors under 18 Pa.C.S.A. § 6301 and was sentenced on July 15, 1998 to a term of three years' probation, and ordered to pay a fine of $300.00, court costs of $1,425.70, and restitution of $450.00.[52]  Plaintiff paid each of those financial obligations and successfully completed his term of probation.[53]

Moreover, plaintiff's license to carry firearms was revoked and he sold the firearms he owned at that time to a licensed dealer to comply both with the federal statute which now challenges, 18 U.S.C. § 922(g)(1), and the Pennsylvania statutory provision governing Persons not to possess, use, manufacture, control, sell or transfer firearms, 18 Pa.C.S.A. § 6105(a)(1).[54]

---

(Continuation of footnote 51):

Indecent exposure (§ 3127)(first- or second-degree misdemeanor, depending on circumstances); Sexual intercourse with an animal (§ 3129)(second-degree misdemeanor); or Conduct relating to sex offenders (§ 3130)(third-degree felony).

[52]     Exhibit A to the Declaration of Daniel Binderup, Criminal Docket in Commonwealth of Pennsylvania v. Daniel Richard Binderup, Docket No. CP-36-CR-004127-1997, at pages 1-2.

[53]     Declaration of Daniel Binderup at ¶ 6.

[54]     Id. at ¶¶ 6 and 8.

Plaintiff's wife forgave him and they remain married. In 2001, plaintiff sold his bakery and now owns and operates a plumbing business.[55]

Since his November 1997 conviction and 1998 sentencing for Corruption of minors, plaintiff has not been convicted of any further offenses.[56]   Moreover, there is no record evidence suggesting that plaintiff has been arrested or charged with any criminal offense in that nearly-seventeen-year period.

Plaintiff concedes that the sexual relationship he engaged in with his seventeen-year-old female employee while he was in his forties was both "wrong" and criminal under Pennsylvania law.[57]   Moreover, nothing in this Opinion should be taken to condone such conduct or to suggest that it is inappropriate Pennsylvania to criminalize such conduct.

However, the question presented by plaintiff's as-applied Second-Amendment challenge to § 922(g)(1) is not simply whether plaintiff's underlying criminal offense was morally reprehensible.   Rather, under <u>Barton</u>, the pertinent question is whether the "traditional justifications underlying the [disarmament] statute support a finding of permanent disability in this case."   633 F.3d at 173.   The Third Circuit's consider-

---

[55]        Declaration of Daniel Binderup at ¶ 7.

[56]        <u>Id.</u>

[57]        <u>Id.</u> at ¶¶ 6-7.

-61-

ation of the historical pedigree for such felon-disarmament laws identified the core concern of whether an individual was "likely to commit a violent offenses."  Id.

There is simply nothing in the record here which would support a reasonable inference that plaintiff used any violence, force, or threat of force to initiate or maintain the sexual relationship with his seventeen-year-old employee.  Moreover, there is no record evidence present here which would support a reasonable inference that plaintiff was convicted of any crime of violence (or that he even engaged in any violent or threatening conduct) before or after his November 1997 conviction for Corruption of minors.

As noted above, at the time of his 1997 conviction for Corruption of minors, plaintiff was a licensed owner of firearms.  Upon his conviction, when he could no longer lawfully possess those firearms pursuant to Pennsylvania and federal law, he sold them to a licensed dealer.

In contrast to Mr. Marzzarella, plaintiff did not possess any firearm with an obliterated serial number -- that is, a virtually-untraceable firearm particularly well-suited for use in criminal activity.  In contrast to Mr. Barton (prior state-law convictions for convictions for possession of cocaine with intent to distribute, and receipt of a stolen firearm) and Mr. Dutton (prior state—law convictions for carrying a firearm

-62-

on a public street, the second for carrying a firearm without a license), the record does not support a reasonable inference that plaintiff has ever unlawfully possessed or carried a firearm, received a stolen firearm, or engaged in drug trafficking activity.

In addition to a past devoid of any crimes of violence, plaintiff's past is devoid of any firearms offenses or drug trafficking offenses, which the Third Circuit has noted are closely related to violent crime. See Barton, 633 F.3d at 174.

In opposition to plaintiff's as applied challenge, defendant describes the conduct underlying plaintiff's conviction for Corruption of minors as "predatory sexual conduct with a teenaged employee".[58] Plaintiff describes the same as a "consensual[,] if illicit[,] affair[]".[59] Both descriptions are, to varying degrees, accurate; the latter more so than the former.

With respect to defendants' characterization, it is undisputed that plaintiff had sexual intercourse ("sexual conduct") with his seventeen-year-old female employee ("a teenaged employee"). Plaintiff objects to defendants' use of the word "predatory", arguing that there is nothing in the

---

[58]        Defendants' Combined Opposition and Reply Brief at page 1.

[59]        Plaintiff's Memorandum in Support at page 18.

record to suggest that plaintiff engaged in "predatory" behavior.[60]

Predatory means, among other things, "inclined or intended to injure or exploit others for personal gain or profit". MERRIAM WEBSTER'S COLLEGIATE DICTIONARY 915 (10th ed. 2001). Thus, defendants' description of plaintiff's conduct as "predatory" may be reasonable to the extent that defendants intend that characterization to suggest that plaintiff's sexual relationship with his seventeen-year-old employee reflects or evidences plaintiff's intent or inclination to exploit the employer-employee relationship (and authority differential) between himself and his much younger female employee.

However, the context certainly suggests that defendants' characterization is meant to depict plaintiff as a sexual predator who, as such, is a dangerous individual who should not be permitted to possess a firearm.

A "sexual predator" is "a person who has committed many violent sexual acts or who has a propensity for committing violent sexual acts." BLACKS'S LAW DICTIONARY 1499 (9th ed. 2009).

Here, there is simply no record evidence which suggests in any way that plaintiff has committed many violent sexual acts. Moreover, there is no record evidence which supports a reasonable inference that he has a propensity to

_____

[60]         Transcript of Motions Hearing at page 31.

commit violent acts, sexual or otherwise.  Were it otherwise,
and the record instead demonstrated a history of or propensity
for violence, plaintiff's as-applied challenge under <u>Barton</u>
would be a non-starter.

*Not a Statutory Rapist*

Defendants further contend that disarming plaintiff
based on his Corruption of minors conviction is consistent with
the scope of the Second Amendment as understood at the time of
the adoption of the Bill of Rights.  In support of that
contention, defendants note that "one crime punishable under
early English criminal law was carnal knowledge of a female
under a particular age, regardless of the female's consent" --
citing a 1576 English statute which prohibited such relations
with "any woman child under the age of ten years."[61]

According to defendants, that 1576 English statute
demonstrates that "the nature of the conduct for which Plaintiff
was convicted would have been recognized during the Founding Era
as punishable by criminal sanctions", and the difference between
that 1576 English statute and the statute under which plaintiff
was convicted -- 18 Pa.C.S.A. § 6301(a)(1)(i) -- is "a
difference in degree, not in kind."[62]  Plaintiff contends that
the argument likening his criminal conduct to having sex with a

---

[61]        Defendants' Memorandum in Support at page 10.

[62]        <u>Id.</u>

girl under the age of ten is "absurd"[63] and describes the analogy as "frankly inappropriate".[64]

Plaintiff correctly and understandably concedes that sexual relations with a girl age nine or below is, and has been historically, a very serious felony.  Plaintiff notes that sexual relations with a girl age ten through twelve was, historically, also a criminal offense.[65]  However, as plaintiff points out, the actual conduct for which he was convicted -- that is, sexual relations between a man in his forties and a seventeen-year-old girl -- was not subject to criminal sanction at, or before, the time of the Founding.

The parties dispute whether or not plaintiff is a "statutory rapist".[66]  Defendants contend that, despite plaintiff's protestations and that the offense of which he was convicted is termed "Corruption of minors" under Pennsylvania law, plaintiff's conduct "falls within the well-understood generic legal and layperson's definition of 'statutory rape.'"[67]

Black's Law Dictionary, which defendants rely on for their definition of the term, defines "statutory rape" as

---

[63]     Plaintiff's Memorandum in Support at page 18 n.4.

[64]     Plaintiff's Memorandum in Opposition at page 7.

[65]     Id. at page 8.

[66]     Id. at page 10; Defendants' Combined Opposition and Reply Brief at page 17.

[67]     Defendants' Combined Opposition and Reply Brief at page 17.

"[u]nlawful sexual intercourse with a person under the age of consent (as defined by statute), regardless of whether it is against that person's will.  Generally, only an adult may be convicted of this crime.  A person under the age of consent cannot be convicted."  BLACK'S LAW DICTIONARY 1374 (9th ed. 2009)  Similarly, Merriam Webster's Dictionary defines "statutory rape" as "sexual intercourse with a person who is below the statutory age of consent."  MERRIAM WEBSTER'S COLLEGIATE DICTIONARY 1146 (10th ed. 2001).

The Superior Court of Pennsylvania has stated that "[i]t is axiomatic that [individuals] *under the age of 16* may not legally assent to sexual acts of...any kind."  Commonwealth of Pennsylvania v. Hughlett, 249 Pa.Super. 341, 346, 378 A.2d 326, 329 (1977)(emphasis added).[68]  It is undisputed here that plaintiff's employee-paramour was seventeen years old at the time the two were engaging in sexual intercourse.

At the time of plaintiff's conviction, as now, the Pennsylvania Crimes Code did not contain an offense called "Statutory rape" -- as explained below, Rape of a child and

---

[68]        If the individual under age sixteen does not agree to the intercourse and sexual intercourse is by force or threat of force, then it is Rape.  See 18 Pa.C.S.A. § 3121.  If the individual under age sixteen agrees to the intercourse but the perpetrator is four or more years older than the individual, then it is Statutory sexual assault.  See § 3122.1.  If the individual under age sixteen agrees to "deviate sexual intercourse" (that is, oral or anal intercourse, see § 3101) but the perpetrator is four or more years older than the individual, then it is Involuntary deviate sexual intercourse. § 3123(a)(7).

Statutory sexual assault are separate offenses under Pennsylvania law.

Pennsylvania law provides for the offense of "Rape of a child" and states that "[a] person commits the offense of rape of a child, a felony of the first degree, when the person engages in sexual intercourse with a complainant who is less than 13 years of age."  18 Pa.C.S.A. § 3121(c).  Consent is no defense to Rape of a child.[69]

Additionally, Pennsylvania law prohibits "Statutory sexual assault" and provides:

> **(a) Felony of the second degree.** -- Except as provided in section 3121 (relating to rape), a person commits a felony of the second degree when that person engages in sexual intercourse with a complainant to whom the person is not married who is *under the age of 16 years* and that person is either:
>
> > (1) four years older but less than eight years older than the complainant; or

---

[69]     The Supreme Court of Pennsylvania has recognized "a common thread" throughout the provision of the Pennsylvania Crimes Code setting forth sexual offenses -- namely that,

> if the Commonwealth proves that a victim is under the age of 13 and the defendant engaged in the prohibited conduct, criminal liability is established, and the victim's consent is not an available defense. See 18 Pa.C.S. § 3121(c)(rape of a child); 18 Pa.C.S. § 3125(b)(aggravated indecent assault of a child), 18 Pa.C.S. § 3123(b)(involuntary deviate sexual intercourse with a child); 18 Pa.C.S. § 3126 (a)(7) (indecent assault).  By imposing liability whenever the victim is below a certain age threshold [(the age of 13)], the legislature has in essence made it a crime per se for defendants to have sexual contact with minors under a certain age, irrespective of whether the minor putatively consented to such contact.

C.C.H. v. Philadelphia Phillies, Inc., 596 Pa. 23, 40, 940 A.2d 336, 346 (2008).

> (2) eight years older but less than 11 years
> older than the complainant.
>
> **(b) Felony of the first degree.** -- A person commits a
> felony of the first degree when that person engages in
> sexual intercourse with a complainant *under the age of
> 16 years* and that person is 11 or more years older
> than the complainant and the complainant and the
> person are not married to each other.

18 Pa.C.S.A. § 3122.1.

As with Rape of a child, consent is no defense to

Statutory sexual assault, Commonwealth of Pennsylvania v.

Parsons, 969 A.2d 1259, 1261, 1271 (Pa.Super.Ct. 2009).

However, Statutory sexual assault requires that the complainant

be under the age of sixteen (that is, at most, fifteen years

old).  18 Pa.C.S.A. § 3122.1.

By contrast, under Pennsylvania law, consent is a

defense to Rape and Sexual assault if where the complainant is

age sixteen or older.  Teti v. Huron Insurance Company,

914 F.Supp. 1132, 1139-1140 (E.D.Pa. 1996)(Robreno, J.).

In other words, Pennsylvania law does not provide a

bright-line rule concerning the age at which an individual may

legally consent to sexual intercourse with an adult.  Id. at

1140.

Put another way, sexual intercourse with an individual

under the age of thirteen is Rape of a child, regardless of the

complainants purported consent.  18 Pa.C.S.A. § 3121(e).

Moreover, sexual intercourse with a person under the age of

-69-

sixteen is Statutory sexual assault if the perpetrator is four (or more) years older than the complainant, regardless of consent.  18 Pa.C.S.A. § 3122.1.

However, consensual sexual intercourse with a seventeen year old -- that is, sexual intercourse which is not by force or threat of force, see 18 Pa.C.S.A. § 3121(a)(1)-(2), and where the seventeen year old is conscious, not mentally disabled and not substantially impaired by an intoxicant which the perpetrator administered surreptitiously, see 18 Pa.C.S.A. § 3121(a)(3)-(5) -- is neither Rape, nor Statutory sexual assault.  Ultimately, a sixteen year old under Pennsylvania law has the capacity to consent to sexual intercourse with an adult, regardless of the adults age.  Teti, 914 F.Supp. at 1140.

Although, as explained above, the sixteen (or seventeen) year old has the capacity to consent to sexual intercourse with an adult, and the adult with whom that individual had sexual intercourse (here, plaintiff Binderup) is not deemed to have committed a "sexually violent offense" for which sex-offender registration would be required.  See 42 Pa.C.S.A. § 9799.13(3.1)(ii)(A)(I)(expressly excluding Corruption of minors under 18 Pa.C.S.A. § 6301 from the term "sexually violent offense").  Such consensual sexual intercourse nevertheless "corrupts or tends to corrupt the morals of any

minor less than 18 years of age", 18 Pa.C.S.A. § 6301(a)(1), and
is thus subject to criminal sanction under Pennsylvania law.

In short, the sole offense for which plaintiff was
convicted (and the conduct underlying that offense) did not
involve sexual intercourse with a minor by force or threat of
force, nor did it involve sex with a minor who, because of her
age, was unable to consent to sexual intercourse with plaintiff.

As explained further above, the Corruption of minors
as a first-degree misdemeanor (plaintiff's underlying offense)
is punishable by a term of imprisonment up to five years and,
thus, is not a minor offense.  Pennsylvania's Corruption of
minors offense covers "a broad range of conduct" -- some of it
sexual in nature, and some not.  See Commonwealth v. Decker,
698 A.2d 99, 101 (Pa.Super.Ct. 1997).  And, indeed, the Superior
Court of Pennsylvania in Decker noted that "generally a
corruption of minors charge accompanies another more serious
charge such as involuntary deviate sexual intercourse, statutory
[sexual assault], indecent assault, etc."  Decker, 698 A.2d
at 100.

Were that the case here -- if, in addition to the
Corruption of minors offense, plaintiff had been charged with,
and convicted of, a sexually violent offense based upon the
relationship with his employee-paramour -- then his as-applied
challenge to § 922(g)(1) under Barton would be a non-starter.

But that is not the case here.  Plaintiff -- despite having well-earned his charge and conviction for first-degree misdemeanor Corruption of minors under 18 Pa.C.S.A. § 6301(a)(1)(i) and commensurate moral opprobrium for his extra-marital affair with an employee-paramour more than 20 years his junior -- was not convicted of Statutory sexual assault, nor of any other crime involving force or violence.

For the reasons expressed above, I conclude that plaintiff has demonstrated that, if allowed to keep and bear arms in his home for purposes of self-defense, he would present no more threat to the community that the average law-abiding citizen.

### Defense Exhibits

In support of Defendants' Motion and in opposition to Plaintiff's Motion, defendants provide a number of exhibits pertaining to recidivism risk and the efficacy of denial of handgun purchases for certain persons as a method of reducing the risk of firearm violence.[70]

Defendants rely on these exhibits as empirical support for their argument that application of § 922(g)(1) to plaintiff

---

[70]        Exhibit 3 to Defendants' Motion, D.O.J., B.J.S. Fact Sheet; Exhibit 4 to Defendants' Motion, Wright, et al., Effectiveness of Denial; Exhibit 1 to Defendants' Combined Opposition and Reply Brief, Pa.D.O.C. Recidivism Report 2013.

survives intermediate means-end scrutiny under the <u>Marzzarella</u> framework.  Nevertheless, the contentions which defendants contend these studies support are also pertinent to the analysis of plaintiff's as-applied challenge under the <u>Barton</u> framework.

Specifically, defendants quote the statement of the Third Circuit in <u>Barton</u> that, "It is well established that felons are more likely to commit violent crimes than other law-abiding citizens."[71]  Specifically, the Third Circuit in <u>Barton</u> noted the Bureau of Justice Statistic's finding that "within a population of 234,358 federal inmates released in 1994, the rates of arrests for homicides were 53 time the national average".  633 F.3d at 175.

A great leap is not required to distinguish plaintiff Binderup, whose state-law offense earned him a probationary sentence, from individuals who committed federal offenses which earned them a term of incarceration.

Defendants further contend that violent and non-violent convicted offenders as a group (a group which includes plaintiff) "present a significant risk of recidivism for *violent* crime."[72]  Specifically, relying on the Department of Justice's

---

[71]      Defendants' Memorandum in Support at page 13 (quoting <u>Barton</u>, 633 F.3d at 175, in turn citing Bureau of Justice Statistics, <u>Recidivism of Prisoners Released in 1994</u>, at 6 (2002)).

[72]      <u>Id.</u> at pages 13-14 (citing, generally, the D.O.J., <u>B.J.S. Fact Sheet</u>)(emphasis added).

Bureau of Justice Statistics Fact Sheet (Exhibit 3 to Defendants' Motion), defendants contend that the danger posed by plaintiff is demonstrated by the fact that "approximately 1 in 5 [nonviolent] offenders was rearrested for violent offenses within three years of his or her release."[73]

Beyond the implicit fact that four in five (or, 80% of) nonviolent offenders are not rearrested for violent offenses within three years of their release, plaintiff is demographically distinguishable from the population addressed by Exhibit 3 to Defendants' Motion.

Specifically, the releasees addressed in Exhibit 3, by definition, committed one or more offenses for which they were sentenced to a term of imprisonment.  Plaintiff was not imprisoned, but sentenced to a three-year term of probation. Two-thirds of the nonviolent releasees were under the age of 34. Plaintiff is now 59 years old.  Two-thirds of the nonviolent releasees admitted using illegal drugs within one month of the offense for which they were incarcerated.  One quarter were alcohol-dependent prior to their offense.  There is no record evidence here suggesting, in any way, that plaintiff used or uses illegal drugs or is alcohol-dependent.[74]

---

[73]       Defendants' Memorandum in Support at 14.

[74]       D.O.J., B.J.S. Fact Sheet, at page 1.

Moreover, with respect to prior criminal history, 95% of the non-violent releasees had an arrest record, and 80% had at least one criminal conviction, prior to the offense for which they were imprisoned.[75]  In other words, the vast majority of the individuals in the population addressed by defendants' Exhibit 3 were already demonstrated recidivists.  Indeed, of that significant portion of nonviolent releasees in Exhibit 3 with a prior criminal history, "[o]n average, the RAP sheets of nonviolent offenders discharged from prison indicated 9.3 prior arrests and 4.1 prior convictions."[76]

Here, by contrast, nothing in the record supports a reasonable inference that plaintiff was ever arrested or convicted for any offense before (or after) his Corruption of minors offense underlying his claim here.

Defendants further contend -- relying upon the Pennsylvania Department of Corrections' Recidivism Report 2013 (Exhibit 1 to Defendants' Combined Opposition and Reply Brief) -- that "[i]ndividuals convicted of statutory rape as a class are also much more likely than the general population to commit future crimes."[77]

---

[75]        D.O.J., B.J.S. Fact Sheet, at page 1.

[76]        Id.

[77]        Defendants' Memorandum in Support at page 14 (citing Pa.D.O.C. Recidivism Report 2013 at page 21).

The Recidivism Report 2013 does support defendants'
assertion.  However, as explained below, it does not speak to
the risk for future violent crime which plaintiff would present
if permitted to possess a firearm in his home and, thus, is
immaterial with respect to the question presented by plaintiff's
as-applied challenge in Count Two.

Specifically, Table 12 on page 21 of the report lists
the three-year overall recidivism (that is, both rearrests and
reincarceration) rate for those in the "Offense Category" of
"Statutory Rape" at 50.0%, "Forcible Rape" at 49.3%, and "Other
Sexual Offenses" at 60.2%.

These statistics certainly suggest that there a
substantial possibility (and in an the case of "Other Sexual
Offenses", a probability) that an individual convicted of
"Forcible Rape", "Statutory Rape", or an "Other Sexual
Offense[]" and sentenced to a term of imprisonment will be
rearrested and or reincarcerated within three years of release
from state prison.  However, as discussed above, plaintiff was
not sentenced to a term of imprisonment and, thus, is not a
releasee.

Moreover, the Pennsylvania Department of Corrections'
Recidivism Report 2013 does not define the "Forcible Rape",
"Statutory Rape", and "Other Sexual Offenses" by reference to
any particular provisions of the Pennsylvania Crimes Code, or

otherwise.  "Statutory Rape" presumably includes Rape of a child" (sexual intercourse below age thirteen), but could conceivably also be broad enough to encompass Statutory sexual assault (sexual intercourse below age sixteen with someone four or more years older).  However, Statutory sexual assault could just as well be considered among "Other Sexual Offenses".  The report does not say.

        And, most importantly in light of plaintiff's as-applied claim here, there is no indication anywhere in the report that Corruption of minors -- particularly when, as here, it was a first-degree misdemeanor under 18 Pa.C.S.A. § § 6301(a)(1)(i), and not a third-degree felony under § 6301(a)(1)(ii) -- is included in the category "Other Sexual Offenses".  Indeed, such an inference would be unreasonable.

        The very language of the Corruption of minors statute itself demonstrates that first-degree misdemeanor Corruption of minors is not a sexual offense under Pennsylvania law.  Specifically, § 6301(a)(1)(ii) makes Corruption of minors a third-degree felony where it is "by any course of conduct in violation of Chapter 31 (relating to *sexual offenses*)...."  18 Pa.C.S.A. § 6301(a)(1)(ii)(emphasis added).

        Chapter 31 of the Pennsylvania Crimes Code, 18 Pa.C.S.A. §§ 3103-3144, indeed pertains to sexual offenses and includes the following offenses: Rape (§ 3121); Statutory

-77-

sexual assault (§ 3122.1); Involuntary deviate sexual intercourse (§ 3123.1), Sexual assault (§ 3124.1); Institutional sexual assault (§ 3124.2); Sexual assault by sports official, volunteer, or employee of nonprofit association (§ 3124.3); Aggravated indecent assault (§ 3125); Indecent assault (§ 3126); Indecent exposure (§ 3127); Sexual intercourse with an animal (§ 3129); or Conduct relating to sex offenders (§ 3130).

Corruption of minors under § 6301(a)(1)(i) -- the offense for which plaintiff was convicted in 1997 -- is decidedly absent from the sexual offenses covered by Chapter 31, and as explained above, is not among the sexual offenses which would trigger an offender's duty to register as a sex-offender.

The Recidivism Report 2013 examined inmates released from the custody of the Pennsylvania Department of Corrections -- that is, those convicted of a crime under Pennsylvania law and sentenced to a term of imprisonment.[78]  As explained above, it is undisputed that plaintiff was not sentenced to a term of imprisonment and, thus, is not a releasee.

Whatever the cited portion of the Recidivism Report 2013 may say about the recidivism risks posed by rapists and other sex offenders who have served time in, and been released from, Pennsylvania's state prison system, it simply does not

---

[78]        Pa.D.O.C. Recidivism Report 2013 at page 37.

speak to whether (or to what extent) a person convicted solely for first-degree misdemeanor Corruption of minors who's sentence was probationary and not custodial presents a risk of recidivism generally, or a risk of violent or firearm-related crime more specifically.

Moreover, even assuming plaintiff's prior offense had resulted a custodial sentence, certain findings reported in the Recidivism Report 2013 suggests that plaintiff would pose a reduced recidivism risk.  Specifically, the report found that the overall recidivism rate (rate of rearrest or reincarceration) is 62.7% three years after release, and 71.1% five years after release.

Furthermore, the report states that "[t]he first year [after release] is by far the most risky period" and that the recidivism-rate data for the five years following release demonstrate a "slow-down of recidivism rates as the time since release grows longer."[79]

In other words, the risk of recidivism is greatest in the first three years after release from prison and, although the overall recidivism rate tends to increase between years three and five, the rate of increase drops significantly between year three and year five.[80]

---

[79]      Pa.D.O.C. Recidivism Report 2013 at page 10.

[80]      See id. at page 10.

Plaintiff's sole criminal conviction occurred in November 1997, nearly seventeen years ago.  He is simply not a state-prison releasee with less than one, three, or even five year(s) since his release.  And, although his conviction is not (strictly speaking) "decades old", Barton, 633 F.3d at 174, it is more than a decade-and-half old and, in light of the statistics contained in the Recidivism Report 2013 (defendants' own exhibit), seventeen years without an incident of recidivism is a substantial period for purposes of assessing future risk.

Additionally, the Recidivism Report 2013 looked at recidivism rates among state-prison releasees by age categories. According to the report, the overall recidivism rate three years after release was 77.9% for those under age 21, 67.3% for those age 21 through 29, and dropped to 37.3% for those above age 50 (the range in which plaintiff would currently fall if he had actually been incarcerated).  The report concluded that its "age group findings suggest that age has a strong negative correlation with recidivism."[81]

Finally, the Recidivism Report 2013 assessed recidivism rates for state-prison releasees with prior criminal history -- that is, history prior to the arrest and conviction

---

[81]        Pa.D.O.C. Recidivism Report 2013 at page 18.

for which they were incarcerated that qualified them as a releasee and, thus included them in the report.[82]

The overall recidivism rate was 41.9% for those releasees with one-to-four arrests prior to their incarceration offense, and dropped to 12.4% for those releasees with zero arrests prior to their incarceration offense (that is, those who were incarcerated for the offense on which they were arrested for the first time). The Recidivism Report 2013 concluded that "[p]rior criminal history [before the the current incarceration offense] appears to be highly associated with whether an inmate will continue to commit crimes after being released from state prison."[83] Here, plaintiff never committed an offense for which he was incarcerated and only committed a single criminal offense.

For those reasons, plaintiff is materially distinguishable from those individuals who make up the group and sub-groups addressed and the Recidivism Report 2013.

Defendants also submitted an article from the American Journal of Public Health in support of their contention that convicted offenders (including those whose offenses were nonviolent) are much more likely than the general population to

---

[82]        Pa.D.O.C. Recidivism Report 2013 at page 19.

[83]        Id.

commit future crimes, including violent crimes.[84]  The article
does not undermine plaintiff's as-applied challenge in Count
Two.

That article describes the authors' study, which
sought to assess the effectiveness of preventing handgun
purchases by those thought to be at high risk of committing
firearm-related violent crime as a tool to prevent firearm-
related violence.  The authors studied two groups of people: a
purchaser cohort (2470 people with at least one prior felony
arrest, but no felony conviction), and a non-purchaser/denial
cohort (170 individuals with prior felony convictions who
submitted handgun purchase applications but were denied on
account of their prior record).

The authors compared the two groups by looking at
criminal charges for new offenses occurring within three years
of the handgun purchase or application in an attempt to
determine whether those who were denied a handgun committed
fewer, and fewer violent, crimes than those who were permitted
to purchase a handgun.[85]

Although the authors concluded that their "findings
suggest that denial of handgun purchase is associated with a

---

[84]      Defendants' Memorandum in Support at page 14 (citing Wright et
al., Effectiveness of Denial, at page 88.)

[85]      Wright et al., Effectiveness of Denial, at page 88.

reduction in risk for later criminal activity of approximately 20% to 30%", they went on to state that "[t]his modest benefit may reflect the fact that the members of both study groups had extensive criminal records and therefore were at high risk for later criminal activity."[86]

Indeed, even those 2470 individuals in the purchaser cohort -- who did not have felony convictions to disqualify them from purchasing -- had a cumulative total of 14,192 arrests between them.[87]  Here, plaintiff cannot similarly be described as having an extensive criminal record.

Moreover, although the authors noted that "[a]mong those with only one prior weapon or violence arrest charge, [handgun] purchasers were 2 to 4 times as likely to be charged with new offenses as those who were denied", there was no such effect seen among those (like plaintiff here) with no prior arrest charges involving violence or weapons.

Finally, and perhaps most significantly, the authors of the study stated that "[i]n terms of some potentially important differences in risk for later criminal activity, *this study was too small to determine whether the differences occurred by chance*."[88]

---

[86]        Wright et al., <u>Effectiveness of Denial</u>, at page 89.

[87]        <u>Id.</u> at page 88.

[88]        <u>Id.</u> at 89 (emphasis added).

In sum, this study may suggest (it cannot be said with certainty because of the small size) that denying lawful purchase of a handgun to a population of arrestees described as having "extensive prior criminal records" might be effective at reducing firearm-related violent crime.  However, it does not suggest that plaintiff here -- who does not have an extensive prior criminal record and who has not committed a crime in the nearly-seventeen years since his sole prior conviction -- poses an above-average threat of future firearm-related violent crime (or any violent crime, for that matter).

For the reasons discussed above, I conclude that, based on the record evidence in this matter, plaintiff has carried his burden on his as-applied challenge under <u>Barton</u> in Count Two, and defendants have not shown otherwise.

<u>**CONCLUSION**</u>

For the reasons expressed above, plaintiff Daniel Binderup's first-degree misdemeanor conviction for Corruption of minors in violation of 18 Pa.C.S.A. § 6301(a)(1)(i) is not "punishable by" a term of imprisonment of two years or less, as that term has been construed by authority which is binding upon this court.  Therefore, plaintiff is prohibited by 18 U.S.C. § 922(g)(1) from possessing a firearm and is not excluded from that prohibition by operation of 18 U.S.C. § 921(a)(20)(B).

Accordingly, plaintiff is not, and defendants are, entitled to summary judgment on plaintiff's statutory claim in Count One.

As to plaintiff's statutory claim in Count One, I grant Defendants' Motion to the Extent it seeks summary judgment on that claim, deny Plaintiff's Motion in that respect, and dismiss Defendants' Motion as moot to the extent it seeks to dismiss that claim.

Because plaintiff's statutory claim fails, I reach his alternative constitutional claim asserted in Count Two. For the reasons expressed above, I conclude that plaintiff has demonstrated that, despite his prior criminal conviction which brings him within scope of § 922(g)(1)'s firearm prohibition, he poses no greater risk of future violent conduct than the average law-abiding citizen.

Therefore, application of § 922(g)(1) to him violates the Second Amendment to the United States Constitution under the framework set for the by the United States Court of Appeals for the Third Circuit in United States v. Barton, 633 F.3d 168 (3d Cir. 2011). Accordingly, plaintiff is, and defendants are not, entitled to summary judgment on plaintiff's as-applied constitutional challenge asserted in Count Two of the Complaint.

As to plaintiff's constitutional claim in Count Two, I grant Plaintiff's Motion to the extent that it seeks summary

judgment on that claim, and deny Defendants' Motion with respect to Count Two.

        An appropriate Order accompanies this Opinion.